### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
| BLACKHAWK MINING LLC, *et al.*,[1] | Case No. 19-11595 (LSS) |
| Debtors. | (Jointly Administered) |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Blackhawk Mining LLC (the "**Company**"), and its affiliated debtors, each as a debtor and debtor in possession (collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 4001-2 of the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include:  Blackhawk Mining LLC (5600); Blackhawk Coal Sales, LLC (9456); Blackhawk Land and Resources, LLC (7839); Blackhawk River Logistics, LLC (3388); Blue Creek Mining, LLC (2427); Blue Diamond Mining, LLC (3488); Eagle Shield, LLC (6721); FCDC Coal, Inc. (6188); Guyandotte Mining, LLC (4882); Hampden Coal, LLC (8241); Kanawha Eagle Mining, LLC (0586); Logan & Kanawha, LLC (3178); Panther Creek Mining, LLC (0627); Pine Branch Land, LLC (9661); Pine Branch Mining, LLC (9681); Pine Branch Resources, LLC (9758); Redhawk Mining, LLC (0852); Rockwell Mining, LLC (3874); Spruce Pine Land Company (2254); Spurlock Mining, LLC (2899); Triad Mining, LLC (7713); and Triad Trucking, LLC (6112).  The location of the Debtors' service address in these chapter 11 cases is 3228 Summit Square Place, Suite 180, Lexington, Kentucky 40509.

[2]    Capitalized terms used herein and not herein defined have the meaning ascribed to such terms in the Motion.

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "**Local Bankruptcy Rules**") seeking, among other things:

(i)     authorization for (x) the Company and certain of its subsidiaries party to the DIP ABL Credit Agreement (as defined below) as borrowers (collectively, the "**DIP ABL Borrowers**") to obtain postpetition financing as set forth in the DIP ABL Financing Documents (as defined below) (the "**DIP ABL Financing**"), and for the DIP ABL Guarantors[3] (together with the DIP ABL Borrowers, the "**DIP ABL Loan Parties**") to guaranty the obligations (the "**DIP ABL Obligations**") of the DIP ABL Borrowers in connection with the DIP ABL Financing; and (y) the Company to obtain postpetition financing as set forth in the Term DIP Documents (as defined below) (the "**Term DIP Financing**" and, together with the DIP ABL Financing, the "**DIP Financing**"), and for the Term DIP Guarantors[4] (together with the Company, the "**Term DIP Loan Parties**"; the Term DIP Loan Parties and the DIP ABL Loan Parties are collectively referred to herein as the "**DIP Loan Parties**") to guaranty the obligations (the "**Term DIP Obligations**" and, together with the DIP ABL Obligations, the "**DIP Obligations**") of the Company in connection with the Term DIP Financing; the DIP Financing consisting of:

(I)     a superpriority debtor-in-possession asset-based revolving credit facility made available to the DIP ABL Borrowers in an aggregate principal amount of up to $90,000,000 (the "**DIP ABL Facility**"), pursuant to the terms and conditions of that certain Senior Secured Superpriority Debtor in Possession ABL Credit Agreement (as may be amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP ABL Credit Agreement**"), among the DIP ABL Borrowers, the DIP ABL Guarantors and MidCap Funding IV Trust, as administrative agent (in such capacity, the "**DIP ABL Agent**"), the lenders party thereto, including their respective successors and assigns (the "**DIP ABL Lenders**" and, together with the DIP ABL Agent, the "**DIP ABL Secured Parties**"), substantially in the form attached to the Motion as **<u>Exhibit B</u>**; and

(II)     a superpriority debtor-in-possession term loan credit facility made available to the Company in an aggregate principal amount of up to $150,000,000 (the "**Term DIP Facility**" and, together with the

---

[3]     The "**DIP ABL Guarantors**" shall mean, collectively, the "Guarantors" (as defined in the DIP ABL Credit Agreement).

[4]     The "**Term DIP Guarantors**" shall mean, collectively, the "Guarantors" (as defined in the Term DIP Credit Agreement).

DIP ABL Facility, the "**DIP Facilities**") to be provided by certain of the Prepetition First Lien Term Loan Lenders (as defined below) or their designees (in their capacity as lenders under the Term DIP Facility, the "**Term DIP Lenders**") in the form of (X) new money term loans (the "**New Money Term DIP Loans**") in an aggregate principal amount of up to $50 million and (Y) roll-up term loans (the "**Term DIP Roll-Up Loans**" and, together with the New Money Term DIP Loans, the "**Term DIP Loans**"), which shall be secured on a junior basis to the New Money Term DIP Loans, to convert Prepetition First Lien Term Loans (as defined below) held by the Term DIP Lenders in the aggregate principal amount of up to $100 million, in each case pursuant to the terms and conditions of that certain Senior Secured Debtor-in-Possession Term Loan Credit Agreement (as may be amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**Term DIP Credit Agreement**" and, together with the DIP ABL Credit Agreement, the "**DIP Credit Agreements**"), among the Company, the Term DIP Guarantors, the Term DIP Lenders and Cantor Fitzgerald Securities ("**Cantor**"), as administrative agent and collateral agent (in such capacities, the "**Term DIP Agent**" and, together with the DIP ABL Agent, the "**DIP Agents**"); the Term DIP Lenders together with the Term DIP Agent, the "**Term DIP Secured Parties**"; the Term DIP Secured Parties, together with the DIP ABL Secured Parties are collectively referred to herein as the "**DIP Secured Parties**"), substantially in the form attached to the Motion as **Exhibit C**;

(ii)    authorization for:

(I)    the DIP ABL Borrowers and the DIP ABL Guarantors to execute and enter into the DIP ABL Credit Agreement, the Security Agreement (as defined in the DIP ABL Credit Agreement) and any other agreements, instruments, pledge agreements, guarantees, security agreements, intellectual property security agreements, control agreements, notes and other DIP ABL Financing Documents (as defined in the DIP ABL Credit Agreement) and documents related thereto, including, without limitation, the "Fee Letter" (as defined in the DIP ABL Credit Agreement), and the DIP ICA (as defined below) (as each of the foregoing may be amended, restated, supplemented, waived, and/or modified from time to time in accordance with the terms hereof and thereof, and collectively with the DIP ABL Credit Agreement, the "**DIP ABL Financing Documents**") and to perform their respective obligations thereunder and all such other and further acts as may be necessary, appropriate, or desirable in connection with the DIP ABL Financing Documents;

(II)     the Company and the Term DIP Guarantors to execute and enter into the Term DIP Credit Agreement, Security Agreement (as defined in the Term DIP Credit Agreement)and any other agreements, instruments, pledge agreements, guarantees, security agreements, intellectual property security agreements, control agreements, notes and other Credit Documents (as defined in the Term DIP Credit Agreement) and documents related thereto, including, without limitation, the DIP ICA (as each of the foregoing may be amended, restated, supplemented, waived, and/or modified from time to time in accordance with the terms hereof and thereof, and collectively with the Term DIP Credit Agreement, the "**Term DIP Documents**"; the Term DIP Documents together with the DIP ABL Financing Documents, are collectively referred to herein as the "**DIP Documents**") and to perform their respective obligations thereunder and all such other and further acts as may be necessary, appropriate, or desirable in connection with the Term DIP Documents;

(iii)    the DIP Loan Parties to apply the Debtors' prepetition and postpetition accounts receivable to the outstanding principal balance of the Prepetition ABL Debt (as defined below) and, upon entry of the Final Order (as defined below) use the proceeds of the DIP ABL Financing to refinance the remainder of the Prepetition ABL Debt, including interest and fees through the date of repayment (at the non-default contract rate), which refinancing shall be indefeasible upon the occurrence of the ABL Discharge;[5]

(iv)    until the occurrence of the ABL Discharge, the granting of Postpetition liens to the Prepetition ABL Agent (as defined below) and the Prepetition ABL Lenders (as defined below) in connection with the Prepetition ABL Credit Agreement (as defined below);

(v)     authorization to convert $2.00 of Prepetition First Lien Term Loan Debt (up to an aggregate principal amount of $100 million) held by the Term

---

[5]      "**ABL Discharge**" means the indefeasible payment of the Prepetition ABL Debt (as defined below) in full in cash, including interest and fees through the date of repayment (at the non-default contract rate), which shall be deemed to have occurred if no adversary proceeding or contested matter is timely and properly asserted in accordance with this Interim Order and the Final Order (as defined below) with respect to the Prepetition ABL Debt or against any Prepetition ABL Secured Party (as defined below), or if such an adversary proceeding or contested matter is timely and properly asserted in accordance with this Interim Order and the Final Order, upon the final disposition of such adversary proceeding or contested matter in favor of the applicable Prepetition ABL Secured Party or Parties by order of a court of competent jurisdiction; *provided* that, for the avoidance of doubt, interest shall cease to accrue on the Prepetition ABL Debt upon the repayment in full in cash, including interest and fees through the date of repayment, of the Prepetition ABL Debt upon the entry of the Final Order unless the Prepetition ABL Debt is reinstated.

DIP Lenders into Term DIP Roll-Up Loans for each $1.00 of New Money Term DIP Loans funded by the Term DIP Lenders;

(vi)    authorization for the DIP Loan Parties to grant adequate protection to the Prepetition Secured Parties (as defined below) under, or in connection with, or according to the priorities of, the following agreements, as applicable:

(I)    that certain Credit Agreement, dated as of September 6, 2017 (as amended, supplemented, restated or otherwise modified prior to the Petition Date (as defined below), the "**Prepetition ABL Credit Agreement**" and, the facility thereunder, the "**Prepetition ABL Credit Facility**"), among the DIP ABL Borrowers, the guarantors party thereto (the "**Prepetition ABL Guarantors**"), MidCap Funding IV Trust, as successor agent (the "**Prepetition ABL Agent**"), the lenders party thereto (the "**Prepetition ABL Lenders**" and, together with the Prepetition ABL Agent and any other "Secured Creditor" as defined in the Prepetition ABL Credit Agreement, the "**Prepetition ABL Secured Parties**"), and those certain Security Documents (as defined in the Prepetition ABL Credit Agreement and, collectively with the Prepetition ABL Credit Agreement, and all other documentation executed in connection therewith, the "**Prepetition ABL Financing Documents**");

(II)    First Lien Term Loan Agreement, dated as of February 17, 2017 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "**Prepetition First Lien Term Loan Credit Agreement**," the facility thereunder, the "**Prepetition First Lien Term Loan Credit Facility**," and the loans extended thereunder, the "**Prepetition First Lien Term Loans**"), among the Company, as borrower, the guarantors party thereto (the "**Prepetition First Lien Term Loan Guarantors**"), Cantor, as successor administrative agent and collateral agent (the "**Prepetition First Lien Term Loan Agent**"), and the lenders party thereto (the "**Prepetition First Lien Term Loan Lenders**" and, together with the Prepetition First Lien Term Agent, the "**Prepetition First Lien Term Loan Secured Parties**"), and those certain Credit Documents (as defined in the Prepetition First Lien Term Loan Credit Agreement and, collectively with the Prepetition First Lien Tern Loan Credit Agreement, and all other documentation executed in connection therewith, the "**Prepetition First Lien Term Loan Documents**");

(III)    Second Lien Term Loan Agreement, dated as of October 28, 2015 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "**Prepetition Second Lien Term Loan**

IMPAC 6317745v.1

**Credit Agreement**"[6] and, the facility thereunder, the "**Prepetition Second Lien Term Loan Credit Facility**"[7]), among the Company, as borrower, the guarantors party thereto (the "**Prepetition Second Lien Term Loan Guarantors**"), Cortland Capital Market Services, LLC, as administrative agent and collateral agent (the "**Prepetition Second Lien Term Loan Agent**" and together with the Prepetition First Lien Term Loan Agent and Prepetition ABL Agent, the "**Prepetition Agents**"), and the lenders party thereto (the "**Prepetition Second Lien Term Loan Lenders**[8]" and, together with the Prepetition Second Lien Term Loan Agent, the "**Prepetition Second Lien Term Loan Secured Parties**"[9]), and those certain Credit Documents (as defined in the Prepetition Second Lien Credit Agreement and, collectively with the Prepetition Second Lien Credit Agreement, and all other documentation executed in connection therewith, the "**Prepetition Second Lien Term Loan Documents**" and together with the Prepetition First Lien Term Loan Documents and Prepetition ABL Financing Documents, the "**Prepetition Documents**");

(IV)    ABL Intercreditor Agreement, dated as of September 6, 2017 (as amended, restated or otherwise modified from time to time, the "**Prepetition ABL Intercreditor Agreement**") entered into between the Prepetition ABL Agent, the Prepetition First Lien Term Loan Agent, and one or more of the Debtors;

(V)    Amended and Restated Junior Priority Intercreditor Agreement, dated as of February 17, 2017 (as amended, restated or otherwise modified from time to time, the "**Prepetition Junior Lien Intercreditor Agreement**" and, together with the Prepetition ABL Intercreditor Agreement, the "**Prepetition Intercreditor Agreements**") entered into between the Prepetition ABL Agent,

---

[6]     The Prepetition ABL Credit Agreement, the Prepetition First Lien Term Loan Credit Agreement and the Prepetition Second Lien Term Loan Credit Agreement are collectively referred to as the "**Prepetition Credit Agreements**."

[7]     The Prepetition ABL Credit Facility, the Prepetition First Lien Term Loan Credit Facility and the Prepetition Second Lien Term Loan Credit Facility are collectively referred to as the "**Prepetition Credit Facilities**."

[8]     The Prepetition First Lien Term Loan Lenders and the Prepetition Second Lien Term Loan Lenders are collectively referred to as the "**Prepetition Term Loan Lenders**", and, together with the Prepetition ABL Lenders, the "**Prepetition Lenders**."

[9]     The Prepetition First Lien Term Loan Secured Parties and the Prepetition Second Lien Term Loan Secured Parties are collectively referred to as the "**Prepetition Term Loan Secured Parties**", and, together with the Prepetition ABL Secured Parties, the "**Prepetition Secured Parties**".

the Prepetition First Lien Term Loan Agent, the Prepetition Second Lien Term Loan Agent and one or more of the Debtors;

(vii)  subject to the restrictions set forth in the DIP Documents and this Interim Order (the "**Interim Order**"), authorization for the DIP Loan Parties to continue to use Cash Collateral (as defined below) and all other Prepetition Collateral (as defined below) in which any of the Prepetition Secured Parties has an interest, and to grant adequate protection to the Prepetition Secured Parties with respect to, *inter alia*, such use of Cash Collateral and other Prepetition Collateral;

(viii)  authorization for the DIP Loan Parties to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become earned, due and payable, including, but not limited to, unused line commitment fees, upfront fees, structuring fees, backstop fee, closing fees, exit fees, prepayment fee, audit fees, appraisal fees, valuation fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Agents' and DIP Lenders' attorneys, advisors, accountants, appraisers, bankers, and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

(ix)  approval of certain stipulations by the Debtors with respect to the Prepetition Documents and the liens, claims, and security interests arising therefrom;

(x)  the granting to the DIP Secured Parties of allowed superpriority claims, subject to the Carve-Out (as defined below), pursuant to section 364(c)(1) of the Bankruptcy Code payable from and having recourse to all assets of the DIP Loan Parties;

(xi)  the granting to the DIP Secured Parties of liens pursuant to section 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on all prepetition and postpetition property of the DIP Loan Parties' estates and all proceeds thereof, including, subject only to and effective upon entry of the Final Order, any Avoidance Proceeds (as defined below), in each case subject to the Carve-Out and with the relative priorities set forth in this Interim Order and on **Exhibit A** hereto;

(xii)  subject to entry of the Final Order approving such relief, a waiver of (a) the Debtors' right to surcharge the Prepetition Collateral and the DIP Collateral (as defined below) (together, the "**Collateral**") pursuant to section 506(c) of the Bankruptcy Code, and (b) any right of the Debtors under the "equities of the case" exception under section 552(b) of the Bankruptcy Code;

7

(xiii)    modification of the automatic stay to the extent set forth herein and in the DIP Documents;

(xiv)    the scheduling of an interim hearing (the "**Interim Hearing**") on the Motion to be held before this Court to consider entry of the Interim Order; and;

(xv)    the scheduling of a final hearing (the "**Final Hearing**") to be held within 30 days of the entry of the Interim Order to consider final approval of the DIP Facilities and use of Cash Collateral pursuant to a proposed final order (the "**Final Order**"), as set forth in the Motion and the DIP Documents filed with this Court;

and due and appropriate notice of the Motion and the Interim Hearing, under the circumstances, having been served by the Debtors on the parties identified in the Motion, and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having reviewed the Motion; and pursuant to Bankruptcy Rule 4001, the Interim Hearing on the Motion having been held by this Court on July 22, 2019; and the relief requested in the Motion being in the best interests of the Debtors, their creditors and their estates and all other parties in interest in these Chapter 11 Cases; and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the record made by the Debtors in the Motion, the *Declaration of Marc D. Puntus in Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (the "**Puntus Declaration**"), the *Declaration of Jesse M. Parrish, Chief Financial Officer of Blackhawk Mining LLC, in Support of the Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"), the DIP Documents, and in the evidence

8

submitted and arguments made by the Debtors at the Interim Hearing, and after due deliberation and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Disposition.*  The relief requested in the Motion is GRANTED ON AN INTERIM BASIS in accordance with the terms of this Interim Order.  Any and all objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, settled, or resolved and all reservations of rights included therein, are hereby denied and overruled on the merits.  This Interim Order shall become effective immediately upon its entry.

2.      *Petition Date*.  On July 19, 2019 (the "**Petition Date**"), each Debtor filed a voluntary petition (each, a "**Petition**") under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

3.      *Jurisdiction.*  This Court has core jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      *Committee Formation*.  As of the date hereof, no official committee of unsecured creditors under section 1102 of the Bankruptcy Code (the "**Committee**") or any other statutory committee has been appointed in the Chapter 11 Cases.

5.      *Notice*.  Appropriate notice of the Motion has, under the circumstances, been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local

IMPAC 6317745v.1

Bankruptcy Rules.  No other or further notice of this Interim Order shall be required.  The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.

6.      *Debtors' Stipulations*.  Without prejudice to the rights of any other party in interest and subject to the limitations thereon contained in paragraphs 26 and 28 below, the Debtors admit, stipulate and agree that:

(a)      (i) as of the Petition Date: (A) the DIP ABL Borrowers and the Prepetition ABL Guarantors were justly and lawfully indebted and liable to the Prepetition ABL Secured Parties, without defense, counterclaim, recoupment or offset of any kind, in the aggregate principal amount of not less than $82,000,000 in respect of loans made to the DIP ABL Borrowers, plus accrued and unpaid interest thereon and fees, expenses (including, without limitation, any attorneys', accountants', appraisers' and financial advisors' fees, in each case, that are chargeable or reimbursable under the Prepetition ABL Financing Documents), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the Prepetition ABL Financing Documents (the "**Prepetition ABL Debt**"), which Prepetition ABL Debt has been guaranteed on a joint and several basis by all of the Prepetition ABL Guarantors; (B) the Company and the Prepetition First Lien Term Loan Guarantors were justly and lawfully indebted and liable to the Prepetition First Lien Term Loan Secured Parties without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than approximately $538,974,437 in respect of loans made by the Prepetition First Lien Term Loan Lenders pursuant to, and in accordance with the terms of, the Prepetition First Lien Term Loan Documents, plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial

advisors' fees, in each case, that are chargeable or reimbursable under the Prepetition First Lien Term Loan Documents), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the Prepetition First Lien Term Loan Documents (collectively, the "**Prepetition First Lien Term Loan Debt**"), which Prepetition First Lien Term Loan Debt has been guaranteed on a joint and several basis by all of the Prepetition First Lien Term Loan Guarantors and (C) the Company and the Prepetition Second Lien Term Loan Guarantors were justly and lawfully indebted and liable to the Prepetition Second Lien Term Loan Secured Parties without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than approximately $318,307,228 in respect of loans made by the Prepetition Second Lien Term Loan Lenders pursuant to, and in accordance with the terms of, the Prepetition Second Lien Term Loan Documents, plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees, in each case, that are chargeable or reimbursable under the Prepetition Second Lien Term Loan Documents), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the Prepetition Second Lien Term Loan Documents (collectively, the "**Prepetition Second Lien Term Loan Debt**" and, together with the Prepetition ABL Debt and Prepetition First Lien Term Loan Debt, the "**Prepetition Debt**"), which Prepetition Second Lien Term Loan Debt has been guaranteed on a joint and several basis by all of the Prepetition Second Lien Term Loan Guarantors; (ii) the Prepetition Debt constitutes the legal, valid, binding, and non-avoidable

obligations of the applicable Prepetition Borrowers[10] and the applicable Prepetition Guarantors,[11] enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); and (iii) no portion of the Prepetition Debt or any payment made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Prepetition Documents prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law;

        (b)        as of the Petition Date, the liens and security interests granted to the Prepetition ABL Secured Parties (the "**Prepetition ABL Liens**") pursuant to and in connection with the Prepetition ABL Financing Documents are: (i) valid, binding, perfected, enforceable, first-priority liens and security interests in the Prepetition ABL Priority Collateral;[12] (ii) valid, binding, perfected, enforceable, second-priority liens and security interests in the Prepetition Term Loan Priority Collateral[13] (together with the Prepetition ABL Priority Collateral, the "**Prepetition Collateral**"); (iii) not subject to avoidance, recharacterization, subordination, recovery, attack, counterclaim, crossclaim, offset, recoupment, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law; and (iv) as of the Petition Date, subject and

---

[10]     "**Prepetition Borrowers**" shall mean, in the case of the Prepetition First Lien Term Loan Debt and the Prepetition Second Lien Term Loan Debt, the Company and, in the case of the Prepetition ABL Debt, the DIP ABL Borrowers.

[11]     "**Prepetition Guarantors**" shall mean, collectively, the Prepetition ABL Guarantors, the Prepetition First Lien Term Loan Guarantors and the Prepetition Second Lien Term Loan Guarantors.

[12]     "**Prepetition ABL Priority Collateral**" means "ABL Priority Collateral" as defined in the Prepetition ABL Intercreditor Agreement (as defined below).

[13]     "**Prepetition Term Loan Priority Collateral**" means "Term Loan Priority Collateral" as defined in the Prepetition ABL Intercreditor Agreement.

subordinate only to (A) in the case of the Prepetition Term Loan Priority Collateral, (1) the liens and security interests in favor of the Prepetition First Lien Term Loan Secured Parties and (2) certain other liens permitted by the Prepetition Documents, solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and *pari passu* or senior in priority to Prepetition First Lien Term Liens (as defined below) and (B) in the case of the Prepetition ABL Priority Collateral, certain other liens permitted by the Prepetition Documents, solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and *pari passu* or senior in priority to the Prepetition ABL Liens;

(c)       as of the date of the Petition Date, the liens and security interests granted to the Prepetition First Lien Term Loan Secured Parties (the "**Prepetition First Lien Term Liens**") pursuant to and in connection with the Prepetition First Lien Term Loan Documents are: (i) valid, binding, perfected, enforceable, first-priority liens and security interests in the Prepetition Term Loan Priority Collateral; (ii) valid, binding, perfected, enforceable, second-priority liens and security interests in the Prepetition ABL Priority Collateral; (iii) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, crossclaim, offset, recoupment, defense or claim (as such term is used in the Bankruptcy Code, "**Claim**") under the Bankruptcy Code or applicable non-bankruptcy law; and (iv) as of the Petition Date, subject and subordinate only to (A) in the case of the Prepetition ABL Priority Collateral, (1) the liens and security interests in favor of the Prepetition ABL Secured Parties and (2) certain other liens permitted by the Prepetition Documents, solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and *pari passu* or senior in priority to the Prepetition ABL Liens and (B) in the case of the Prepetition Term Loan Priority Collateral, certain other liens permitted by the Prepetition Documents, solely to the extent any such permitted liens were

13

valid, properly perfected, non-avoidable and *pari passu* or senior in priority to Prepetition First Lien Term Liens;

(d)    as of the Petition Date, the liens and security interests granted to the Prepetition Second Lien Term Loan Secured Parties (the "**Prepetition Second Lien Term Liens**" and, together with the Prepetition First Lien Term Liens, the "**Prepetition Term Liens**" and together with the Prepetition ABL Liens, the "**Prepetition Liens**") pursuant to and in connection with the Prepetition Second Lien Term Loan Agreements are: (i) valid, binding, perfected, enforceable, third-priority liens and security interests in the Prepetition Term Loan Priority Collateral; (ii) valid, binding, perfected, enforceable, third-priority liens and security interests in the Prepetition ABL Priority Collateral; (iii) not subject to avoidance, recharacterization, subordination, recovery, attack, counterclaim, crossclaim, offset, recoupment, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law; and (iv) as of the Petition Date, subject and subordinate only to (A) in the case of the Prepetition ABL Priority Collateral, (1) the liens and security interests in favor of the Prepetition ABL Secured Parties and the Prepetition First Lien Term Loan Secured Parties and (2) certain other liens permitted by the Prepetition Documents, solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and *pari passu* or senior in priority to the Prepetition First Lien Term Liens and (B) in the case of the Prepetition Term Loan Priority Collateral, (1) the Prepetition First Lien Term Liens and Prepetition ABL Liens and (2) certain other liens permitted by the Prepetition Documents, solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and *pari passu* or senior in priority to Prepetition First Lien Term Liens;

(e)    the aggregate value of the Prepetition ABL Priority Collateral exceeds the aggregate amount of the Prepetition ABL Debt;

(f)    as of the Petition Date, other than as expressly permitted under the Prepetition Documents, there were no liens on or security interests in the Prepetition Collateral other than the Prepetition Liens;

(g)    none of the Prepetition Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition Documents;

(h)    no claims, counterclaims, objections, defenses, set-off rights, challenges or causes of action exist against, or with respect to, the Prepetition Secured Parties or any of their respective affiliates, agents, subsidiaries, partners, controlling persons, agents, attorneys, advisors, professionals, officers, directors and employees, whether arising under applicable state or federal law (including, without limitation, any recharacterization, or other equitable relief that might otherwise impair the aforementioned parties or their interest in the Prepetition Collateral, subordination, avoidance or other claims, including any claims or causes of action arising under or pursuant to sections 105, 502(d), 510, 542 through 553(b) or 724(a) of the Bankruptcy Code), in connection with or arising under any Prepetition Documents or the transactions contemplated thereunder or the Prepetition Debt or Prepetition Liens, including without limitation, any right to assert any disgorgement or recovery; and, subject to entry of a Final Order approving such relief, the Debtors and their estates hereby release and discharge any and all such claims, counterclaims, objections, defenses, set-off rights, challenges and causes of actions;

(i)        subject to entry of a Final Order approving such relief, the Debtors hereby absolutely and unconditionally release and forever discharge and acquit the Prepetition Secured Parties and their respective Representatives (as defined below) each solely in their capacity as such (collectively, the "**Released Parties**") from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date (collectively, the "**Released Claims**") of any kind, nature or description, whether known or unknown, foreseen or unforeseen or liquidated or unliquidated, arising in law or equity or upon contract or tort or under any state or federal law or otherwise, arising out of or related to (as applicable) the Prepetition Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the transactions reflected thereby, and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Interim Order, whether such Released Claims are matured, contingent, liquidated, unliquidated, unmatured, known, unknown or otherwise;

(j)        that the (A) Prepetition Intercreditor Agreements govern, among other things, the relative priorities of the Prepetition Liens in respect of the applicable Prepetition Collateral, (B) the Prepetition Intercreditor Agreements are binding and enforceable against the Prepetition Borrowers, the Prepetition Guarantors and the Prepetition Secured Parties in accordance with their terms, and (C) the Prepetition Borrowers, the Prepetition Guarantors and the Prepetition Secured Parties are not entitled to take any action that would be contrary to the provisions thereof; and

(k)      all cash, securities or other property of the DIP Loan Parties (and the proceeds therefrom), in each case, constituting Prepetition Collateral, as of the Petition Date, including, without limitation, all cash, securities or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the DIP Loan Parties in any account or accounts (collectively, the "**Depository Institutions**"), in each case, constituting Prepetition Collateral were subject to rights of set-off under the Prepetition Documents and applicable law, for the benefit of the Prepetition Secured Parties, subject to the priorities set forth in the Prepetition Intercreditor Agreements.  All proceeds of the Prepetition Collateral (including cash on deposit at the Depository Institutions as of the Petition Date, securities or other property, whether subject to control agreements or otherwise, in each case that constitutes Prepetition Collateral) are "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**"), subject to the priorities set forth in the Prepetition Intercreditor Agreements.

7.      *Findings Regarding the DIP Financing and Use of Cash Collateral.*

(a)      Good and sufficient cause has been shown for the entry of this Interim Order and authorization for the DIP Loan Parties to obtain financing pursuant to the DIP Facilities.

(b)      The DIP Loan Parties have an immediate need to obtain the DIP Financing and continue to use the Prepetition Collateral (including Cash Collateral) in order to, among other things, (i) permit the orderly continuation of the operation of their businesses, (ii) maintain business relationships with customers, vendors and suppliers, (iii) pay for the necessary services and materials to maintain compliance with permitting and environmental regulatory requirements, (iv) pay for use of the mining equipment leased from third parties, (v) make

payroll, (vi) satisfy other working capital and operational needs, (vii) repay a portion of the

Prepetition First Lien Term Loan Debt pursuant to the Term Loan Roll-Up (as defined below),

(viii) repay the Prepetition ABL Debt pursuant to the Interim ABL Roll-Up (as defined below)

and, subject to entry of the Final Order, Repay in Full any remaining Prepetition ABL Debt.  The

access by the DIP Loan Parties to sufficient working capital and liquidity through the use of

Cash Collateral and other Prepetition Collateral, incurrence of new indebtedness under the

DIP Documents and other financial accommodations provided under the DIP Documents are

necessary and vital to the preservation and maintenance of the going concern values of the DIP

Loan Parties and to a successful reorganization of the DIP Loan Parties.  The terms of the

proposed financing are fair and reasonable, reflect the DIP Loan Parties' exercise of prudent

business judgment consistent with their fiduciary duties, and are supported by reasonably

equivalent value and fair consideration.  The adequate protection provided in this Interim Order

and other benefits and privileges contained herein are consistent with and authorized by the

Bankruptcy Code.

(c)     The Prepetition ABL Secured Parties would not otherwise consent to the

use of their Cash Collateral or the subordination of their liens (to the extent set forth on

**Exhibit A** hereto), and the DIP ABL Agent and the DIP ABL Lenders would not be willing to

provide the DIP ABL Facility or extend credit to the Debtors thereunder without the inclusion of

the ABL Roll-Up.  Moreover, the conversion and roll-up of all outstanding Prepetition ABL

Obligations into the DIP ABL Obligations will create availability under the DIP ABL Facility.

(d)     The Prepetition First Lien Term Loan Secured Parties would not otherwise

consent to the use of their Cash Collateral or the subordination of their liens (to the extent set

forth on **Exhibit A** hereto), and the Term DIP Lenders would not be willing to provide the Term

18

DIP Facility or extend credit to the Debtors thereunder without the inclusion of the Term Loan Roll-Up.

(e)     The DIP Loan Parties are unable to obtain financing on more favorable terms from sources other than the DIP Lenders[14] under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The DIP Loan Parties are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the DIP Loan Parties granting to the DIP Secured Parties, subject to the Carve-Out, the DIP Liens and the DIP Superpriority Claims (as defined below) and, subject to the Carve-Out, incurring the Adequate Protection Obligations (as defined below), in each case, under the terms and conditions set forth in this Interim Order and in the DIP Documents.

(f)     Based on the Motion, the Puntus Declaration, the First Day Declaration and the record presented to the Court at the Interim Hearing, (i) the terms of the DIP Financing, (ii) the terms of the adequate protection granted to the Prepetition Secured Parties as provided in paragraphs 20 and 21 of this Interim Order (the "**Adequate Protection**") and (iii) the terms on which the DIP Loan Parties may continue to use the Prepetition Collateral (including Cash Collateral), in each case pursuant to this Interim Order and the DIP Documents, are in each case fair and reasonable, reflect the DIP Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties, constitute reasonably equivalent value and fair consideration, and represent the best financing presently available.

(g)     To the extent such consent is required, the Prepetition Secured Parties have consented or are deemed under the Prepetition Intercreditor Agreements to have consented

---

[14]     **"DIP Lenders"** means, collectively, the DIP ABL Lenders and the Term DIP Lenders.

to the DIP Loan Parties' use of Cash Collateral and the other Prepetition Collateral, and the DIP

Loan Parties' entry into the DIP Documents, in accordance with and subject to the terms and

conditions set forth in this Interim Order and the DIP Documents.

        (h)     The DIP Financing, the Adequate Protection and the use of the Prepetition

Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length

among the DIP Loan Parties, the DIP Agents and the DIP Lenders, and all of the DIP Loan

Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP

Financing and the DIP Documents, including, without limitation: (i) all loans made to and

guarantees issued by the DIP Loan Parties pursuant to the DIP Documents (the "**DIP Loans**")

and any "**Obligations**" and "**DIP ABL Obligations**" (as defined in the DIP Credit Agreements)

shall be deemed to have been extended by the DIP Agents and the DIP Lenders and their

respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code

and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code,

and the DIP Agents and the DIP Lenders (and the successors and assigns thereof) shall be

entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this

Interim Order or any provision hereof is reversed or modified on appeal.  The Prepetition

Secured Parties have acted in good faith regarding the DIP Financing and the DIP Loan Parties'

continued use of the Prepetition Collateral (including Cash Collateral) to fund the administration

of the DIP Loan Parties' estates and continued operation of their businesses (including the

incurrence and payment of the Adequate Protection Obligations and the granting of the Adequate

Protection Liens (as defined below)), in accordance with the terms hereof, and the Prepetition

Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of

section 363(m) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is reversed or modified on appeal.

       (i)     The Prepetition Secured Parties are entitled to the Adequate Protection provided in this Interim Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code. Based on the Motion, the Puntus Declaration, the First Day Declaration and the record presented to the Court, the terms of the proposed Adequate Protection arrangements and of the use of the Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the DIP Loan Parties' prudent exercise of business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Collateral (including Cash Collateral); *provided* that nothing in this Interim Order or the DIP Documents shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the terms set forth in this Interim Order and in the context of the DIP Financing authorized by this Interim Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties, subject to any applicable provisions of the Prepetition Intercreditor Agreements, to seek new, different or additional adequate protection or assert the interests of any of the Prepetition Secured Parties.

       (j)     Payment of the Prepetition ABL Debt and a portion of the Prepetition First Lien Term Loan Debt pursuant to the ABL Roll-Up and Term Loan Roll-Up, respectively, reflect the DIP Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties.

(k)      The Debtors have prepared and delivered to DIP Agents and the

DIP Lenders an initial budget (the "**Initial Budget**"), a copy of which is attached to the Motion

as **Schedule 1 to Exhibit A**.  The Initial Budget reflects the Debtors' anticipated cash receipts

and anticipated disbursements for each calendar week during the period from the Petition Date

through and including the end of the thirteenth (13th) calendar week following the Petition Date

(the Initial Budget and each subsequent budget approved pursuant to the DIP Documents (an

"**Approved Budget**")).  The Debtors believe that the Initial Budget is reasonable under the facts

and circumstances.  The DIP Agents and the DIP Lenders are relying, in part, upon the Debtors'

covenants in the DIP Credit Agreements with respect to the Approved Budget, the other DIP

Documents, and this Interim Order in determining to enter into the postpetition financing

arrangements provided for in this Interim Order.

(l)      The Debtors have requested immediate entry of this Interim Order

pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules and

good cause has been shown for the immediate entry of this Interim Order.  For the reasons set

forth in the Motion, the Puntus Declaration and the First Day Declaration, absent granting the

relief set forth in this Interim Order, the DIP Loan Parties' estates would face significant

business disruption resulting in immediate and irreparable harm.  Consummation of the DIP

Financing and the use of Prepetition Collateral (including Cash Collateral), in accordance with

this Interim Order and the DIP Documents are therefore in the best interests of the DIP Loan

Parties, their estates and their creditors.  The terms of this Interim Order and the DIP Facilities

are fair and reasonable under the circumstances, reflect the DIP Loan Parties' exercise of their

prudent business judgment consistent with their fiduciary duties, and are supported by

reasonably equivalent value and fair consideration.

8.    *Authorization of the DIP Financing and the DIP Documents.*

(a)    The DIP Loan Parties are hereby authorized to execute, enter into and perform all obligations under the DIP Documents.  The DIP ABL Borrowers are hereby authorized to forthwith borrow money pursuant to the DIP ABL Credit Agreement, and the DIP ABL Guarantors are hereby authorized to guaranty DIP ABL Obligations, in each case up to an aggregate principal or face amount equal to $90 million under the DIP ABL Facility, together with applicable interest, protective advances, expenses, fees and other charges payable in connection with the DIP ABL Facility, subject in each case to any limitations on borrowing under the DIP ABL Financing Documents, which shall be used for all purposes permitted under the DIP Documents, including, without limitation, to roll-up and refinance the Prepetition ABL Debt as provided herein, to provide working capital for the DIP Loan Parties and to pay interest, fees and expenses in accordance with this Interim Order and the DIP Documents (including any indemnification obligations).  The DIP Loan Parties are hereby authorized to forthwith borrow money pursuant to the Term DIP Credit Agreement, and the Term DIP Guarantors are hereby authorized to guaranty the DIP Loan Parties' Term DIP Obligations with respect to such borrowings, in each case up to an aggregate principal amount equal to $35 million of New Money Term DIP Loans and $70 million of Term DIP Roll-Up Loans on an interim basis, together with applicable interest, protective advances, expenses, fees and other charges payable in connection with the Term DIP Facility and, subject to entry of the Final Order, an additional $15 million of New Money Term DIP Loans and $30 million of Term DIP Roll-Up Loans, together with applicable interest, protective advances, expenses, fees and other charges payable in connection with the Term DIP Facility, subject to any limitations on borrowing under the Term DIP Documents, which shall be used for purposes permitted under the DIP Documents,

including, without limitation, to roll-up and refinance a portion of the Prepetition First Lien Term

Loan Debt as provided herein and to pay interest, fees and expenses in accordance with this

Interim Order and the DIP Documents (including any indemnification obligations).

(b)    In furtherance of the foregoing and without further approval of this Court,

each Debtor is authorized to perform all acts, to make, execute and deliver all instruments and

documents (including, without limitation, the execution or recordation of security agreements,

mortgages, deeds of trust and financing statements), and to pay all fees that may be reasonably

required or necessary for the DIP Loan Parties to implement the terms of, performance of their

obligations under or effectuate the purposes of and transactions contemplated by this Interim

Order or the DIP Financing, including, without limitation:

(i)    the execution and delivery of, and performance under, each of the

DIP Documents;

(ii)    the execution and delivery of, and performance under, one or more

amendments, waivers, consents or other modifications to and under the DIP Documents, in each

case, in such form as the DIP Loan Parties, the DIP Agents, the Required DIP ABL Lenders (as

defined in the DIP ABL Credit Agreement, the "**Required DIP ABL Lenders**") and the

Required Lenders (as defined in the Term DIP Credit Agreement, the "**Required Term DIP**

**Lenders**," and together with the Required DIP ABL Lenders, the "**Required DIP Lenders**"), as

applicable, may agree, it being understood that no further approval of the Court shall be required

for authorizations, amendments, waivers, consents or other modifications to and under the DIP

Documents (and any fees and other expenses (including any attorneys', accountants', appraisers'

and financial advisors' fees), amounts, charges, costs, indemnities and other obligations paid in

connection therewith) that do not shorten the maturity of the extensions of credit thereunder,

IMPAC 6317745v.1

increase the aggregate commitments or the rate of interest payable thereunder, or effect any other material amendments;

(iii)    the non-refundable payment to the DIP Agents and/or the DIP Lenders, as the case may be, of all fees (which fees, in each case, shall be, and shall be deemed to have been, approved upon entry of this Interim Order, and which fees shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise) and any amounts due (or that may become due) in respect of the indemnification obligations, in each case referred to in the DIP Credit Agreements (and in any separate letter agreements between any or all DIP Loan Parties, on the one hand, and any of the DIP Agents and/or DIP Lenders, on the other, in connection with the DIP Financing) and the costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained by any of the DIP Agents or DIP Lenders, including, without limitation, the reasonable and documented fees and expenses of (i) Hogan Lovells US LLP as primary counsel to the DIP ABL Agent, Morris, Nichols, Arsht & Tunnell LLP as bankruptcy and Delaware counsel to the DIP ABL Agent, and a single local counsel to the DIP ABL Agent in each other applicable jurisdiction, (ii) Herrick Feinstein LLP as primary counsel to the Term DIP Agent and Prepetition First Lien Term Loan Agent and a single local counsel to the Term DIP Agent and Prepetition First Lien Term Loan Agent in each applicable jurisdiction, (iii) Stroock & Stroock & Lavan LLP as primary counsel to the Prepetition Second Lien Term Loan Agent and a single local counsel to the Prepetition Second Lien Term Loan Agent in each applicable jurisdiction, (iv) Davis Polk & Wardwell LLP as primary counsel to an ad hoc group of Term DIP Lenders, Prepetition First

25

Lien Term Loan Lenders and Prepetition Second Lien Term Loan Lenders (the "**Crossover Group**"), a single local counsel to the Crossover Group in each applicable jurisdiction, and (v) Shearman & Sterling LLP as primary counsel to certain of the Prepetition First Lien Term Loan Lenders (the "**First Lien Group**"), and a single local counsel to the First Lien Group, in each case, as provided for in the DIP Documents, without the need to file retention motions or fee applications or to provide notice to any party, but subject to paragraphs 20(c) and 21(c) of this Interim Order; and

(iv)    the performance of all other acts required under or in connection with the DIP Documents, including the granting of the DIP Liens and DIP Superpriority Claims and perfection of the DIP Liens and DIP Superpriority Claims as permitted herein and therein.

(c)    Upon execution and delivery of the DIP Documents, each of the DIP Documents shall constitute valid, binding and non-avoidable obligations of the DIP Loan Parties, fully enforceable against each DIP Loan Party in accordance with the terms of the DIP Documents and this Interim Order.  No obligation, payment, transfer or grant of security under the DIP Documents or this Interim Order to the DIP Agents (including their Representatives) and/or the DIP Lenders (including their Representatives) shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, 548 or 549 of the Bankruptcy Code, any applicable Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or other similar state statute or common law), or subject to any defense, reduction, setoff, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim, claim or counterclaim.

(d)    No DIP Lender or DIP Agent shall have any obligation or responsibility to monitor any DIP Loan Party's use of the DIP Financing, and each DIP Lender or DIP Agent may

rely upon each DIP Loan Party's representations that the amount of DIP Financing requested at any time and the use thereof, are in accordance with the requirements of this Interim Order, the DIP Documents, and Bankruptcy Rule 4001(c)(2).

(e)     The Debtors and the financial institutions where the Debtors' Cash Collection Accounts (as defined below) are maintained (including those accounts identified in any Cash Management Order), are authorized and directed to remit, without offset or deduction, funds in such Cash Collection Accounts upon receipt of any direction to that effect from the DIP ABL Agent.  For the avoidance of doubt, except to the extent expressly set forth in the DIP ABL Financing Documents, all prepetition practices and procedures for the payment and collection of proceeds of the Prepetition ABL Priority Collateral, the turnover of cash, the delivery of property to the Prepetition ABL Agent and the Prepetition ABL Lenders, including any control agreements and any other similar lockbox or blocked depository bank account arrangements, are hereby approved and shall continue without interruption and shall apply to the DIP ABL Facility. Without limiting the general applicability of the immediately preceding sentence, and notwithstanding anything contrary in this Interim Order, from and after the date of the entry of this Interim Order, all collections and proceeds of any Prepetition ABL Priority Collateral and other DIP ABL Priority Collateral and all Cash Collateral (other than identifiable net proceeds of DIP Term Loan Priority Collateral and except as otherwise set forth in the DIP ABL Credit Agreement) that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same lock-box and/or deposit accounts into which the collections and proceeds of the Prepetition ABL Priority Collateral were deposited under the Prepetition ABL Financing Documents (or in such other accounts as are designated by the DIP ABL Agent from time to

27

time) (collectively, the "**Cash Collection Accounts**") for application in accordance with this Interim Order, which accounts (except as otherwise set forth in the DIP ABL Credit Agreement) shall be subject to the sole dominion and control of the DIP ABL Agent until the discharge of the DIP ABL Facility.  Unless otherwise agreed to in writing by the DIP ABL Agents and the Prepetition ABL Agents, or otherwise provided for herein, the Debtors shall maintain no accounts except those identified in this Interim Order or in any cash management order entered by the Court (a "**Cash Management Order**").

9.      *DIP Intercreditor Agreement*.  The DIP Loan Parties are hereby authorized and directed to execute, enter into and perform under the intercreditor agreement among the DIP Loan Parties, the DIP ABL Agent and the Term DIP Agent, substantially in the form attached to the DIP Credit Agreements (the "**DIP ICA**").  For the avoidance of doubt the DIP ICA shall be deemed a DIP Document hereunder.

10.      *Payment of the Prepetition ABL Debt*.  The DIP Loan Parties are hereby authorized to (x) perform the transactions and undertakings contemplated hereby, which are hereby approved in all respects, (y) to remit the Debtors' prepetition and postpetition accounts receivable and all other proceeds of the DIP ABL Priority Collateral for application to the outstanding principal balance of the Prepetition ABL Debt (the "**Interim ABL Roll-Up**"), thereby creating a dollar-for-dollar increase in the DIP Revolving Loan Availability (as defined in the DIP ABL Credit Agreement), and, upon entry of a Final Order providing for such relief, to use the proceeds of the DIP ABL Financing to roll-up and refinance the remainder of the Prepetition ABL Debt, including interest and fees through the date of repayment (at the non-default contract rate) (the "**Final ABL Roll-Up**," and together with the Interim ABL Roll-Up, the "**ABL Roll-Up**"), and the amounts so rolled-up and refinanced, the "**ABL Roll-Up Loans**"),

28

which roll-up and refinancing shall be indefeasible upon the occurrence of the ABL Discharge

and shall be entitled to all the priorities, privileges, rights, and other benefits afforded to the other

DIP Obligations under this Interim Order, the Final Order and the DIP Loan Documents, and (z)

use the proceeds of the DIP ABL Financing to pay any fees, charges or expenses incurred by the

Prepetition ABL Agent prior to the Petition Date, but which are posted after the payoff of the

Prepetition ABL Debt.  The foregoing transactions in respect of the Prepetition ABL Debt shall

be indefeasible upon the ABL Discharge.  Subject to the terms and conditions contained in this

Interim Order (including, without limitation, the DIP Liens (as defined below) granted hereunder

and the Carve-Out (as defined below)), any and all prepetition or postpetition liens and security

interests (including, without limitation, any adequate protection replacement liens at any time

granted to the Prepetition ABL Secured Parties by this Court) that the Prepetition ABL Secured

Parties have or may have in the Collateral shall (a) continue to secure the unpaid portion of any

Prepetition ABL Debt (including, without limitation, any Prepetition ABL Debt subsequently

reinstated after the repayment thereof) and (b) be junior and subordinate in all respects to the

Carve-Out and otherwise have the priorities set forth on **Exhibit A** attached hereto (such liens

and security interests of the Prepetition ABL Secured Parties are hereinafter referred to as the

"**ABL Indemnification Liens,**" and any such unpaid or reinstated Prepetition ABL Debt

described in clause (a) of this sentence is hereinafter referred to as the "**Prepetition ABL**

**Indemnification Obligations**").  Any surviving obligations as set forth in any DIP Document,

Prepetition Documents, any payoff letter related to the Prepetition ABL Debt and/or any

documents related to the foregoing, including, without limitation, any indemnification of the

Prepetition ABL Secured Parties and the ABL Indemnification Liens, shall continue and survive

the ABL Discharge and the other transactions described in this paragraph and shall not be

discharged pursuant to a chapter 11 plan or any discharge under section 1141 of the Bankruptcy Code.

11.     *Payment of the Prepetition First Lien Term Loan Debt*.  On the date of each borrowing of New Money Term DIP Loans under the Term DIP Credit Agreement, the Prepetition First Lien Term Loan Debt held by the Term DIP Lenders (or if a Term DIP Lender is a designee of a Prepetition First Lien Term Loan Lender, the Prepetition First Lien Term Loan Debt held by such designating Prepetition First Lien Term Loan Lender) shall, subject to paragraph 30 hereof, immediately, automatically and irrevocably be deemed to have been converted into Term DIP Roll-Up Loans in an amount equal to $2.00 for each $1.00 of the New Money Term DIP Loans funded on such date (the "**Term Loan Roll-Up**"), which Term DIP Roll-Up Loans shall be entitled to all the priorities, privileges, rights, and other benefits afforded to the other DIP Obligations under this Interim Order, the Final Order and the DIP Loan Documents, in each case subject to the terms and conditions set forth in this Interim Order, the Final Order, the DIP Documents and the reservation of rights of parties in interest in paragraph 30 below.

12.     *Carve-Out*

(a)     As used in this Interim Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees")

incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the official committee of unsecured creditors (the "Creditors' Committee") (if appointed) pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the Term DIP Agent or the DIP ABL Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,000,000 incurred after the first business day following delivery by the Term DIP Agent or the DIP ABL Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Term DIP Agent or the DIP ABL Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Creditors' Committee (if appointed) with a copy to the Prepetition First Lien Term Loan Agent (which shall post the same to the Prepetition First  Lien Term Loan Lenders), the Prepetition ABL Agent (which shall post the same to the Prepetition ABL Lenders), and the DIP Agent not delivering such notice, which  notice  may be  delivered following the  occurrence and  during the continuation of an Event of Default (as defined in this Interim Order) and acceleration of the DIP ABL Obligations or the Term DIP Obligations under the DIP ABL Facility or the Term DIP Facility, as applicable, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)      Fee Estimates. Not later than 7:00 p.m. New York time on the third

business day of each week starting with the first full calendar week following the Closing Date,

each Professional Person shall deliver to the Debtors a statement setting forth a good-faith

estimate of the amount of fees and expenses (collectively, "Estimated Fees and Expenses")

incurred during the preceding week by such Professional Person (through Saturday of such week,

the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of

unreimbursed fees and expenses incurred through the applicable Calculation Date and a

statement of the amount of such fees and expenses that have been paid to date by the Debtors

(each such statement, a "Weekly Statement"); provided, that within one business day of the

occurrence of the Termination Declaration Date (as defined below), each Professional Person

shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate

of the amount of fees and expenses incurred during the period commencing on the calendar day

after the most recent Calculation Date for which a Weekly Statement has been delivered and

concluding on the Termination Declaration Date. If any Professional Person fails to deliver a

Weekly Statement within three calendar days after such Weekly Statement is due, such

Professional Person's entitlement (if any) to any funds in the Carve Out Reserves (as defined

below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the

applicable period(s) for which such Professional Person failed to deliver a Weekly Statement

covering such period shall be limited to the aggregate unpaid amount of Allowed Professional

Fees included in the Approved Budget for such period for such Professional Person; provided,

that such Professional Person shall be entitled to be paid any unpaid amount of Allowed

Professional Fees in excess of Allowed Professional Fees included in the Approved Budget for

such period for such Professional Person from a reserve to be funded by the Debtors from all

cash on hand as of such date and any available cash thereafter held by any Debtor pursuant to paragraph 12(c) below. Solely as it relates to the DIP ABL Agent, the Term DIP Agent, the DIP ABL Lenders, the Term DIP Lenders, the Prepetition ABL Agent, and the Prepetition Secured Parties, any deemed draw and borrowing pursuant to paragraph 12(c)(i)(x) for amounts under paragraph 12(a)(iii) above shall be limited to the greater of (x) the sum of (I) the aggregate unpaid amount of Estimated Fees and Expenses included in such Weekly Statements timely received by the Debtors prior to the Termination Declaration Date *plus*, without duplication, (II) the lesser of (1) the aggregate unpaid amount of Estimated Fees and Expenses included in the Final Statements timely received by the Debtors pertaining to the period through and including the Termination Declaration Date and (2) the Budgeted Cushion Amount (as defined below), and (y) the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for the period prior to the Termination Declaration Date (such amount, the "DIP Professional Fee Carve Out Cap"). For the avoidance of doubt, at all times, the DIP ABL Agent and the Term DIP Agent shall be entitled to maintain reserves (the "Carve-Out Reserve"), including, without limitation, a reserve in an amount (the "Carve-Out Reserve Amount")[15] equal to the sum of (i) the greater of (x) the aggregate unpaid amount of Estimated Fees and Expenses included in all Weekly Statements timely received by the Debtors, and (y) the aggregate amount of Allowed Professional Fees contemplated to be unpaid in the Approved Budget at the applicable time, *plus* (ii) the Post-Carve Out Trigger Notice Cap, *plus* (iii) the amounts contemplated under paragraph 12(a)(i) and 12(a)(ii) above, *plus* (iv) an amount equal to the amount of Allowed Professional Fees set forth in the Approved Budget for the then current week occurring after the most recent

---

[15] For the avoidance of doubt, the Carve-Out Reserve and the Carve-Out Reserve Amount shall in no way limit the "Reserves" as defined in the DIP ABL Credit Agreement.

Calculation Date and the two weeks succeeding such current week (such amount set forth in (iv),

regardless of whether such reserve is maintained, the "Budgeted Cushion Amount"). Not later

than 7:00 p.m. New York time on the fourth business day of each week starting with the first full

calendar week following the Closing Date, the Debtors shall deliver to the DIP ABL Agent and

the Term DIP Agent a report setting forth the Carve-Out Reserve Amount as of such time, and,

in setting the Carve-Out Reserve, the DIP ABL Agent and the Term DIP Agent shall be entitled

to rely upon such reports in accordance with the DIP ABL Credit Agreement and section 8.16

the Term DIP Credit Agreement, respectively. Prior to the delivery of the first report setting forth

the Carve-Out Reserve Amount, the DIP ABL Agent and the Term DIP Agent shall calculate the

Carve-Out Reserve Amount by reference to the Approved Budget for subsection (i) of the Carve-

Out Reserve Amount and for the portion of the Carve-Out Reserve Amount attributable to

section 12(a)(i).

(c)     Carve Out Reserves

(i)     On the day on which a Carve Out Trigger Notice is given by the

DIP ABL Agent or the Term DIP Agent to the Debtors with a copy to counsel to the Creditors'

Committee (if appointed) (the "Termination Declaration Date"), the Carve Out Trigger Notice

shall (x) be deemed a draw request and notice of borrowing by the Debtors for DIP Loans under

the DIP ABL Credit Agreement or the Term DIP Credit Agreement, as applicable (on a pro rata

basis based on the then outstanding DIP Commitments), in an amount equal to the sum of (1) the

amounts set forth in paragraphs 12(a)(i) and 12(a)(ii) above, and (2) the lesser of (a) the then

unpaid amounts of the Allowed Professional Fees (b) the DIP Professional Fee Carve Out Cap

(any such amounts actually advanced shall constitute DIP ABL Loans or Term DIP Loans, as

applicable) and (y) also constitute a demand to the Debtors to utilize all cash on hand as of such

34

date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the sum of the amounts set forth in paragraphs 12(a)(i)–(iii) above. The Debtors shall deposit and hold such amounts in trust in a segregated third-party bank account (in respect of amounts funded by the DIP ABL Lenders or from the DIP ABL Priority Collateral) and the Term DIP Agent in trust (in respect of proceeds of the Term Loan Priority Collateral or the proceeds of the Term DIP Loans) exclusively to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.

(ii)    On the Termination Declaration Date, the Carve Out Trigger Notice shall also (x) be deemed a request by the Debtors for DIP ABL Loans under the DIP ABL Credit Agreement or Term DIP Loans under the Term DIP Credit Agreement, as applicable (on a pro rata basis based on the then outstanding DIP Commitments), in an amount equal to the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP ABL Loans or Term DIP Loans, as applicable) and (y) constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap. The Debtors shall deposit and hold such amounts in trust in a segregated third-party account with the DIP ABL Agent or the Term DIP Agent (as applicable) to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.

(iii)    On the first business day after the Term DIP Agent or the DIP ABL Agent gives such notice to such DIP ABL Lenders (as defined in the DIP ABL Credit Agreement), notwithstanding anything in the DIP ABL Credit Agreement to the contrary,

including with respect to the existence of a Default (as defined in the DIP ABL Credit Agreement) or Event of Default, the failure of the Debtors to satisfy any or all of the conditions precedent for DIP ABL Loans under the DIP ABL Facility, any termination of the DIP Commitments following an Event of Default, or the occurrence of the Maturity Date, each DIP ABL Lender with an outstanding DIP Revolving Loan Commitment (on a pro rata basis based on the then outstanding DIP Revolving Loan Commitments) shall make available to the DIP ABL Agent such DIP ABL Lender's pro rata share with respect to such borrowing in accordance with the DIP ABL Facility; *provided* that in no event shall the DIP ABL Agent or the DIP ABL Lenders be required to extend DIP ABL Loans pursuant to a deemed draw and borrowing pursuant to paragraphs 12(c)(i)(x) and 12(c)(ii)(x) in an aggregate amount exceeding the Carve-Out Reserve Amount.

(iv)    All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full. If the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (vi), below, all remaining funds in (x) the account funded by the DIP ABL Lenders shall be distributed *first* to the DIP ABL Agent on account of the DIP ABL Obligations until indefeasibly Paid in Full, and *thereafter* for application to the Prepetition ABL Obligations in accordance with the Prepetition ABL Credit Agreement and (y) all remaining funds in the account funded by the Term DIP Lenders shall be distributed to the Term DIP Agent which shall apply such funds to the Term DIP Obligations in accordance with the Term DIP Credit Agreement until indefeasibly Paid in Full.

(v)    All funds in the Post Carve Out Trigger Notice Reserve, to the

extent they exceed the DIP Professional Fee Carve Out Cap, shall be used first to pay the

obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve

Out Amounts"). If, after such application, the Post Carve Out Trigger Notice Reserve has not

been reduced to zero, subject to clause (vi) below, all remaining funds (x) in respect of the

account funded by the DIP ABL Lenders, shall be distributed *first* to the DIP ABL Agent on

account of the DIP ABL Obligations until indefeasibly Paid in Full, and *thereafter* for

application to the Prepetition ABL Obligations in accordance with the Prepetition ABL Credit

Agreement and (y) all remaining funds in the account funded by the Term DIP Lenders shall be

distributed to the Term DIP Agent, which shall apply such funds to the Term DIP Obligations in

accordance with the Term DIP Credit Agreement until indefeasibly Paid in Full.

(vi)    Notwithstanding anything to the contrary in the DIP ABL

Documents, the Term DIP Documents, or this Interim Order, (x) if either of the Carve Out

Reserves required to be funded by the DIP ABL Lenders is not funded in full in the amounts set

forth in this paragraph, then any excess funds in one of the Carve Out Reserves held in any

account funded by the DIP ABL Lenders following the payment of the Pre-Carve Out Amounts

and Post-Carve Out Amounts (subject to the limits contained in the DIP Professional Fee Carve

Out Cap and the Post-Carve Out Trigger Notice Cap, respectively) shall be used to fund the other

Carve Out Reserve to the extent of any shortfall in funding by the DIP ABL Lenders prior to

making any payments to the DIP ABL Agent or the Prepetition ABL Secured Parties, as

applicable, and (y) if either of the Carve Out Reserves required to be funded with the proceeds of

Prepetition Term Loan Priority Collateral is not funded in full in the amounts set forth in this

paragraph, then any excess funds in one of the Carve Out Reserves held in any account funded

by such cash on hand following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts (subject to the Post-Carve Out Trigger Notice Cap), respectively, shall be used to fund the other Carve Out Reserve to the extent of any shortfall in funding by the cash on hand prior to making any payments to the Term DIP Agent or the Prepetition Secured Parties, as applicable.

(vii)    Notwithstanding anything to the contrary in the DIP ABL Documents, the Term DIP Documents or this Interim Order, following delivery of a Carve Out Trigger Notice, the DIP ABL Agent and the Prepetition ABL Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves required to be funded by the DIP ABL Lenders have been fully funded, but the DIP ABL Agent and the Prepetition ABL Agent have a security interest in any residual interest in the Carve Out Reserves held in accounts by the DIP ABL Agent, with any excess paid as provided in paragraphs (iv) and (v) above; and (y) the Term DIP Agent and the Prepetition First Lien Term Loan Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid as provided in paragraphs (iv) and (v) above. The security interests of the DIP ABL Agent and the Term DIP Agent on any residual interest in the Carve Out Reserves shall be shared pro rata based on the amount of funds in the Carve Out Reserves funded by (x) the proceeds of Term DIP Priority Collateral and (y) the DIP ABL Lenders or the DIP ABL Collateral. Further, notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute DIP Loans or increase or reduce the Term DIP Obligations or the DIP ABL Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect

38

the priority of the Carve Out, and (iii) in no way shall the Initial Budget, Approved Budget, Carve Out, Post- Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order, the Term DIP Facility, the DIP ABL Facility, or in any Prepetition Credit Agreement, the Carve Out shall be senior to all liens and claims securing the Term DIP Facility, the DIP ABL Facility, the Adequate Protection Liens, and the 507(b) Claim, and any and all other forms of adequate protection, liens, or claims securing the Term DIP Obligations, the DIP ABL Obligations, or the Prepetition Secured Obligations.

(d)    Payment of Allowed Professional Fees Prior to the Termination Declaration Date. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(e)    No Direct Obligation To Pay Allowed Professional Fees. None of the Term DIP Agent, DIP ABL Agent, DIP ABL Lenders, Term DIP Lenders, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the Term DIP Agent, DIP ABL Agent, the Term DIP Lenders, or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

IMPAC 6317745v.1

(f)    <u>Payment of Carve Out On or After the Termination Declaration Date</u>. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis. Any funding of the Carve Out by the Term DIP Lenders shall be added to, and made a part of, the Term DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Interim Order, the DIP Documents, the Bankruptcy Code, and applicable law.  Any funding of the Carve Out by the DIP ABL Lenders shall be added to, and made a part of, the DIP ABL Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Interim Order, the DIP Documents, the Bankruptcy Code, and applicable law.

13.    *DIP Superpriority Claims.*  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the DIP Loan Parties on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims against the DIP Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c) (subject to entry of a Final Order containing such a waiver), 507(a), 507(b), 546(c), 546(d), 726, 1113, 1114 or any other section of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "**DIP Superpriority Claims**") shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the

Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse

to all pre- and postpetition property of the DIP Loan Parties and all proceeds thereof in

accordance with the DIP Credit Agreements and this Interim Order, subject only to the liens on

such property and the Carve-Out.  The DIP Superpriority Claims shall be entitled to the full

protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any

provision hereof is reversed or modified on appeal.  The DIP Superpriority Claims in respect of

the DIP ABL Obligations and the Term DIP Obligations shall, without otherwise impairing the

lien priorities as set forth herein, be *pari passu* in right of payment with one another and senior to

the Adequate Protection Claims; *provided* that the DIP Superpriority Claims in respect of the

Term DIP Roll-Up Loans shall be subject and subordinate to the DIP Superpriority Claims in

respect of the New Money Term DIP Loans.

14.    *DIP Liens.*

(a)    *DIP ABL Liens.*  As security for the DIP ABL Obligations, effective and

perfected upon the date of this Interim Order and without the necessity of the execution,

recordation or filing by the DIP ABL Loan Parties of mortgages, security agreements, control

agreements, pledge agreements, financing statements or other similar documents, any notation of

certificates of title for a titled good or the possession or control by the DIP ABL Agent of, or

over, any DIP Collateral (including for the avoidance of doubt any DIP ABL Collateral as

defined in the DIP ABL Credit Agreement), the following security interests and liens are hereby

granted to the DIP ABL Agent for its own benefit and the benefit of the DIP ABL Secured

Parties (all property identified in clauses (i)-(iii) below being collectively referred to as the "**DIP

ABL Collateral**"), subject only to the payment of the Carve-Out and in each case in accordance

with the priorities set forth in __Exhibit A__ hereto (all such liens and security interests granted to

41

the DIP ABL Agent, for its benefit and for the benefit of the DIP ABL Lenders, pursuant to this Interim Order and the DIP ABL Financing Documents, the "**DIP ABL Liens**"):[16]

(i)      <u>Liens on Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected (A) first priority senior security interest in and lien upon all tangible and intangible pre- and postpetition property (including mineral rights) of the DIP ABL Loan Parties, whether existing on the Petition Date or thereafter acquired, of the same nature, scope and type as the Prepetition ABL Priority Collateral and the proceeds, products, rents and profits thereof, which, subject to and upon entry of the Final Order, shall include any Avoidance Proceeds related to the forgoing ("**DIP ABL Priority Collateral**," which for the avoidance of doubt shall include Prepetition ABL Priority Collateral), and (B) junior security interest in (to the extent set forth on **Exhibit A** hereto) and lien upon all tangible and intangible pre- and postpetition property of the DIP ABL Loan Parties, whether existing on the Petition Date or thereafter acquired, of the same nature, scope and type as the Prepetition Term Loan Priority Collateral, and the proceeds, products, rents and profits thereof, in each case that, on or as of the Petition Date are not subject to either (x) a valid, perfected and non-avoidable lien, or (y) a valid and non-avoidable lien in existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and in each case other than the Avoidance Actions[17] (but including Avoidance Proceeds[18]

---

[16] For the avoidance of doubt, DIP ABL Liens include the New Money DIP ABL Liens and all security interests and liens in respect of the ABL Roll-Up Loans.

[17] "**Avoidance Actions**" means, collectively, claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code.

[18] "**Avoidance Proceeds**" means any proceeds or property recovered, unencumbered or otherwise, from Avoidance Actions, whether by judgment, settlement or otherwise.

IMPAC 6317745v.1

subject to entry of the Final Order), but in each case subject to the Carve-Out, provided that (a) solely with respect to the ABL Roll-Up Loans, the security interests and liens granted pursuant to this clause (i) shall not include liens on any real property lease that, as of the Petition Date, was not subject to a valid and perfected lien securing the Prepetition First Lien Term Loans in accordance with the Prepetition First Lien Term Loan Credit Agreement because the consent of the applicable lessor to the creation of a security interest in favor of the Prepetition First Lien Term Lenders was required pursuant to the terms of the applicable real property lease and such consent was not obtained (the "**Specified Excluded Unencumbered Property**"); and (b) until entry of a Final Order granting such relief, with respect to the new money DIP ABL Loans the security interests and liens granted pursuant to this clause (i) shall not include liens on the Specified Excluded Unencumbered Property.  Notwithstanding the foregoing, the DIP Liens shall in all events attach, effective and perfected upon the date of this Interim Order, to all proceeds, products, offspring, or profits from all sales, transfers, dispositions, or monetization of any and all Specified Excluded Unencumbered Property;

(ii)    Liens Priming Certain Prepetition Secured Parties' Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code: (A) a valid, binding, continuing, enforceable, fully-perfected first priority priming security interest in and lien upon all pre- and postpetition property (including mineral rights) of the DIP Loan Parties of the same nature, scope and type as the Prepetition ABL Priority Collateral, regardless of where located, that are subject to (1) valid, perfected and non-avoidable liens as of the Petition Date or (2) valid and non-avoidable liens as of the Petition Date and that are perfected after the Petition Date to the extent provided by section 546(b) of the Bankruptcy Code, regardless of whether or not any liens on such assets are

IMPAC 6317745v.1

voided, avoided, invalidated, lapsed or unperfected, which security interest and lien shall prime the Prepetition ABL Liens and the Prepetition Term Liens (the "**DIP ABL Priority Collateral Priming Liens**"), and (B) a valid, binding, continuing, enforceable, fully-perfected priming security interest in and lien upon (with priority as set forth on **Exhibit A** hereto) all pre- and postpetition property of the DIP Loan Parties that  are subject to (1) valid, perfected and non-avoidable liens as of the Petition Date or (2) valid and non-avoidable liens as of the Petition Date and that are perfected after the Petition Date to the extent provided by section 546(b) of the Bankruptcy Code, of the same nature, scope and type as the Prepetition Term Loan Priority Collateral (as defined below), regardless of where located, regardless of whether or not any liens on such assets are voided, avoided, invalidated, lapsed or unperfected, which security interest and lien shall prime the Prepetition ABL Liens and Prepetition Second Lien Term Liens (the "**DIP ABL Term Loan Priority Collateral Priming Liens**," and together with the DIP ABL Priority Collateral Priming Liens, the "**DIP ABL Priming Liens**").  Notwithstanding anything herein to the contrary, but subject to the relative priorities set forth in paragraph 14(c) herein, the DIP ABL Priming Liens shall be (A) subject and junior to the Carve-Out in all respects, (B)  junior to (1) valid, perfected and non-avoidable liens, if any, to which the Prepetition ABL Liens are subject to, and (2) valid and non-avoidable liens to which the Prepetition ABL Liens are subject to and that are perfected after the Petition Date to the extent provided by section 546(b) of the Bankruptcy Code, in each case unless such liens are themselves Prepetition ABL Liens, and (C) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code; and

(iii)      <u>Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, and subject to the Carve-Out, a valid, binding, continuing, enforceable, fully-perfected junior security interest (to the extent set forth on **<u>Exhibit A</u>** hereto) in and lien upon (A) all pre- and postpetition property of the Term DIP Loan Parties of the same nature, scope and type as the Prepetition Term Loan Priority Collateral and (B) all pre- and postpetition property of the ABL DIP Loan Parties of the same nature, scope and type as the Prepetition ABL Priority Collateral that, on or as of the Petition Date, is subject to valid, perfected and non-avoidable senior liens or valid and non-avoidable senior permitted liens in existence immediately prior to the Petition Date or that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, in each case other than the Prepetition ABL Liens.

(iv)      <u>Specified Excluded Unencumbered Property</u>. Subject to entry of a Final Order approving such relief and the DIP Liens being granted on Specified Excluded Unencumbered Property, notwithstanding anything to the contrary in the Motion, the DIP Documents, this Interim Order or any Final Order, in no event shall the DIP Collateral include or the DIP Liens attach to, any Specified Excluded Unencumbered Property, or any of such relevant Debtor's rights or interests thereunder, if and for so long as the grant of such security interest would constitute or result in: (a) the abandonment, invalidation, unenforceability, or other impairment of any right, title, or interest of any Debtor therein, or (b) in a breach or termination pursuant to the terms of, or a default under, any such lease, license, contract, agreement, or other property right pursuant to any provision thereof, unless, in the case of each of clauses (a) and (b), the applicable provision is rendered ineffective by applicable non-bankruptcy law or the Bankruptcy Code; *provided that*, the foregoing shall not preclude any counterparty to a Specified Excluded Unencumbered Property from an opportunity to be heard in this Court on notice with

respect to whether applicable non bankruptcy law or the Bankruptcy Code renders such provision ineffective.

(b)    *Term DIP Liens.*  As security for the Term DIP Obligations, effective and perfected upon the date of this Interim Order and without the necessity of the execution, recordation or filing by the Term DIP Loan Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the Term DIP Agent of, or over, any DIP Collateral, the following security interests and liens are hereby granted to the Term DIP Agent for its own benefit and the benefit of the Term DIP Lenders (all property identified in clauses (i)-(iii) below being collectively referred to as the "**Term DIP Collateral**" and, collectively with DIP ABL Collateral, the "**DIP Collateral**"), subject only to the payment of the Carve-Out and in each case in accordance with the priorities set forth in **Exhibit A** hereto (all such liens and security interests granted to the Term DIP Agent, for its benefit and for the benefit of the Term DIP Lenders, pursuant to this Interim Order and the Term DIP Documents, the "**Term DIP Liens**" and together with the DIP ABL Liens, the "**DIP Liens**"):

(i)    <u>Liens on Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected (A) first priority senior security interest in and lien upon all tangible and intangible pre- and postpetition property (including mineral rights) of the Term DIP Loan Parties, whether existing on the Petition Date or thereafter acquired, of the same nature, scope and type as the Prepetition Term Loan Priority Collateral, and the proceeds, products, rents and profits thereof, which, subject to and upon entry of the Final Order, shall include any Avoidance Proceeds related to the forgoing ("**DIP Term Loan Priority Collateral**," which for the avoidance of doubt shall include Prepetition Term

Loan Priority Collateral) and (B) junior security interest in and lien upon all tangible and intangible pre- and postpetition property of the Term DIP Loan Parties, whether existing on the Petition Date or thereafter acquired, of the same nature, scope and type as the Prepetition ABL Priority Collateral, and the proceeds, products, rents and profits thereof, in each case that, on or as of the Petition Date are not subject to either (x) a valid, perfected and non-avoidable lien, or (y) a valid and non-avoidable lien in existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and in each case, other than the Avoidance Actions (but including Avoidance Proceeds subject to entry of the Final Order), but in each case subject to the Carve-Out, provided that, (a) with respect to the Term DIP Roll-Up Loans, the security interests and liens granted pursuant to this clause (i) shall not include liens on the Specified Excluded Unencumbered Property; and (b) until entry of a Final Order granting such relief, with respect to the New Money Term DIP Loans the security interests and liens granted pursuant to this clause (i) shall not include liens on the Specified Excluded Unencumbered Property.  Notwithstanding the foregoing, the DIP Liens shall in all events attach, effective and perfected upon the date of this Interim Order, to all proceeds, products, offspring, or profits from all sales, transfers, dispositions, or monetization of any and all Specified Excluded Unencumbered Property;

       (ii)    <u>Liens Priming Certain Prepetition Secured Parties' Liens</u>.  Pursuant to section 364(d)(1) of the Bankruptcy Code: (A) a valid, binding, continuing, enforceable, fully-perfected first priority priming security interest in and lien upon all pre- and postpetition property (including mineral rights) of the DIP Loan Parties that are subject to (1) valid, perfected and nonavoidable liens as of the Petition Date or (2) valid and non-avoidable liens as of the Petition Date and that are perfected after the Petition Date to the extent provided by section 546(b) of the

Bankruptcy Code, of the same nature, scope and type as the Prepetition Term Loan Priority

Collateral, regardless of where located, regardless of whether or not any liens on such assets are

voided, avoided, invalidated, lapsed or unperfected, which security interest and lien shall prime

the Prepetition ABL Liens and the Prepetition Term Liens (the "**Term DIP Term Loan Priority**

**Collateral Priming Liens**"), and (B) a valid, binding, continuing, enforceable, fully-perfected

priming security interest in and lien upon (with priority as set forth on **Exhibit A** hereto) all pre-

and postpetition property of the DIP Loan Parties that are subject to (1) valid, perfected and

nonavoidable liens as of the Petition Date or (2) valid and non-avoidable liens as of the Petition

Date and that are perfected after the Petition Date to the extent provided by section 546(b) of the

Bankruptcy Code, of the same nature, scope and type as the Prepetition ABL Priority Collateral,

regardless of where located, regardless of whether or not any liens on such assets are voided,

avoided, invalidated, lapsed or unperfected, which security interest and lien shall prime the

Prepetition First Lien Term Liens and Prepetition Second Lien Term Liens (the "**Term DIP**

**ABL Priority Collateral Priming Liens**", and together with the Term DIP Term Loan Priority

Collateral Priming Liens, the "**Term DIP Priming Liens**").  Notwithstanding anything herein to

the contrary, but subject to the relative priorities set forth in paragraph 14(c) herein, the Term

DIP Priming Liens shall be (A) subject and junior to the Carve-Out in all respects, (B)  junior to

(1) valid, perfected and non-avoidable liens, if any, to which the Prepetition Term Liens are

subject to and (2) valid and non-avoidable liens to which the Prepetition Term Liens are subject

to and that are perfected after the Petition Date to the extent provided by section 546(b) of the

Bankruptcy Code, in each case unless such liens are themselves Prepetition Term Liens, and (C)

not subordinate to any lien, security interest or mortgage that is avoided and preserved for the

benefit of the Debtors and their estates under section 551 of the Bankruptcy Code; and

(iii)     <u>Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior security interest in and lien upon (A) all pre- and postpetition property of the DIP ABL Loan Parties of the same nature, scope and type as the Prepetition ABL Priority Collateral and (B) all pre- and postpetition property of the Term DIP Loan Parties of the same nature, scope and type as the Prepetition Term Loan Priority Collateral that, on or as of the Petition Date, is subject to valid, perfected and non-avoidable senior liens or valid and non-avoidable senior permitted liens in existence immediately prior to the Petition Date or that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, in each case other than the Prepetition Term Liens;

(iv)     <u>Specified Excluded Unencumbered Property</u>. Subject to entry of a Final Order approving such relief and the DIP Liens being granted on Specified Excluded Unencumbered Property, notwithstanding anything to the contrary in the Motion, the DIP Documents, this Interim Order or any Final Order, in no event shall the DIP Collateral include or the DIP Liens attach to, any Specified Excluded Unencumbered Property, or any of such relevant Debtor's rights or interests thereunder, if and for so long as the grant of such security interest would constitute or result in: (a) the abandonment, invalidation, unenforceability, or other impairment of any right, title, or interest of any Debtor therein, or (b) in a breach or termination pursuant to the terms of, or a default under, any such lease, license, contract, agreement, or other property right pursuant to any provision thereof, unless, in the case of each of clauses (a) and (b), the applicable provision is rendered ineffective by applicable non-bankruptcy law or the Bankruptcy Code; *provided that*, the foregoing shall not preclude any counterparty to a Specified Excluded Unencumbered Property from an opportunity to be heard in this Court on notice with

respect to whether applicable non bankruptcy law or the Bankruptcy Code renders such provision ineffective.

(c)    *Relative Priority of Liens*.  Notwithstanding anything to the contrary herein, (i) in respect of the Term DIP Collateral, the DIP Liens in respect of the Term DIP Roll-Up Loans (the "**Term DIP Roll-Up Liens**") shall be subject and subordinate to the DIP Liens in respect of the New Money Term DIP Loans (the "**New Money Term DIP Liens**"), and (ii) in respect of the Specified Excluded Unencumbered Property, the DIP Liens in respect of the new money portion of the DIP ABL Facility (the "**New Money DIP ABL Liens**") shall be subject to and subordinate to the New Money Term DIP Liens.  Notwithstanding anything to the contrary in the preceding sentence, this Interim Order or in the DIP Documents, the relative priority of each DIP Lien granted in this paragraph 14 shall be as set forth in **Exhibit A** attached hereto and the relative priority of the Prepetition ABL Liens, the ABL Indemnification Liens, the Prepetition ABL Adequate Protection Liens, Prepetition Term Liens and the Prepetition Term Loan Adequate Protection Liens shall be as set forth in **Exhibit A** attached hereto; *provided* that, for the avoidance of doubt, each such lien shall be subject and subordinate to the Carve-Out.

(d)    *Automatic Effectiveness of Liens*.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby vacated and modified to permit the DIP Loan Parties to grant the liens and security interests to the DIP Agents, the other DIP Secured Parties and the Prepetition Secured Parties, in any such case, contemplated by this Interim Order and the other DIP Documents, and such liens and security interests are hereby automatically granted, attached and perfected.

15.    *Protection of DIP Lenders' Rights.*

(a)     So long as (1) there are any Term DIP Obligations outstanding or the Term DIP Lenders have any outstanding "Commitments" (as defined, and used, in the Term DIP Credit Agreement) (the "**Term DIP Commitments**") under the Term DIP Credit Agreement, or (2) there is any Prepetition First Lien Term Loan Debt outstanding under the Prepetition First Lien Term Loan Credit Agreement, the Prepetition ABL Secured Parties shall:  (i) with respect to the DIP Term Loan Priority Collateral and Prepetition Term Loan Priority Collateral, have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted pursuant to the Prepetition Documents or this Interim Order, or otherwise seek to exercise or enforce any rights or remedies against such DIP Term Loan Priority Collateral and Prepetition Term Loan Priority Collateral, including in connection with the ABL Indemnification Liens, the Prepetition ABL Liens or the Prepetition ABL Adequate Protection Liens; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, such DIP Term Loan Priority Collateral and Prepetition Term Loan Priority Collateral  (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in cash in full of the Term DIP Obligations and termination of the Term DIP Commitments and payment in cash in full of the Prepetition First Lien Term Loan Debt), to the extent such transfer, disposition, sale or release is authorized under the DIP Documents; (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in such DIP Term Loan Priority Collateral and Prepetition Term Loan Priority Collateral unless, solely as to this clause (iii), the DIP Agents or the DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to this Interim Order, or as may be required by applicable state law to continue the perfection of valid and non-avoidable liens or security interests as of the

Petition Date and (iv) at the request of the Term DIP Agent, deliver or cause to be delivered, at

the Term DIP Loan Parties' cost and expense, any termination statements, releases and/or

assignments in favor of the Term DIP Agents or the Term DIP Lenders or other documents

necessary to effectuate and/or evidence the release, termination and/or assignment of liens on

any portion of such DIP Term Loan Priority Collateral subject to any sale or disposition

permitted by the DIP Documents and this Interim Order or in connection with the ABL

Discharge.

   (b)  So long as (1) there are any DIP ABL Obligations outstanding or the DIP

ABL Lenders have any outstanding "DIP Revolving Loan Commitment" (as defined, and used,

in the DIP ABL Credit Agreement) (the "**DIP ABL Commitments**," and together with the Term

DIP Commitments, the "**DIP Commitments**") under the DIP ABL Credit Agreement or (2)

there is any Prepetition ABL Debt outstanding (including any Prepetition ABL Indemnification

Obligations) under the Prepetition ABL Credit Agreement, the Prepetition Term Loan Secured

Parties shall: (i) with respect to the Prepetition ABL Priority Collateral and DIP ABL Priority

Collateral, have no right to and shall take no action to foreclose upon, or recover in connection

with, the liens granted pursuant to the Prepetition Documents or this Interim Order, or otherwise

seek to exercise or enforce any rights or remedies against such Prepetition ABL Priority

Collateral and DIP ABL Priority Collateral, including in connection with the Prepetition Term

Liens or the Prepetition Term Loan Adequate Protection Liens; (ii) be deemed to have consented

to any transfer, disposition or sale of, or release of liens on, such Prepetition ABL Priority

Collateral or DIP ABL Priority Collateral (but not any proceeds of such transfer, disposition or

sale to the extent remaining after payment in cash in full of the DIP ABL Obligations and

Prepetition ABL Debt and termination of the DIP ABL Commitments and "Commitments" as

defined under the Prepetition ABL Credit Agreement), to the extent such transfer, disposition, sale or release is authorized under the DIP Documents; (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in such Prepetition ABL Priority Collateral or DIP ABL Priority Collateral unless, solely as to this clause (b), the DIP Agents or the DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to this Interim Order, or as may be required by applicable state law to continue the perfection of valid and non-avoidable liens or security interests as of the Petition Date and (iv) at the request of the DIP ABL Agent or Prepetition ABL Agent, deliver or cause to be delivered, at the DIP ABL Loan Parties' or Prepetition ABL Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the DIP ABL Agents or Prepetition ABL Agents or the DIP ABL Lenders or Prepetition ABL Lenders or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of such Prepetition ABL Priority Collateral or DIP ABL Priority Collateral subject to any sale or disposition permitted by the DIP Documents and this Interim Order or in connection with the ABL Discharge.

(c)     To the extent any Prepetition ABL Secured Party has possession of any Prepetition ABL Priority Collateral or DIP ABL Priority Collateral or has control with respect to any Prepetition ABL Priority Collateral or DIP ABL Priority Collateral, or has been noted as a secured party on any certificate of title for a titled good constituting Prepetition ABL Priority Collateral or DIP ABL Priority Collateral, then such Prepetition ABL Secured Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Agents and the DIP Lenders

53

(subject to the priorities set forth in **Exhibit A** hereto), and it shall comply with the instructions of the DIP ABL Agent with respect to the exercise of such control.

(d)    To the extent any Prepetition Term Loan Secured Party has possession of any Prepetition Term Loan Priority Collateral or DIP Term Loan Priority Collateral or has control with respect to any Prepetition Term Loan Priority Collateral or DIP Term Loan Priority Collateral, or has been noted as a secured party on any certificate of title for a titled good constituting Prepetition Term Loan Priority Collateral or DIP Term Loan Priority Collateral, then such Prepetition Term Loan Secured Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Agents and the DIP Lenders (subject to the priorities set forth in **Exhibit A** hereto), and it shall comply with the instructions of the Term DIP Agent with respect to the exercise of such control.

(e)    Any proceeds of Prepetition Collateral received by any Prepetition Secured Party in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral or otherwise received by any Prepetition Secured Party shall be segregated and held in trust for the benefit of and forthwith paid over to the applicable DIP Agents for the benefit of the applicable DIP Secured Parties (subject to the priorities set forth in **Exhibit A** hereto) in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct.  The DIP Agents are hereby authorized to make any such endorsements as agent for any such Prepetition Secured Party.  This authorization is coupled with an interest and is irrevocable.

(f)    The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the DIP Secured Parties in respect

of any DIP Facility to enforce all of their rights under the applicable DIP Documents and take

any or all of the following actions, at the same or different time, in each case without further

order or application of the Court: (i) immediately upon the occurrence of an Event of Default,

declare (A) the termination, reduction or restriction of any further DIP Commitment to the extent

any such DIP Commitment remains, (B) all DIP Obligations to be immediately due, owing and

payable, without presentment, demand, protest, or other notice of any kind, all of which are

expressly waived by the DIP Loan Parties; notwithstanding anything herein or in any DIP

Document to the contrary, (ii) the termination of the applicable DIP Documents as to any future

liability or obligation of the applicable DIP Agent and the applicable DIP Lenders (but, for the

avoidance of doubt, without affecting any of the DIP Liens or the DIP Obligations), (iii) subject

to the Remedies Notice Period (as defined below), whether or not the maturity of any of the DIP

Obligations shall have been accelerated, proceed to protect, enforce and exercise all rights and

remedies of the DIP Secured Parties under the DIP Documents for such DIP Facility or

applicable law, including, but not limited to, by suit in equity, action at law or other appropriate

proceeding, whether for the specific performance of any covenant or agreement contained in any

such DIP Document or any instrument pursuant to which such DIP Obligations are evidenced,

and, if such amount shall have become due, by declaration or otherwise, proceed to enforce the

payment thereof or any other legal or equitable right of any of such DIP Secured Parties, and (iv)

unless this Court orders otherwise during the Remedies Notice Period after a hearing, upon the

occurrence of an Event of Default and the giving of five business days' prior written notice

(which shall run concurrently with any notice required to be provided under the DIP Documents)

(the "**Remedies Notice Period**") via email to counsel to the Debtors and the office of the United

States Trustee for the District of Delaware (the "**U.S. Trustee**") to (A) withdraw consent to the

DIP Loan Parties' continued use of Cash Collateral and (B) exercise all other rights and remedies provided for in the DIP Documents and under applicable law with respect to the DIP Collateral; *provided*, that no such notice shall be required for any exercise of rights or remedies (A) to block or limit withdrawals from any bank accounts that are a part of the Collateral (including, without limitation, by sending any control activation notices to depositary banks pursuant to any control agreement) or (B) in the event of DIP Obligations that have not been Paid in Full (other than contingent indemnification obligations as to which no claim has been asserted) on the applicable termination of the respective DIP Document.

(g)     During the Remedies Notice Period, the DIP Loan Parties shall be permitted to use Cash Collateral solely to (A) pay payroll and other critical administrative expenses to keep the business of the DIP Loan Parties operating, strictly in accordance with the Approved Budget and (B) fund the Carve-Out.  During the Remedies Notice Period, the Debtors, the Committee (if appointed) and/or any party in interest shall be entitled to seek an emergency hearing with the Court within the Remedies Notice Period.  Subject to entry of a Final Order approving such relief, the Debtors have irrevocably waived their right to seek relief under the Bankruptcy Code, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights or remedies of the DIP Secured Parties set forth in this Interim Order or the DIP Documents.

(h)     Subject to entry of a Final Order approving such relief (with respect to any party other than the DIP Secured Parties, and Prepetition Secured Parties or parties to the RSA), in no event shall the DIP Agents, the DIP Lenders, or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.  Further, subject to entry of a Final Order approving such relief, in no event shall the

"equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Prepetition Secured Parties.

(i)    No rights, protections or remedies of the DIP Agents or the DIP Lenders granted by the provisions of this Interim Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the DIP Loan Parties' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the DIP Loan Parties' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the DIP Loan Parties' continued use of Cash Collateral or the provision of adequate protection to any party.

(j)    Except to the extent the DIP Lenders are required to fund the Carve Out as set forth in this Interim Order, the DIP Agents and DIP Lenders shall have no obligation to make any loan or advance under the DIP Documents, unless all of the conditions precedent to the making of such extension of credit under the DIP Documents and this Interim Order have been satisfied in full or waived in writing by the applicable DIP Agent and in accordance with the terms of the applicable DIP Documents.

16.    *Proceeds of Subsequent Financing*.  Without limiting the provisions and protections of Paragraph 14 above, but subject in all respects to the Carve-Out, if at any time prior to the Repayment in Full in accordance with the DIP Documents of all the DIP Obligations (through and including the effective date of any chapter 11 plan or plans with respect to any of the Debtors), the Debtors' estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d), or any other provision of the Bankruptcy Code in violation of this Interim Order or the DIP Documents, then all of the cash proceeds derived from such credit or debt and

57

all Cash Collateral shall immediately be turned over to the DIP Agents for application to the DIP

Obligations, in accordance with the priorities set forth herein, until such DIP Obligations are

Paid in Full.

17.    *Limitation on Charging Expenses Against Collateral.*  Subject to entry of a Final

Order approving such relief, and subject to the Carve-Out, no costs or expenses of administration

of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation

in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or

recovered from the Collateral (including Cash Collateral) pursuant to section 506(c) of the

Bankruptcy Code or any similar principle of law, without the prior express written consent of

each of the DIP Agents, the Prepetition Agents (in the case of the Prepetition ABL Agent, prior

to the ABL Discharge) and the Prepetition Lenders, as the case may be, that holds a lien on the

relevant asset, and no such consent shall be implied from any other action, inaction, or

acquiescence by the DIP Agents, the DIP Lenders, the Prepetition Agents or the Prepetition

Lenders, and nothing contained in this Interim Order shall be deemed to be a consent by the DIP

Agents, the DIP Lenders or the Prepetition Secured Parties to any charge, lien, assessment or

claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

18.    *Payments Free and Clear.*  Any and all payments or proceeds remitted to the DIP

Agents by, through or on behalf of the DIP Lenders pursuant to the provisions of the Interim

Order, the Final Order, the DIP Documents or any subsequent order of the Court shall be

irrevocable, received free and clear of any claim, charge, assessment or other liability, including

without limitation, any such claim or charge arising out of or based on, directly or indirectly,

sections 506(c) or 552(b) of the Bankruptcy Code (subject to entry of the Final Order approving

the waiver of the Debtors' rights under sections 506(c) and 552(b) of the Bankruptcy Code), whether asserted or assessed by through or on behalf of the Debtors.

19.    *Use of Cash Collateral*.  The DIP Loan Parties are hereby authorized, subject to the terms and conditions of this Interim Order, to use Cash Collateral; *provided* that (a) the Prepetition Secured Parties are granted the Adequate Protection as hereinafter set forth and (b) except on the terms and conditions of this Interim Order, the DIP Loan Parties shall be prohibited from at any time using the Cash Collateral absent further order of the Court.

20.    *ABL Indemnification Liens and Adequate Protection of Prepetition ABL Secured Parties*.  The Prepetition ABL Secured Parties are entitled to (a) the ABL Indemnification Liens and (b) pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, adequate protection of their interests in all Prepetition Collateral, including Cash Collateral, in an amount equal to the aggregate diminution in the value of the Prepetition ABL Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from the depreciation, sale, lease or use by the DIP Loan Parties (or other decline in value) of the Prepetition Collateral, the priming of the Prepetition ABL Liens by the DIP Liens pursuant to the DIP Documents and this Interim Order and/or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "**Prepetition ABL Adequate Protection Claim**").  In consideration of the foregoing, the Prepetition ABL Secured Parties are hereby granted the following, in each case, subject to the Carve-Out (collectively, the "**Prepetition ABL Secured Parties Adequate Protection Obligations**"):

(a)    ABL Indemnification Liens and Prepetition ABL Adequate Protection Liens.  The Prepetition ABL Agent (for itself and for the benefit of the Prepetition ABL Lenders)

is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), (i) to secure payment of any and all Prepetition ABL Indemnification Claims and the ABL Indemnification Liens and (ii) to secure payment of any and all of the Prepetition ABL Adequate Protection Claims, a valid, perfected replacement security interest in and lien (the "**Prepetition ABL Adequate Protection Liens**") (subject to the limitations set forth above) upon the Collateral, except for the Specified Excluded Unencumbered Property, in accordance with the priorities shown in <u>**Exhibit A**</u> and in each case subject to the Carve-Out.

(b)     <u>Prepetition ABL Section 507(b) Claim</u>.  The Prepetition ABL Secured Parties are hereby granted against each of the DIP Loan Parties on a joint and several basis an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Prepetition ABL Adequate Protection Claim with, except as set forth in this Interim Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**Prepetition ABL 507(b) Claim**").  The Prepetition ABL 507(b) Claim shall be subject and subordinate only to the Carve-Out and the DIP Superpriority Claims granted in respect of the DIP Obligations and shall be *pari passu* with the Prepetition First Lien Term Loan 507(b) Claim (as defined below) and senior in all respects to the Prepetition Second Lien Term Loan 507(b) Claim (as defined below).  Except to the extent expressly set forth in this Interim Order or the DIP Credit Agreements, the Prepetition ABL Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Prepetition ABL 507(b) Claim unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim

has been asserted) and any claims having a priority superior to or *pari passu* with the DIP

Superpriority Claims have indefeasibly been Paid in Full and the DIP Commitments have been

terminated.  For purposes of this Interim Order, the terms "Paid in Full," "Repaid in Full,"

"Repay in Full," and "Payment in Full" shall mean, with respect to any referenced DIP

Obligations and/or Prepetition Debt, (i) the indefeasible payment in full in cash of such

obligations, (ii) the termination or cash collateralization, in accordance with the DIP Documents

and/or Prepetition Documents, as applicable, of all undrawn letters of credit and Banking

Services Obligations outstanding thereunder, and (iii) the termination of all commitments under

the DIP Documents and/or the Prepetition Debt Documents, as applicable.

    (c) <u>Prepetition ABL Agent Fees and Expenses</u>.  The Prepetition ABL Agent

shall receive from the DIP Loan Parties, for the benefit of the Prepetition ABL Lenders, current

cash payments of the reasonable and documented prepetition and postpetition fees and expenses

with respect to Prepetition ABL Debt under the Prepetition ABL Financing Documents,

including, but not limited to, the reasonable and documented fees and expenses of counsel for the

Prepetition ABL Agent (including Hogan Lovells US LLP as primary counsel to the Prepetition

ABL Agent, Morris, Nichols, Arsht & Tunnell LLP as bankruptcy and Delaware counsel to the

Prepetition ABL Agent, one local counsel to the Prepetition ABL Agent in each other applicable

jurisdiction) promptly upon receipt of invoices therefor.  The DIP Loan Parties are authorized to

pay the prepetition reasonable and documented fees and expenses described in this subsection (c)

immediately upon entry of this Interim Order.  Postpetition, the Prepetition ABL Agent shall

provide summary form fee and expense statements (i.e., without any detail) to the DIP Loan

Parties, the U.S. Trustee, and any Committee, which may be redacted for privileged information.

If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the date that is ten

(10) business days after delivery of such invoice to the Debtors, the U.S. Trustee, and any Committee, the DIP Loan Parties shall promptly pay such invoices.  If an objection to a professional's invoice is timely received, the DIP Loan Parties shall promptly pay the undisputed amount of the invoice and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  The Prepetition ABL Agent (and each of its professionals) shall not be required to comply with U.S. Trustee fee guidelines or file applications or motions with, or obtain approval of, the Court for the payment of any of their out-of-pocket costs, fees, expenses, disbursements and other charges.  Payments of any amounts set forth in this paragraph are not subject to recharacterization, avoidance, subordination or disgorgement.

(d)    Prepetition ABL Secured Parties' Cash Payments.  Subject to reallocation or recharacterization as payment of principal under sections 506(a) and (b) of the Bankruptcy Code, the Prepetition ABL Secured Parties shall receive current cash payments in the amount of interest on the outstanding principal at the non-default rate under the Prepetition ABL Credit Agreement prior to the ABL Discharge.

(e)    Information Rights.  Until the occurrence of the ABL Discharge, the Debtors shall promptly provide the Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Lenders, with all required written financial reporting and other periodic reporting that is delivered by any of the DIP Loan Parties under the DIP Documents.  In addition, the Debtors shall upon reasonable advance notice, permit the Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Lenders, to conduct field audits, collateral examinations, liquidation valuations, and inventory appraisals at reasonable times in respect of any or all of the Collateral

in accordance with the terms and conditions set forth in the Prepetition ABL Financing Documents.

21. *Adequate Protection of Prepetition Term Loan Secured Parties.* The Prepetition Term Loan Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their interests in all Prepetition Collateral, for and equal in amount to the aggregate diminution in the value of the Prepetition Term Loan Secured Parties' interests in the Prepetition Collateral from and after the Petition Date, if any, including, without limitation, any such diminution resulting from the depreciation, sale, lease or use by the DIP Loan Parties (or other decline in value) of the Prepetition Collateral, the priming of the Prepetition Term Liens by the DIP Liens pursuant to the DIP Documents and this Interim Order and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, (the "**Prepetition Term Loan Parties Adequate Protection Claim**" and, together with the Prepetition ABL Adequate Protection Claim, the "**Adequate Protection Claims**"); *provided*, that the avoidance of any Prepetition Term Loan Secured Parties' interests in Prepetition Collateral shall not constitute diminution in the value of such Prepetition Term Loan Secured Party's interests in Prepetition Collateral. As adequate protection of the Prepetition Term Loan Parties Adequate Protection Claim, the Prepetition Term Loan Secured Parties are hereby granted the following, in each case subject to the Carve-Out (collectively, the "**Prepetition Term Loan Adequate Protection Obligations**" and, together with the Prepetition ABL Secured Parties Adequate Protection Obligations, the "**Adequate Protection Obligations**"):

(a) <u>Prepetition Term Loan Adequate Protection Liens</u>. The Prepetition First Lien Term Loan Agent, on behalf of the Prepetition First Lien Term Loan Secured Parties, and the Prepetition Second Lien Term Loan Agent, on behalf of the Prepetition Second Lien Term

Loan Secured Parties, are each hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the applicable Prepetition Term Loan Parties Adequate Protection Claim held by such Prepetition Term Loan Secured Parties, a replacement security interest in and lien (the "**Prepetition Term Loan Adequate Protection Liens**" and, together with the Prepetition ABL Adequate Protection Liens, the "**Adequate Protection Liens**") (subject to the limitations set forth above) upon the Collateral, except for the Specified Excluded Unencumbered Property, in accordance with the priorities shown in **Exhibit A** and in each case subject to the Carve-Out.

(b)    Prepetition Term Loan Secured Parties Section 507(b) Claim.  The Prepetition First Lien Term Loan Secured Parties are hereby granted, subject to the Carve-Out, allowed superpriority claims as provided for in section 507(b) of the Bankruptcy Code, junior to the DIP Superpriority Claims (the "**Prepetition First Lien Term Loan 507(b) Claim**").  The Prepetition Second Lien Term Loan Secured Parties are hereby granted, subject to the Carve-Out, allowed superpriority claims as provided for in section 507(b) of the Bankruptcy Code, junior to the DIP Superpriority Claims, the Prepetition ABL 507(b) Claim and the Prepetition First Lien Term Loan 507(b) Claim (the "**Prepetition Second Lien Term Loan 507(b) Claim**" and, together with the Prepetition First Lien Term Loan 507(b) Claim, the "**Prepetition Term Loan 507(b) Claims**," and the Prepetition Term Loan 507(b) Claims together with the Prepetition ABL 507(b) Claim, the "**507(b) Claims**").  If the Prepetition First Lien Term Loan Secured Parties holding 66.67% of the Prepetition First Lien Term Loan Debt waive the requirement that their Prepetition Term Loan 507(b) Claims be paid in full in cash, then the Prepetition Second Lien Term Loan Secured Parties will also be deemed to waive such

64

requirement.  The Prepetition First Lien Term Loan 507(b) Claim shall be subject and subordinate to only the Carve-Out and the DIP Superpriority Claims granted in respect of the DIP Obligations and shall be *pari passu* with the Prepetition ABL 507(b) Claim.  The Prepetition Second Lien Term Loan 507(b) Claim shall be subject and subordinate to only the Carve-Out, the Prepetition First Lien Term Loan 507(b) Claim, the Prepetition ABL 507(b) Claim and the DIP Superpriority Claims granted in respect of the DIP Obligations.  Except to the extent expressly set forth in this Interim Order or the DIP Credit Agreements, the Prepetition Term Loan Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Prepetition Term Loan 507(b) Claim unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and any claims having a priority superior to or *pari passu* with the DIP Superpriority Claims have indefeasibly been Paid in Full and the DIP Commitments have been terminated.

(c)    Prepetition Term Loan Secured Parties' Fees and Expenses.  The Prepetition Term Loan Agents shall receive from the DIP Loan Parties, for the benefit of the Prepetition Term Loan Lenders, current cash payments of the reasonable and documented prepetition and postpetition fees and expenses of the Prepetition Term Loan Agents under the Prepetition Term Loan Documents, including, but not limited to, the reasonable and documented fees and disbursements of one counsel and one local counsel in each applicable jurisdiction for each of the Prepetition Term Loan Agents.  The DIP Loan Parties shall also pay all reasonable and documented prepetition and postpetition fees and expenses of:  (i) the Crossover Group, to the extent not already paid, including the reasonable and documented fees and expenses of Davis Polk & Wardwell LLP, as counsel to the Crossover Group, Simpson Thacher & Bartlett LLP, as

counsel to Solus Alternative Asset Management LP (a member of the Crossover Group), one local counsel to the Crossover Group in each applicable jurisdiction, if retained; and (ii) the First Lien Group, to the extent not already paid, including the reasonable and documented fees and expenses of Shearman & Sterling LLP, as counsel, one local counsel to the First Lien Group in each applicable jurisdiction, if retained.  The DIP Loan Parties are authorized to pay the reasonable and documented prepetition fees and expenses described in this subsection (c) immediately upon entry of this Interim Order.  Postpetition, the Prepetition Term Loan Agents, the Crossover Group, and the First Lien Group shall provide summary form fee and expense statements (i.e., without any detail) to the DIP Loan Parties, the U.S. Trustee, and any Committee, which may be redacted for privileged information.  If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the date that is ten (10) business days after delivery of such invoice to the Debtors, the U.S. Trustee, and any Committee, the DIP Loan Parties shall promptly pay such invoices.  If an objection to a professional's invoice is timely received, the DIP Loan Parties shall promptly pay the undisputed amount of the invoice and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  The Prepetition Term Loan Agents, the Crossover Group, and the First Lien Group (and each of their professionals) shall not be required to comply with U.S. Trustee fee guidelines or file applications or motions with, or obtain approval of, the Court for the payment of any of their out-of-pocket costs, fees, expenses, disbursements and other charges.  Payments of any amounts set forth in this paragraph are not subject to recharacterization, avoidance, subordination or disgorgement.

(e)     Information Rights.  The Debtors shall promptly provide the Prepetition Term Loan Agents, on behalf of itself and the Prepetition Term Loan Lenders, with all required written

financial reporting and other periodic reporting that is delivered by any of the DIP Loan Parties under the DIP Documents, including the Approved Budget and any related variance reporting.  In addition, the Debtors shall provide the Prepetition Term Loan Agents, on behalf of itself and the Prepetition Term Loan Lenders, with reasonable access to the Debtors' officers, management, books and records, premises and properties in accordance with the terms and conditions set forth in the Prepetition Term Loan Financing Documents.

22.     *Adequate Protection Liens and Prepetition Intercreditor Agreements.* Notwithstanding anything to the contrary herein, the Adequate Protection Liens shall retain the same priority between and among the Prepetition Secured Parties as the liens such parties held prior to the Petition Date pursuant to and as governed by the Prepetition Intercreditor Agreements, and the Prepetition Intercreditor Agreements shall continue in full force and effect and nothing herein shall be construed as modifying, amending, waiving or in any way impacting the effectiveness and enforceability thereof.  The Prepetition ABL Lenders and the Prepetition First Lien Term Loan Lenders each consent to the priming of their respective Prepetition Liens by the DIP Liens and the Adequate Protection Liens, and the Prepetition Second Lien Term Loan Lenders are deemed to consent to the priming of their Prepetition Second Lien Term Liens by the DIP Liens and the Adequate Protection Liens pursuant to the terms of the Prepetition Intercreditor Agreements, in each case where and to the extent set forth on **Exhibit A** hereto.

23.     *Reservation of Rights of Prepetition Secured Parties*.  Subject to the terms of the Prepetition Intercreditor Agreements, all rights of the Prepetition Secured Parties to request further or different adequate protection other than what is provided in this Interim Order are fully reserved.

24.     *Perfection of DIP Liens and Adequate Protection Liens.*

IMPAC 6317745v.1

(a)      The DIP Agents, the DIP Lenders and the Prepetition Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the DIP Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities or other property, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Agents (on behalf of the DIP Lenders) or the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities or other property, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination (subject to the priorities set forth in this Interim Order), at the time and on the date of entry of this Interim Order or thereafter.  Upon the request of a DIP Agent, each of the Prepetition Secured Parties and the DIP Loan Parties, without any further consent of any party, is authorized to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the applicable DIP Agent to further validate, perfect, preserve and enforce the DIP Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)      A certified copy of this Interim Order may, in the discretion of the DIP Agents, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and/or recording,

as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agents to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

   (c) To the extent that any Prepetition Secured Party is the secured party under any account control agreements, real property mortgages or as-extracted collateral filings, listed as loss payee or additional insured under any of the DIP Loan Parties' insurance policies or is the secured party under any other agreement, each of (i) the DIP ABL Agent, on behalf of the DIP ABL Secured Parties, and (ii) the Term DIP Agent, on behalf of the Term DIP Secured Parties, are also deemed to be the secured party under such account control agreements, real property mortgages or as-extracted collateral filings, loss payee or additional insured under the Prepetition Secured Parties' insurance policies and the secured party under each such agreement (in any such case with the same priority of liens and claims thereunder relative to the priority of (x) the Prepetition Liens and Adequate Protection Liens and (y) the DIP Liens, as set forth herein), and shall have all rights and powers in each case attendant to that position (including, without limitation, rights of enforcement, but subject in all respects to the terms of this Interim Order), and shall, subject to the terms of this Interim Order, act in that capacity and distribute any proceeds recovered or received in respect of any of the foregoing pursuant to the priorities set forth in **Exhibit A** hereto.  In accordance with the terms of this Interim Order and the other DIP Documents, the Prepetition First Lien Term Loan Agent, the Prepetition Second Lien Term Loan Agent, or the Prepetition ABL Agent, as applicable, shall serve as agent for the applicable DIP Agent for purposes of perfecting such DIP Agent's security interests in and liens on all Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.

25.    *Preservation of Rights Granted Under This Interim Order.*

(a)    The relative priority of the liens expressly granted by this Interim Order shall be as set forth in **Exhibit A**.

(b)    Other than the Carve-Out and other claims and liens expressly granted by this Interim Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Agents and the DIP Lenders or the Prepetition Secured Parties shall be permitted while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding, and, except as otherwise expressly provided in paragraph 12 of this Interim Order, the DIP Liens and the Adequate Protection Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the DIP Loan Parties' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the DIP Loan Parties.

(c)    It shall constitute an Event of Default (as defined below) (giving each DIP Agent the right to terminate the DIP Loan Parties' use of Cash Collateral, the right to terminate the applicable DIP Commitments and/or the right to accelerate the applicable DIP Obligations) if any of the DIP Loan Parties, without the prior written consent of the Required DIP Lenders, as applicable, seeks, proposes or supports (whether by way of motion or other pleadings filed with

the Court or any other writing executed by any DIP Loan Party or by oral argument), or if there

is entered or confirmed (in each case, as applicable), or if there occurs:

> (i)   a failure of the Debtors to make any payment under this Interim Order to any of the Prepetition Secured Parties when due;

> (ii)   a failure of the Debtors to (x) observe or perform any of the material terms or provisions contained in this Interim Order or (y) comply with any covenant or agreement in this Interim Order in any material respect;

> (iii)   a failure of the Debtors to observe or perform any of the material terms or provisions contained in the RSA (as defined in the Term DIP Credit Agreement), subject to any applicable cure period set forth therein;

> (iv)   any modifications, amendments, or reversal of this Interim Order, and no such consent shall be implied by any other action, inaction or acquiescence by any party;

> or

> (v)   any "Event of Default"  or "DIP Event of Default" as defined in the DIP Credit Agreements.

Except as otherwise provided in this Interim Order, any material violation of any of the terms of

this Interim Order or any occurrence of an "Event of Default" or "DIP Event of Default" under

and as defined in the DIP Credit Agreements shall constitute an event of default under this

Interim Order (each an "**Event of Default**") and upon any such Event of Default, interest,

including, where applicable, default interest, shall accrue and be paid as set forth in the DIP

Credit Agreements.  Notwithstanding any order that may be entered dismissing any of the

Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time

entered: (A) the DIP Superpriority Claims, the 507(b) Claims, the DIP Liens, and the Adequate

Protection Liens, and any claims related to the foregoing, shall continue in full force and effect

and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and

Adequate Protection Claims shall have been Paid in Full (and that such DIP Superpriority

Claims, 507(b) Claims, DIP Liens and Adequate Protection Liens shall, notwithstanding such

dismissal, remain binding on all parties in interest); (B) the other rights granted by this Interim

Order shall not be affected; and (C) this Court shall retain jurisdiction, notwithstanding such

dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this

paragraph and otherwise in this Interim Order.

(d)    This Interim Order is entered pursuant to section 364 of the Bankruptcy

Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Secured Parties all protections and

benefits afforded by section 364(e) of the Bankruptcy Code.

(e)    Except as expressly provided in this Interim Order or in the DIP

Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the

ABL Indemnification Liens, the Prepetition ABL Indemnification Obligations, the Prepetition

Liens, the Prepetition Debt, Adequate Protection Claims and the Adequate Protection and all

other rights and remedies of the DIP Agents, the DIP Lenders and the Prepetition Secured Parties

granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall

not be modified, impaired or discharged by: (i) the entry of an order converting any of the

Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases,

substantively consolidating any of the cases with another case, terminating the joint

administration of these Chapter 11 Cases or by any other act or omission; or (ii) the entry of an

order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section

1141(d)(4) of the Bankruptcy Code, the DIP Loan Parties have waived any discharge as to any

remaining DIP Obligations or Adequate Protection Obligations and with respect to the

Prepetition Debt and the Prepetition ABL Indemnification Obligations (to the extent the ABL

Discharge has not occurred).  The terms and provisions of this Interim Order and the DIP

Documents shall continue in these Chapter 11 Cases, in any successor cases if these Chapter 11

Cases cease to be jointly administered and in any superseding chapter 7 cases under the

Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, the Adequate Protection

Liens, the Prepetition ABL Indemnification Claims, the ABL Indemnification Liens, the

Prepetition Debt, the Prepetition Liens and the Adequate Protection Claims and all other rights

and remedies of the DIP Agents, the DIP Lenders and the Prepetition Secured Parties granted by

the provisions of this Interim Order and the DIP Documents shall continue in full force and

effect until the DIP Obligations are Paid in Full, as set forth herein and in the DIP Documents,

and the DIP Commitments have been terminated.

26.     *Limitation on Use of DIP Financing Proceeds and Collateral*.  Notwithstanding

any other provision of this Interim Order or any other order entered by the Court, no DIP Loans,

DIP Collateral, Cash Collateral, Prepetition Collateral or any portion of the Carve-Out, or any

proceeds of the foregoing, may be used directly or indirectly by any Debtor, any Guarantor, any

official committee appointed in the Chapter 11 Cases, or any trustee appointed in the Chapter 11

Cases or any successor case, including any chapter 7 case, or any other person, party or entity (i)

in connection with the investigation, initiation or prosecution of any claims, causes of action,

adversary proceedings or other litigation (a) against any of the DIP Agents, the DIP Lenders, or

the Prepetition Secured Parties, or their respective predecessors-in-interest, agents, affiliates,

representatives, attorneys, or advisors, or any action purporting to do the foregoing in respect of

the Prepetition Debt, liens on the Prepetition Collateral, DIP Obligations, DIP Liens, DIP

Superpriority Claims and/or the adequate protection, adequate protection liens and superpriority

claims granted to the Prepetition Secured Parties under the Interim Order or the Final Order, as

applicable, or (b) challenging the amount, validity, perfection, priority or enforceability of or

73

asserting any defense, counterclaim or offset with respect to, the Prepetition Debt, the DIP

Obligations and/or the liens, claims, rights, or security interests granted under this Interim Order,

the Final Order, the DIP Documents or the Prepetition Credit Agreements including, in each

case, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549,

550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (ii) except

during the Remedies Notice Period, to prevent, hinder, or otherwise delay the Prepetition

Secured Parties', the DIP Agent's or the DIP Lenders', as applicable, enforcement or realization

on the Prepetition Debt, Prepetition Collateral, DIP Obligations, DIP Collateral, and the liens,

claims and rights granted to such parties under this Interim Order or the Final Order, each in

accordance with the DIP Documents, the Prepetition Credit Agreements or this Interim Order;

(iii) except during the Remedies Notice Period, to seek to modify any of the rights and remedies

granted to the Prepetition Secured Parties, the DIP Agents or the DIP Lenders under this Interim

Order, the Prepetition Credit Agreements or the DIP Documents, as applicable; (iv) to apply to

the Court for authority to approve superpriority claims or grant liens (other than the liens

permitted pursuant to the DIP Documents) or security interests in the DIP Collateral or any

portion thereof that are senior to, or on parity with, the DIP Liens, DIP Superpriority Claims,

adequate protection liens and superpriority claims and liens granted to the Prepetition Secured

Parties, unless all DIP Obligations, Prepetition Debt, adequate protection, and claims granted to

the DIP Agents, DIP Lenders or Prepetition Secured Parties under this Interim Order, have been

refinanced or Paid in Full or otherwise agreed to in writing by the DIP Lenders; or (v) to seek to

pay any amount on account of any claims arising prior to the Petition Date unless such payments

are agreed to in writing by the DIP Lenders in or are otherwise included in the "**Approved**

**Budget**".

27.     *Real Property Leases*.  Subject to entry of the Final Order approving such relief and as a requirement and precondition to the DIP Lenders' willingness to lend and in furtherance of the DIP Superpriority Claims provided for in this Interim Order and pursuant to the DIP Documents, which are payable from and have recourse to all of the Debtors' pre- and post-petition property including, among other things, each Mining Lease, Real Property Lease or other Contractual Obligation (each as defined in the DIP Credit Agreements) to which a Debtor is a counterparty (each, a "**Real Property Lease**"), the DIP Lenders shall have the following protections with respect to the Debtors' Real Property Leases, which protections shall be enforced by the DIP Agents or DIP Lenders as authorized, approved, and granted pursuant to the provisions of this Interim Order and in accordance with the terms of the DIP Credit Agreements (and, after the indefeasible payment in full of the DIP Obligations, (i) the rights of the DIP Agents and the DIP Lenders shall automatically transfer and be available to the Prepetition Agents and the Prepetition Secured Parties, subject to the terms of the Prepetition Intercreditor Agreements, (ii) defined terms used in this Paragraph 27 relating to the DIP Facilities shall be deemed to be references to corresponding defined terms relating to the Prepetition Credit Facilities, (iii) any notice herein required to be delivered pursuant to this Paragraph 27 to the DIP Agents shall instead be required to be delivered to each of the Prepetition Agents, and (iv) the automatic stay provisions pursuant to section 362 of the Bankruptcy Code are vacated and modified to the extent necessary so as to permit the Prepetition Agents and the Prepetition Secured Parties to exercise any of their rights with respect to Real Property Leases under this Paragraph 27):

(a)     <u>Remedies Upon an Event of Default.</u>  If an Event of Default shall have occurred and be continuing, the Term DIP Agent for the benefit of the Term DIP Lenders shall,

with respect to any Real Property Lease or group of Real Property Leases to which any of the Debtors are party that constitute DIP Term Loan Priority Collateral, and the DIP ABL Agent for the benefit of the DIP ABL Lenders shall, with respect to any Real Property Lease or group of Real Property Leases to which any of the Debtors are party that constitute DIP ABL Priority Collateral, be permitted, and are hereby authorized, approved, and granted the following rights and remedies:

    (i)    to exercise the Debtors' rights pursuant to section 365(f) of the Bankruptcy Code with respect to any such Real Property Lease(s) and, subject to this Court's approval after notice and hearing, assign any such Real Property Lease(s) in accordance with section 365 of the Bankruptcy Code notwithstanding any language to the contrary in any of the applicable lease documents or executory contracts;

    (ii)    to require any Debtor to complete promptly, pursuant to section 363 of the Bankruptcy Code, subject to the rights of the applicable DIP Agent, applicable DIP Lenders or applicable Prepetition Secured Parties (if applicable) to credit bid, an Asset Sale[19] of any such Real Property Lease(s) in one or more parcels at public or private sales, at the applicable DIP Agent's offices or elsewhere, for cash, at such time or times and at such price or prices and upon such other terms as the applicable DIP Agent or applicable DIP Lenders may deem commercially reasonable;

    (iii)    to access the leasehold interests of the Debtors or debtors in possession in any such Real Property Lease(s) for the purpose of (A) marketing such property or properties for sale and (B) removing any Collateral thereon or arranging for the Asset Sale of any such Collateral except to the extent prohibited by the terms of the Real Property Lease (unless the applicable provision is rendered ineffective by applicable non-bankruptcy law or the Bankruptcy Code); provided that the foregoing shall not preclude any counterparty to a Real Property Lease from an opportunity to be heard in this Court on notice with respect to the foregoing, and provided, further, that, regardless of whether any such Real Property Lease or proceeds thereof constitute DIP ABL Priority Collateral, DIP ABL Agent for the benefit of the DIP ABL Lenders shall be entitled to enter or otherwise

---

[19]    **"Asset Sale"** shall mean (a) the sale, lease, transfer, assignment, conveyance or other disposition (including any sale and lease back transaction) of any assets or rights by the Company or any of its Restricted Subsidiaries (as defined in the DIP Credit Agreements); or (b) the issuance or sale of equity interests by any Restricted Subsidiary or the sale by the Company or any of its Restricted Subsidiaries of equity interests in any Restricted Subsidiary.

access the leasehold interests of the Debtors or debtors in possession in any such Real Property Lease(s), for the purpose of removing any Collateral that constitutes DIP ABL Priority Collateral, or arranging such Collateral for disposition, or to take possession of the Debtors' books and records or obtain access to the Debtors' data processing equipment, computer hardware and software relating to the DIP ABL Priority Collateral;

(iv)  (A) to find an acceptable (in the applicable DIP Agent's or applicable Required DIP Lenders' good faith and reasonable discretion) replacement lessee, which may include the applicable DIP Agent, applicable DIP Lenders or any of their affiliates, to whom such Real Property Lease(s) may be assigned, (B) to hold, and manage all aspects of, an auction or other bidding process to find such acceptable replacement lessee, (C) in connection with any such auction, agree, on behalf of the Debtors, to reimburse reasonable fees and expenses of any stalking horse bidder, if necessary, and/or (D) to notify the Debtors of the selection of any replacement lessee pursuant to this Paragraph 27, upon receipt of which the Debtors shall promptly (1) file a motion seeking, on an expedited basis, approval of the Debtors' assumption and assignment of such Real Property Lease(s) to such proposed assignee, and (2) cure any defaults, if any, that have occurred and are continuing under such Real Property Lease(s) to the extent required by the Court (subject to the applicable DIP Lenders' right to cure defaults as set forth in Paragraph 27(e) of this Interim Order); or

(v)  to direct the Debtors to (A) assign any such Real Property Lease(s) to the applicable DIP Agent or applicable DIP Lenders as Collateral securing the applicable DIP Obligations, subject to clause (B), if applicable, (B) seek this Court's approval of the assumption of any such Real Property Lease(s) to the extent that this Court determines pursuant to a final order that an assumption is required in order to assign such lease or leases as Collateral, and (C) promptly cure any default that has occurred and is continuing under such Real Property Lease(s) to the extent required by the Court; provided that any assignment of any such Real Property Lease(s) as Collateral securing the applicable DIP Obligations shall not impair the Debtors' ability to subsequently assume (if not already assumed) and assign such Real Property Lease(s) pursuant to section 365 of the Bankruptcy Code or to enjoy the protections of section 365(f) of the Bankruptcy Code with respect to any such assignment.

(b)  Right to Credit Bid.  Prior to any assignment of any Real Property Lease or group of Real Property Leases, the Debtors shall first provide at least five (5) business days' prior written notice (the "**Initial Notice Period**") to the Term DIP Agent and Term DIP Lenders, with

respect to DIP Term Loan Priority Collateral, and the DIP ABL Agent and DIP ABL Lenders, with respect to DIP ABL Priority Collateral, unless such notice provision is waived by the applicable DIP Agent and applicable Required DIP Lenders, which Initial Notice Period may be extended up to a further twenty-five (25) days by the applicable DIP Agent or applicable Required DIP Lenders in each of their sole discretion by delivering written notice of such extension to the Debtors prior to expiration of the Initial Notice Period, and by any further period as is mutually agreeable between the applicable DIP Agent or applicable Required DIP Lenders and the Company (such notice period being the "**Aggregate Notice Period**").   During such notice period, the applicable DIP Agent shall be permitted to credit bid forgiveness of some or all of the outstanding applicable DIP Obligations (in an amount equal to at least the consideration offered by any other party in respect of such assignment) outstanding under the applicable DIP Facility as consideration in exchange for any such Real Property Lease(s) provided that to the extent the Company is entitled to retain a portion of the total consideration paid in respect of such assignment in accordance with the DIP Credit Agreements, the applicable portion of the consideration to be retained by Company shall be paid in cash (provided that such proceeds shall constitute DIP Collateral and Cash Collateral).   In addition, in connection with the exercise of any of the applicable DIP Agent's or applicable Required DIP Lenders' rights pursuant to the applicable DIP Credit Agreement or this Interim Order to direct or compel a sale or other Asset Sale of any Real Property Lease(s), the applicable DIP Agent, on behalf of the applicable DIP Lenders, shall be permitted to credit bid forgiveness of some or all of the outstanding applicable DIP Obligations (in an amount equal to at least the consideration offered by any other party in respect of such sale or other Asset Sale) as consideration in exchange for such Real Property Lease(s).   Pursuant to section 364(e) of the Bankruptcy Code, absent a stay pending appeal, the applicable DIP Lenders' right to credit bid

shall not be affected by the reversal or modification on appeal of the Debtors' authorization pursuant to this Interim Order to obtain credit and incur debt as and in accordance with the terms set forth herein.

(c)      Right of First Refusal with Respect to Proposed Assignments and Rejections of Real Property Leases.  Unless all DIP Obligations shall have indefeasibly been satisfied pursuant to the DIP Credit Agreements, the Debtors shall not seek, and it shall constitute, an Event of Default and terminate the right of the Debtors under the DIP Credit Agreements and this Interim Order if any of the Debtors seeks, the sale or other Asset Sale of, or the rejection or other termination of, or if there is entered an order pursuant to section 365 of the Bankruptcy Code assigning or rejecting, any Real Property Lease or group of Real Property Leases, or if any Real Property Lease or group of Real Property Leases is deemed rejected due to the expiration of the assumption period provided for in section 365(d)(4) (the "**Statutory Rejection Date**"), without the Debtors' first providing thirty (30) days' prior written notice to the DIP Agents and DIP Lenders, or if such notice is given more than thirty (30) days in advance of the Statutory Rejection Date, prior written notice at least equal to the Aggregate Notice Period; provided, however, that the right of first refusal of the DIP Agents as set forth in this Paragraph 27(c) shall not apply to (x) any assignment or sale of a Real Property Lease or group of Real Property Leases to a winning bidder at an auction authorized by this Court, and (y) so long as no Event of Default has occurred and is ongoing, or to the extent such action would result in an Event of Default, any assignment or sale of a Real Property Lease or group of Real Property Leases that are not Material Leases generating cash proceeds (net of reasonable costs, expenses, and any applicable taxes) up to $2,500,000 in the aggregate value for all such sales or assignments.  During such notice period,

the Term DIP Agent, with respect to DIP Term Loan Priority Collateral, and the DIP ABL Agent, with respect to DIP ABL Priority Collateral, shall be permitted to:

(i)    (A) notify the Debtors that it elects to take action pursuant to this Paragraph, upon receipt of which the Debtors shall promptly withdraw any previously filed rejection motion, (B) find an acceptable (in the applicable DIP Agents' or applicable Required DIP Lenders' good faith and reasonable discretion) replacement lessee, which may include the applicable DIP Agent, applicable DIP Lenders or any of their affiliates, to whom any such any Real Property Lease or group of Real Property Leases may be assigned (subject to Court approval), (C) hold, and manage all aspects of, an auction or other bidding process to find such acceptable replacement lessee, (D) in connection with any such auction, agree, on behalf of the Debtors (and subject to Court approval) to reimburse the reasonable fees and expenses of any stalking horse bidder, if necessary, and (E) notify the Debtors of the selection of any replacement lessee pursuant to this Paragraph, upon receipt of which the Debtors shall (1) not seek to reject any such Real Property Lease(s), (2) promptly withdraw any pending motion to reject any such Real Property Lease(s), (3) promptly file a motion seeking, on an expedited basis, approval of the Debtors' assumption and assignment of such Real Property Lease(s) to the applicable DIP Agent or applicable Required DIP Lenders' proposed assignee, and (4) promptly cure any defaults that have occurred and are continuing under such Real Property Lease(s) to the extent authorized by the Court; or

(ii)    direct the Debtors to (A) assign any Real Property Lease or group of Real Property Leases as Collateral securing the applicable DIP Obligations (subject to Court approval), (B) seek the Court's approval of the assumption of any such Real Property Lease(s) if it is determined pursuant to a final order of this Court that an assumption is required in order to assign such lease(s) as Collateral, and (C) promptly cure any defaults that have occurred and are continuing under such Real Property Lease(s) (subject to the applicable DIP Lenders' right to cure defaults as set forth in Paragraph 27(e) of this Interim Order) to the extent authorized by the Court; provided that any assignment of any Real Property Lease(s) as Collateral securing the applicable DIP Obligations shall not impair the Debtors' ability to subsequently assume (if not already assumed) and assign any such Real Property Lease(s) pursuant to section 365 of the Bankruptcy Code or to enjoy the protections of section 365(f) of the Bankruptcy Code with respect to any such assignment.

(iii)    Notwithstanding anything to the contrary herein, the foregoing rights of the DIP Agents set forth in this Paragraph shall not apply to Real Property Leases that are rejected, terminated, sold, or assigned on the effective date of any plan of reorganization in any of the Chapter 11 Cases that, among

IMPAC 6317745v.1

other things, indefeasibly repays the DIP Obligations in full on the effective date thereof.  For the avoidance of doubt, on or prior to the thirtieth (30) day prior to the Statutory Rejection Date (as provided in section 365(d)(4) of the Bankruptcy Code), the Debtors shall have delivered written notice to the DIP Agents of each outstanding Real Property Lease that they intend to reject (including, without limitation, through statutory rejection on the Statutory Rejection Date) from and after the date of such notice (or, if applicable, notice that the Debtors have obtained the applicable landlord's consent to extension of the Statutory Rejection Date); provided that if the Debtors fail to deliver any such notice to the DIP Agents prior to such date with respect to any such Real Property Lease(s) (or a notice indicating that no such Real Property Lease(s) shall be rejected), the Debtors shall be deemed, for all purposes hereunder, to have delivered notice to the DIP Agents as of such date that they intend to reject all outstanding Real Property Leases.

(d)    Assumption Orders.  Any order of this Court approving the assumption of any Real Property Lease shall specifically provide that the applicable Debtor shall be authorized to assign such Real Property Lease pursuant to, and to enjoy the protections of, section 365(f) of the Bankruptcy Code subsequent to the date of such assumption.  To the extent that such provision is for any reason not included in any order of the Court approving the assumption of any Real Property Lease, then such Real Property Lease may not be assumed by the applicable Debtor unless the order approving the assumption provides for the assignment of such Real Property Lease, on the date of such order, to an acceptable (in the applicable DIP Agents' or applicable Required DIP Lenders' good faith and reasonable discretion) replacement lessee (which may include the applicable DIP Agents, applicable DIP Lenders, or their respective affiliates).

(e)    DIP Lenders' Right to Cure Defaults.  If any of the Debtors are required to cure any monetary defaults under any Real Property Lease pursuant to any order of this Court or otherwise in connection with any assumption or assumption and assignment of any such Real Property Lease pursuant to section 365(f) of the Bankruptcy Code, and such monetary default is not, within five (5) business days of the receipt by such Debtor of notice from the applicable DIP Agent pursuant to the applicable provision(s) of the applicable DIP Credit Agreement or any other

notice from the applicable DIP Agent requesting the cure of such monetary default, cured in accordance with the provisions of such applicable court order as arranged by the applicable DIP Agent, the applicable DIP Agent may cure any such monetary defaults on behalf of the applicable Debtor(s).

(f)    _Priorities_.  For the avoidance of doubt, nothing set forth in this Paragraph 27 shall affect the relative priorities of liens and claims set forth herein and on **Exhibit A** hereto. Unless and until Payment in Full  of the (A) DIP ABL Obligations and the Prepetition ABL Obligations, nothing set forth in this Paragraph 27 shall permit the Term DIP Agent or the Term DIP Lenders, or any of their designees or agents, to exercise any rights or remedies with respect to DIP ABL Priority Collateral or Prepetition ABL Priority Collateral and (B) DIP Term Loan Obligations and the Prepetition Term Loan Debt, nothing set forth in this Paragraph 27 shall permit the DIP ABL Agent or the DIP ABL Lenders, or any of their designees or agents, to exercise any rights or remedies with respect to DIP Term Loan Priority Collateral or Prepetition Term Loan Priority Collateral.

28.    _Approved Budget_.  The Approved Budget is approved on an interim basis. Proceeds of the DIP Facilities and Cash Collateral under this Interim Order shall only be used by the Loan Parties in accordance with the DIP Credit Agreements, this Interim Order, and the Approved Budget or as otherwise agreed by the DIP Agents.  None of the DIP Secured Parties' consent (if any) to, or acknowledgment of, the Approved Budget shall be construed as consent to use of the proceeds of the DIP Facilities or Cash Collateral beyond the respective maturity dates set forth in the DIP Credit Agreements, regardless of whether the aggregate funds shown on the Approved Budget have been expended.

29.      *Limits to Lender Liability.*  Subject to entry of a Final Order approving such relief, nothing in this Interim Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agents or any DIP Lender of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts.  The DIP Agents and the DIP Lenders shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person and all risk of loss, damage or destruction of the Collateral shall be borne by the DIP Loan Parties.

30.      *Effect of Stipulations on Third Parties.*  The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, in paragraph 6 of this Interim Order, shall be binding upon the Debtors and, subject to the Challenge Period (as defined below), any successor thereto in all circumstances and for all purposes.  The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, in paragraph 6 of this Interim Order, shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, if any (a "**Committee**") and any other person or entity acting or seeking to act on behalf of the Debtors' estates (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) unless: (a) such Committee, or any other party in interest, in each case with requisite standing (subject in all respects to any agreement or applicable law that may limit or

affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by no later than (i) the earlier of (x) the date of entry of an order confirming a chapter 11 plan, (y) 75 calendar days after entry of this Interim Order and (z) 60 calendar days after the appointment of any Committee or (ii) any such later date as has been agreed to, in writing, by the Prepetition Agents (with the consent of the DIP Lenders) as applicable (the time period established by the foregoing clauses (i) and (ii), the "**Challenge Period**"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Debt or the Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Challenges**") against the Prepetition Secured Parties or their respective affiliates and each of their respective former, current or future officers, partners, directors, managers, members, principals, employees, agents, related funds, investors, financing sources, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to the Prepetition Credit Agreements, the Prepetition Debt, the Prepetition Liens and the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; provided, however, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived,

released and barred.  If no such Challenge is timely filed during the Challenge Period or the

Court does not rule in favor of the plaintiff in any such proceeding then: (a) the Debtors'

stipulations, admissions, agreements and releases contained in this Interim Order, including,

without limitation, those contained in paragraph 6 of this Interim Order, shall be binding on all

parties in interest; (b) the obligations of the DIP Loan Parties under the Prepetition Credit

Agreements, including the Prepetition Debt, shall constitute allowed claims not subject to

defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all

purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s); (c) the Prepetition Liens

on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid,

binding, perfected, security interests and liens, not subject to recharacterization, subordination,

avoidance or other defense; and (d) the Prepetition Debt and the Prepetition Liens on the

Prepetition Collateral shall not be subject to any other or further claim or challenge by any

Committee, or any other party in interest acting or seeking to act on behalf of the Debtors'

estates, including, without limitation, any successor thereto (including, without limitation, any

chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors)

and any defenses, claims, causes of action, counterclaims and offsets by any Committee, if any,

or any other party acting or seeking to act on behalf of the Debtors' estates, including, without

limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter

11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the

Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their

Representatives arising out of or relating to any of the Prepetition Credit Agreements shall be

deemed forever waived, released and barred.  If any such Challenge is timely filed during the

Challenge Period, the stipulations, admissions, agreements and releases contained in this Interim

85

Order, including, without limitation, those contained in paragraph 6 of this Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee, if any, and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition Credit Agreements, the Prepetition Debt or the Prepetition Liens.  For the avoidance of doubt, none of the foregoing challenge provisions set forth in this paragraph shall apply to any DIP Secured Party, in their capacities as such, and in no event shall the DIP Facilities, DIP Obligations or DIP Liens be subject to challenge pursuant to this paragraph on avoidance or any other grounds by any party.

31.      *Postpetition Release*.  In addition, subject to the entry of a Final Order approving such relief, notwithstanding anything to the contrary set forth herein, upon the repayment of all DIP Obligations (as defined in the DIP Credit Agreements) owed to the DIP Agents and the DIP Lenders by Debtors and termination of the rights and obligations arising under the DIP Documents (which payment and termination shall be on terms and conditions acceptable to DIP Agents), DIP Agents and the DIP Lenders shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring, on or prior to the date of such repayment and termination, in connection with or related to the DIP Documents, or the Interim Order (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or

unliquidated) to pay or otherwise fund the Carve-Out on terms and conditions acceptable to the DIP Agents).

32.    *Landlord Agreements; Access.*

(a)    All collateral access agreements to which the Prepetition ABL Agent or any of the Prepetition Agents is a party shall hereby continue to be deemed to be amended to include the relevant DIP Agent as a beneficiary thereunder, and such agreements shall thereafter be additionally enforceable by the relevant DIP Agent against, and binding upon, each landlord party thereto.  Subject to the entry of a Final Order approving such relief, any title, landlord's lien, right of distraint or levy, security interest or other interest that any landlord or mortgagee may have in any DIP Collateral or Prepetition Collateral of the Debtors located on such leased premises, to the extent the same is not avoidable under sections 544, 545, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise, is hereby expressly subordinated to the liens of the DIP Lenders and the Prepetition Lenders.

(b)    Subject to entry of the Final Order, subject to applicable state law, notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agents, for the benefit of the DIP Lenders, contained in this Interim Order or the DIP Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Documents and this Interim Order, upon written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing under the DIP Documents, the DIP Agents may, subject to any separate agreement by and between such landlord and the DIP Agents (a "Separate Agreement"), enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon and, subject to any Separate Agreement, shall be entitled to all of the Debtors' rights and privileges as lessee under such lease

without interference from such landlord; provided, however, that, subject to any such Separate Agreement, the DIP Agents shall only pay rent of the Debtors that first accrues after the written notice referenced above and that is payable during the period of such occupancy by the Agent calculated on a per diem basis.  Nothing herein shall require the DIP Agents to assume any lease as a condition to the rights afforded to the DIP Agents in this paragraph.

33.    *Interim Order Governs*.  In the event of any inconsistency between the provisions of this Interim Order, the DIP Documents or any other order entered by this Court (other than the Final Order), the provisions of this Interim Order shall govern.  Any payment made pursuant to any other order entered by this Court may be subject to avoidance or disgorgement under section 549 or otherwise of the Bankruptcy Code to the extent such payment is made in violation of this Interim Order and the DIP Documents, including the Approved Budget.

34.    *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Agents, the DIP Lenders, the Prepetition Secured Parties, any Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agents, the DIP Lenders, the Prepetition Secured Parties and the Debtors and their respective successors and assigns; *provided* that the DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral

IMPAC 6317745v.1

(including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

35.    *Exculpation*.  Nothing in this Interim Order, the DIP Documents, the existing agreements or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon any DIP Secured Party or any Prepetition Secured Party any liability for any claims arising from the prepetition or postpetition activities of the Credit Parties or Loan Parties (as defined in the respective DIP Credit Agreements) in the operation of their businesses, or in connection with their restructuring efforts.  In addition, subject to entry of the Final Order approving such relief, (a) the DIP Secured Parties and the Prepetition Secured Parties shall not, in any way or manner, be liable or responsible for: (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and (b) all risk of loss, damage, or destruction of the Collateral shall be borne by the DIP Loan Parties.

36.    *Limitation of Liability*.  In determining to make any loan or other extension of credit under the DIP Credit Agreements, or to permit the use of Cash Collateral, none of the DIP Agents, the DIP Lenders or the Prepetition Secured Parties shall (i) be deemed to be in "control" of the operations or participating in the management of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States

Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).

37.    *Master Proof of Claim.*  The Prepetition Agents shall not be required to file proofs of claim in the Chapter 11 Cases or any successor case in order to assert claims on behalf of itself and the Prepetition Secured Parties for payment of the Prepetition Debt arising under the Prepetition Documents, nor shall any other Prepetition Secured Party be required to file any proofs of claim in the Chapter 11 Cases or any successor case in order to assert claims on behalf of itself for payment of the Prepetition Debt arising under the Prepetition Credit Agreements. However, in order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, each Prepetition Agent and/or other Prepetition Secured Party is authorized to file in the Debtors' lead chapter 11 case *In re Blackhawk Mining LLC*, *et. al.*, Case No. 19-11595 (LSS), a single, master proof of claim on behalf of the relevant Prepetition Secured Parties on account of any and all of their respective claims arising under the applicable Prepetition Documents and hereunder (each, a "**Master Proof of Claim**") against each of the Debtors.  Upon the filing of a Master Proof of Claim against each of the Debtors, the Prepetition Agents and the Prepetition Secured Parties, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors of any type or nature whatsoever with respect to the applicable Prepetition Credit Agreements, and the claim of each Prepetition Secured Party (and each of its respective successors and assigns), named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of these Chapter 11 Cases.  The Master Proofs of Claim shall not be required to identify whether any Prepetition Secured Party acquired its claim from another party and the

identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims. The provisions of this paragraph 37 and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in these Chapter 11 Cases. The Master Proofs of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the applicable Prepetition Agent.

38.     *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules, or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry.

39.     *Modification of DIP Documents and Approved Budget*.  The DIP Loan Parties are hereby authorized, without further order of this Court, to enter into agreements with the DIP Secured Parties providing for any consensual non-material modifications to the Approved Budget or the DIP Documents, or of any other modifications to the DIP Documents necessary to conform the terms of the DIP Documents to this Interim Order, in each case consistent with the amendment provisions of the DIP Document.  Notwithstanding the foregoing, updates and supplements to the Approved Budget required to be delivered by the DIP Loan Parties under the

DIP Documents shall not be considered material amendments or modifications to the Approved Budget or the DIP Documents.

40.     *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

41.     *Payments Held in Trust*.  Except as expressly permitted in this Interim Order or the DIP Documents, in the event that any person or entity (with respect to any person or entity that is not a DIP Secured Party or a party to the RSA) knowingly, receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral or receives any other payment with respect thereto from any other source prior to Payment in Full of all DIP Obligations under the DIP Documents and termination of the Commitments in accordance with the DIP Documents, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of Collateral in trust for the benefit of the DIP Agents and the DIP Lenders (as applicable based on the specific asset at issue) and shall immediately turn over such proceeds to the applicable DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Interim Order.

42.     *Credit Bidding*.  Subject to the rights reserved in paragraph 30, (a) each of the DIP Agents shall have the right to credit bid, in accordance with the DIP Documents, up to the full amount of the applicable DIP Obligations in any sale of the DIP Collateral, subject in all respects to the DIP ICA and the relative lien priorities set forth in **Exhibit A**; and (b) the Prepetition Secured Parties shall have the right to credit bid up to the full amount of their Prepetition Debt in any sale of the Prepetition Collateral, subject in all respects to the Prepetition Intercreditor Agreements, as applicable, and the relative lien priorities set forth in **Exhibit A**, in

each case of (a) and (b), as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

43.    *No Third Party Rights*.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

44.    *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

45.    *Necessary Action*.  The Debtors are authorized to take any and all such actions as are necessary or appropriate to implement the terms of this Interim Order.

46.    *Retention of Jurisdiction*.  The Court shall retain jurisdiction to implement, interpret and enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

47.    *Final Hearing*.  The Final Hearing is scheduled for August 13, 2019 at 2:00 p.m. prevailing Eastern Time before this Court.

48.    *Objections*.  Any party in interest objecting to the relief sought at the Final Hearing shall file and serve written objections, which objections shall be served upon:

(a)    counsel to the Debtors, (i) Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654 (attn.: Ross M. Kwasteniet, P.C. (rkwasteniet@kirkland.com), Joseph M. Graham (joe.graham@kirkland.com)); 601 Lexington Ave, New York, NY 10022 (attn.: Stephen E. Hessler (stephen.hessler@kirkland)) and (ii) Potter Anderson & Corroon LLP, 1313 N. Market St., 6th Floor, Wilmington, DE 19801 (attn.: L. Katherine Good (kgood@potteranderson.com));

93

(b)    counsel to the DIP ABL Agent, (i) Hogan Lovells US LLP, 390 Madison Avenue, New York, NY 10017 (attn.: Deborah Staudinger (deborah.staudinger@hoganlovells.com), Alex Sher (alex.sher@hoganlovells.com)) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899-1347 (attn.: Matthew B. Harvey (mharvey@mnat.com), Eric D. Schwartz (eschwartz@mnat.com));

(c)    counsel to the Term DIP Agent and Prepetition First Lien Term Loan Agent, Herrick Feinstein LLP, Two Park Ave, New York, NY 10016 (attn.: Eric A. Stabler (EStabler@herrick.com), Steven Smith (ssmith@herrick.com));;

(d)    Counsel to the Prepetition Second Lien Term Loan Agent, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038 (attn..: Elizabeth A. Loonam (eloonam@stroock.com), Alex Cota (acota@stroock.com), Gabriel Sasson (gsasson@stroock.com); and

(e)    Counsel to the Crossover Group, (i) Davis Polk & Wardwell LLP, 450 Lexington Ave, New York, NY 10017 (attn.: Brian Resnick (brian.resnick@davispolk.com), Dylan Consla (dylan.consla@davispolk.com) and Daniel Meyer (daniel.meyer@davispolk.com)); and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801 (attn.: Mark D. Collins (collins@rlf.com) and Paul N. Heath (heath@rlf.com));

(f)    Counsel to the First Lien Group, Shearman & Sterling LLP, 599 Lexington Avenue, New York, NY 10022 (attn.: Fredric Sosnick (fsosnick@shearman.com), and Ned S. Schodek (ned.schodek@sheaman.com));

(g)    the U.S. Trustee; and

(h)    any other party that has filed a request for notices with this Court,

by the foregoing no later than August 6, 2019 at 4:00 p.m. prevailing Eastern Time.

49.    The Debtors shall within two (2) business days of its entry serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing, including, without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under sections 506(c) and 552(b) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court.

_Laurie Selber Silverstein_

**Dated: July 23rd, 2019**
**Wilmington, Delaware**

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**

94

IMPAC 6317745v.1