## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BLACKHAWK MINING LLC, *et al.*,[1] | ) | Case No. 19-11595 (LSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER APPROVING THE DEBTORS' DISCLOSURE STATEMENT FOR, AND CONFIRMING, THE DEBTORS' MODIFIED JOINT PREPACKAGED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

having:

a.        distributed, on or about July 15, 2019, (i) the *Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 16] (as modified, supplemented, or otherwise amended from time to time, the "Plan"),[2] (ii) the *Disclosure Statement for the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 17] (including all exhibits thereto, the "Disclosure Statement"), and (iii) ballots for voting on the Plan (each, a "Ballot") to Holders of Claims or Interests entitled to vote on the Plan—Holders in Classes 3, 4, 10A, 10B, and 10C—in accordance with the terms of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules");

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Blackhawk Mining LLC (5600); Blackhawk Coal Sales, LLC (9456); Blackhawk Land and Resources, LLC (7839); Blackhawk River Logistics, LLC (3388); Blue Creek Mining, LLC (2427); Blue Diamond Mining, LLC (3488); Eagle Shield, LLC (6721); FCDC Coal, Inc. (6188); Guyandotte Mining, LLC (4882); Hampden Coal, LLC (8241); Kanawha Eagle Mining, LLC (0586); Logan & Kanawha, LLC (3178); Panther Creek Mining, LLC (0627); Pine Branch Land, LLC (9661); Pine Branch Mining, LLC (9681); Pine Branch Resources, LLC (9758); Redhawk Mining, LLC (0852); Rockwell Mining, LLC (3874); Spruce Pine Land Company (2254); Spurlock Mining, LLC (2899); Triad Mining, LLC (7713); and Triad Trucking, LLC (6112). The location of the Debtors' service address in these chapter 11 cases is 3228 Summit Square Place, Suite 180, Lexington, Kentucky 40509.

[2]    Capitalized terms used but not defined herein shall the meanings ascribed to them in the Plan.

b.       commenced, on July 19, 2019 (the "Petition Date"), these chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases");

c.       filed, on the Petition Date, the Plan and the Disclosure Statement;

d.       filed, on the Petition Date, the *Debtors' Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Approving the Solicitation Procedures and Dates, Deadlines, and Notices Related Thereto, (III) Directing that a Meeting of Creditors Not Be Convened, (IV) Waiving the Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities, and (V) Granting Related Relief* [Docket No. 15] (the "Scheduling Motion");

e.       filed, on the August 2, 2019, the *Declaration of James Daloia of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 1 2 4 ] (the "Voting Report"), which detailed the results of the Plan voting process;

f.       filed, on July 23, 2019, the *Notice of (I) Commencement of Prepackaged Chapter 11 Bankruptcy Cases, (II) Combined Hearing on the Adequacy of the Disclosure Statement, Confirmation of the Joint Prepackaged Chapter 11 Plan, and Related Matters, and (III) Related Objection and Briefing Deadlines* [Docket No. 83] (the "Confirmation Hearing Notice"), which contained notice of the commencement of the Chapter 11 Cases, the date and time set for the hearing to consider approval of the Disclosure Statement and Confirmation of the Plan (the "Confirmation Hearing"), and the deadline for filing objections to the Plan and the Disclosure Statement;

g.       published, on July 25, 2019, in *The New York Times*, the *Charleston Gazette-Mail*, and the *Lexington Herald Leader,* as evidenced by the *Affidavits of Publication* [Docket Nos. 114, 115, 116] (together with the Confirmation Hearing Notice Affidavit (as defined herein), the "Affidavits"), the Confirmation Hearing Notice, consistent with the order granting the Scheduling Motion [Docket No. 75] (the "Scheduling Order");

h.       filed, on July 26, 2019, the *Affidavit of Service* of the Confirmation Hearing Notice [Docket No. 110] (the "Confirmation Hearing Notice Affidavit");

i.       filed, on August 13, 2019, the *Plan Supplement for the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 196], which included:  (a) the New Organizational Documents and Shareholders Agreement; (b) the New First Lien Loan Agreement; (c) the Exit ABL Facility Agreement; (d) the Restructuring Steps Memorandum; (e) the Members of the Reorganized Blackhawk Board; (f) the Rejected Executory Contract and Unexpired Lease List; (g) the Assumed Executory Contract and Unexpired Lease List;  and

2

(h) the Schedule of Retained Causes of Action (as defined herein) (as modified, supplemented, or otherwise amended from time to time, the "Plan Supplement");

j.    filed, on August 26, 2019, (i) the *Debtors' Memorandum of Law in Support of an Order Approving the Debtors' Disclosure Statement for, and Confirming, the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 233] (the "Confirmation Brief") and (ii) the *Declaration of Kevin Nystrom in Support of Confirmation of the Debtors' Joint Prepackaged Chapter 11 Plan Plan of Reorganization* [Docket No. 234] (the "Nystrom Declaration"); and

k.    filed, on August 26, 2019, the *Debtors' Modified Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 231].

The Court having:

a.    entered, on July 22, 2019, the Scheduling Order;

b.    set August 28, 2019, at 10:00 a.m., prevailing Eastern Time, as the date and time for the Confirmation Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code, as set forth in the Scheduling Order;

c.    reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Nystrom Declaration, the Voting Report, the Confirmation Hearing Notice, the Affidavits, the Ballots, and all filed pleadings, exhibits, statements, and comments regarding approval of the Disclosure Statement and Confirmation of the Plan, including all objections, statements, and reservations of rights;

d.    held the Confirmation Hearing on August 28, 2019, at 10:00 a.m., prevailing Eastern Time;

e.    heard the statements and arguments made by counsel in respect of approval of the Disclosure Statement and Confirmation of the Plan and the objections thereto; and

f.    considered all oral representations, affidavits, testimony, documents, filings, and other evidence regarding approval of the Disclosure Statement and Confirmation of the Plan and the objections thereto.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation of the Plan have been adequate and appropriate, and the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and Confirmation of the Plan and other evidence presented at the Confirmation Hearing establish just cause for the

relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.     Findings and Conclusions.**

1.     The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.     Jurisdiction, Venue, and Core Proceeding.**

2.     The Court has jurisdiction over the Chapter 11 Cases pursuant to sections 157 and 1334 of title 28 of the United States Code, 28 U.S.C. §§ 1–4881 (the "Judicial Code"), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper in this district pursuant to sections 1408 and 1409 of the Judicial Code.  Approval of the Disclosure Statement and Confirmation of the Plan are core proceedings within the meaning of section 157(b)(2) of the Judicial Code.

**C.     Eligibility for Relief.**

3.     The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.      Commencement and Joint Administration of the Chapter 11 Cases.**

4.      On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.   In accordance with the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 54], the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.   Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No trustee or examiner has been appointed in the Chapter 11 Cases.   No official committees have been appointed in the Chapter 11 Cases.

**E.      Objections.**

5.      Any resolution of objections to Confirmation explained on the record at the Confirmation Hearing is hereby incorporated by reference.   All unresolved objections, statements, informal objections, and reservations of rights (except with respect to unresolved cure amounts), if any, related to the Disclosure Statement or Confirmation of the Plan are overruled on the merits.

**F.      Burden of Proof—Confirmation of the Plan.**

6.      The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.

**G.      Notice; Joinder/Intervention.**

7.      As evidenced by the Affidavits, due, adequate, and sufficient notice of the Disclosure Statement, the Plan, and the Confirmation Hearing, together with all deadlines for voting to accept or reject the Plan as well as objecting to the Disclosure Statement and the Plan, has been provided to:   (a) known Holders of Claims and Interests; (b) the office of the U.S.

Trustee for the District of Delaware; (c) the administrative agent under the Debtors' prepetition asset-based revolving credit facility; (d) the administrative agent under the Debtors' prepetition first lien term loan facility; (e) the administrative agent under the Debtors' prepetition second lien term loan facility; (f) counsel to the Crossover Group; (g) counsel to the First Lien Group; (h) the administrative agent under the Debtors' debtor in possession term loan financing facility; (i) the administrative agent under the Debtors' debtor in possession asset-based revolving financing facility; (j) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors operate; (k) the office of the attorneys general for the states in which the Debtors operate; (l) the United States Attorney's Office for the District of Delaware; (m) the Internal Revenue Service; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the parties identified in clauses (a) through (n), collectively, the "Notice Parties").  Also, the Confirmation Hearing Notice was published in *The New York Times*, the *Charleston Gazette-Mail*, and in the *Lexington Herald Leader* on July 25, 2019, in compliance with the Scheduling Order and Bankruptcy Rule 2002(l).  Such notice was adequate and sufficient pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

> H.    **Disclosure Statement.**

8.    The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in section 1125(a) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein.  The filing of the Disclosure Statement with the clerk of the Court satisfied Bankruptcy Rule 3016(b).

### I.    Voting Report.

9.    Only Holders of Claims or Interests in Classes 3, 4, 10A, 10B, and 10C were eligible to vote on the Plan (the "<u>Voting Classes</u>").  The Ballots the Debtors used to solicit votes to accept or reject the Plan from Holders in the Voting Classes adequately addressed the particular needs of the Chapter 11 Cases and were appropriate for Holders in the Voting Classes to vote to accept or reject the Plan.  Holders of Claims or Interests in Classes 1, 2, 5, 6, 7, 8, and 9 were either Unimpaired or Impaired under the Plan and were not entitled to vote to accept or reject the Plan (collectively, the "<u>Non-Voting Classes</u>").  Thus, Holders of Claims or Interests in the Non-Voting Classes were conclusively presumed to have accepted, or deemed to have rejected, the Plan, as applicable.  As evidenced by the Voting Report, the Voting Classes voted to accept the Plan.  Based on the foregoing, and as evidenced by the Voting Report, Class 3 (Holders of First Lien Term Loan Claims), Class 4 (Holders of Second Lien Term Loan Claims), Class 10A (Holders of Class A Blackhawk Interests), Class 10B (Holders of Class B Blackhawk Interests), and Class 10C (Holders of Class C Blackhawk Interests) have voted to accept the Plan in accordance with the requirements of sections 1124, 1126, and 1129 of the Bankruptcy Code.

### J.    Solicitation.

10.    As described in the Voting Report, the solicitation of votes on the Plan complied with the solicitation procedures approved in the Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations, including the registration requirements under the Securities Act.

11.    As described in the Voting Report and the Affidavits, as applicable, prior to the Petition Date, the Plan, the Disclosure Statement, and the applicable Ballot (collectively,

the "Solicitation Package"), and, following the Petition Date, the Confirmation Hearing Notice, were transmitted and served, including to all Holders in the Voting Classes, in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the Scheduling Order, and any applicable nonbankruptcy law. Transmission and service of the Solicitation Package and the Confirmation Hearing Notice was timely, adequate, and sufficient. No further notice is required.

12.    As set forth in the Voting Report, the Solicitation Package was distributed to Holders in the Voting Classes that held a Claim against or Interest in the Debtors, as of July 11, 2019 (the "Voting Record Date"). The establishment and notice of the Voting Record Date were approved by the Scheduling Order.

13.    The period during which the Debtors solicited acceptances or rejections to the Plan was a reasonable and sufficient period of time for Holders in the Voting Classes to make an informed decision to accept or reject the Plan, and solicitation complied with section 1126(b) of the Bankruptcy Code.

14.    Under sections 1126(f) and 1126(g) of the Bankruptcy Code, the Debtors were not required to solicit votes from the Holders of Claims or Interests, as applicable, in the Non-Voting Classes, each of which is conclusively presumed to have accepted, or deemed to have rejected, the Plan.

**K.    Plan Supplement.**

15.    The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents are good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law and no other or further notice is required. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan

(including Article X of the Plan), the Debtors' right to alter, amend, update, or modify the Plan Supplement before the Effective Date is reserved. The Notice Parties were provided due, adequate, and sufficient notice of the Plan Supplement.

**L.    Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).**

16.    The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code. In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

**(i)    Proper Classification—Sections 1122 and 1123.**

17.    The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into ten Classes, based on differences in the legal nature or priority of such Claims and Interests (other than DIP Claims, Administrative Claims, Professional Fee Claims, and Priority Tax Claims, which are addressed in Article II of the Plan and which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code). Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not promulgated for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests. In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. The Plan, therefore, satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

### (ii) Specified Unimpaired Classes—Section 1123(a)(2).

18.     Article III of the Plan specifies that Claims in Classes 1, 2, and 5 are Unimpaired under the Plan.  The Plan, therefore, satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

### (iii) Specified Treatment of Impaired Classes—Section 1123(a)(3).

19.     Article III of the Plan specifies the treatment of each Impaired, or potentially Impaired, Class of Claims or Interests under the Plan, including Classes 3, 4, 6, 7, 8, 9, 10A, 10B, and 10C.  The Plan, therefore, satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

### (iv) No Discrimination—Section 1123(a)(4).

20.     Article III of the Plan provides the same treatment for each Claim or Interest within a particular class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.  The Plan, therefore, satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### (v) Adequate Means for Plan Implementation—Section 1123(a)(5).

21.     The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate means for the Plan's implementation, including: (a) the New Organizational Documents; (b) the issuance of New Common Stock; (c) the Reorganized Debtors' entry into the New First Lien Loan Agreement and all related documents; (d) the Reorganized Debtors' entry into the Exit ABL Facility Agreement and all related documents; (e) the Restructuring Transactions Memorandum and the formation of Reorganized Blackhawk; (f) authorizing the Debtors and/or the Reorganized Debtors to take all actions necessary to effectuate the Plan, including those actions necessary to effect the Restructuring Transactions; (g) the cancellation of existing securities and agreements, and the surrender of existing securities

(except as otherwise provided therein); (h) the vesting of the Estate assets in the Reorganized Debtors; (i) the preservation and vesting of certain Causes of Action in the Reorganized Debtors; (j) the appointment of officers, directors, and managers of the Reorganized Debtors; and (k) the continued corporate existence of the Debtors.    The Plan, therefore, satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

### (vi)    Non-Voting Equity Securities—Section 1123(a)(6).

22.    The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code prohibiting the issuance of nonvoting equity securities.  Article IV.N of the Plan provides that the New Organizational Documents will prohibit the issuance of any non-voting equity securities under the Plan, to the extent required by section 1123(a)(6) of the Bankruptcy Code.

### (vii)    Directors and Officers—Section 1123(a)(7).

23.    The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. In accordance with Article IV.O of the Plan, the identities of the members of the Reorganized Blackhawk Board as of the Effective Date were identified in **Exhibit E** of the Plan Supplement, and vacant positions specified therein will be filled in the ordinary course of business after the Effective Date pursuant to the New Organizational Documents.  The selection of the members of the Reorganized Blackhawk Board, including Marc Heimowitz as the initial managing member of Reorganized Blackhawk, is consistent with the interests of all Holders of Claims and Interests, and public policy.

### (viii)    Claims and Executory Contracts—Section 1123(b)(1)–(2).

24.    Article III of the Plan leaves Impaired or Unimpaired, as the case may be, each Class of Claims and Interests, and Article V of the Plan provides that, on the Effective Date, except as otherwise provided in the Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, all Executory Contracts

11

and Unexpired Leases shall be deemed assumed as of the Effective Date, unless such Executory Contract or Unexpired Lease: (a) was assumed or rejected previously by the Debtors; (b) previously expired or terminated pursuant to its own terms; (c) is the subject of a motion to reject filed on or before the Effective Date; or (d) is identified on the Rejected Executory Contracts and Unexpired Lease List.  The Debtors provided sufficient notice to each non-Debtor counterparty to an Executory Contract or Unexpired Lease assumed, assumed and assigned, or rejected by the Debtors during the Chapter 11 Cases.

### (ix)    Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3).

25.    The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code. Article VIII.D of the Plan describes certain releases granted by the Debtors (the "Debtor Release"), Article VIII.E of the Plan provides for the release of the Released Parties by the Releasing Parties (the "Third-Party Release"), Article VIII.F of the Plan provides for exculpation for the Exculpated Parties (the "Exculpation"), and Article VIII.G of the Plan provides for an injunction (the "Injunction").  The Bankruptcy Court has jurisdiction under sections 1334(a) and 1334(b) of the Judicial Code and authority under section 105 of the Bankruptcy Code to approve each of the Debtor Release, the Third-Party Release, the Exculpation, and the Injunction.  As has been established based upon the evidence presented at the Confirmation Hearing, such provisions (a) were given in exchange for good, valuable, and adequate consideration after due notice and opportunity for hearing, (b) are appropriately tailored under the facts and circumstances of the Chapter 11 Cases, (c) were integral to the agreements among the various parties in interest and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (d) confer substantial benefits on the Estates, (e) are fair, equitable, and reasonable, and (f) are in the best interests of the Debtors,

the Estates, and parties in interest.  Further, the failure to implement the Debtor Release, Third-Party Release, Exculpation and Injunction would impair the Debtors' ability to confirm and implement the Plan.

26.     The Debtor Release represents a valid exercise of the Debtors' business judgment. The Released Parties provided good and valuable consideration in exchange for the releases—including services, substantial funding (including DIP financing and exit financing), and the consensual reduction or waiver of significant claims, as the case may be—and otherwise facilitated the reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan.

27.     The Third-Party Release is consensual with respect to the Releasing Parties. Specifically, the Confirmation Hearing Notice sent to all Notice Parties (including those not entitled to vote on the Plan) and published in *The New York Times*, the *Charleston Gazette-Mail*, and the *Lexington Herald Leader* on July 25, 2019, and the Ballots sent to all Holders of Impaired Claims in the Voting Classes, in each case, unambiguously stated that the Plan contains the Third-Party Release.  Accordingly, in light of all of the circumstances, the Third-Party Release satisfies the applicable standards contained in *In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013), are fair to the Releasing Parties, and are otherwise appropriate under *In re W.R. Grace & Co.*, 475 B.R. 34, 107 (D. Del. 2012).

28.     The Exculpation appropriately affords protection to those parties who constructively participated in and contributed to the Debtors' chapter 11 process consistent with their duties under the Bankruptcy Code, and it is appropriately tailored to protect the Exculpated Parties from inappropriate litigation.  The Exculpation granted under the Plan is reasonable in scope as it does not relieve any party of liability for an act or omission to the extent such act or

omission is determined by final order to constitute actual fraud, willful misconduct, or gross negligence.

29.     The Injunction is essential to the Plan and is necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release, the Exculpation, and discharge provisions in Article VIII of the Plan.  The Injunction is appropriately tailored to achieve those purposes.

30.     The record of the Confirmation Hearing is sufficient to support the Debtor Release, Third-Party Release, Exculpation and Injunction. Accordingly, based upon the representations of the parties and the evidence proffered, adduced or presented at the Confirmation Hearing, the Debtor Release, Third-Party Release, Exculpation and Injunction are consistent with the Bankruptcy Code and applicable law.

31.     The provisions regarding the preservation of Causes of Action in the Plan (including Article IV.Q), including the Plan Supplement, are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

**(x)     Additional Plan Provisions—Section 1123(b)(6).**

32.     The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

**M.     Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).**

33.     The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfy the requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, each Debtor:

a. is an eligible debtor under section 109 of the Bankruptcy Code and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code;

b. has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

c. complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy law, rule, and regulation, the Scheduling Order, and all other applicable law, in transmitting the Solicitation Package and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**N.    Plan Proposed in Good Faith—Section 1129(a)(3).**

34.    The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, the process leading to Confirmation of the Plan, including the overwhelming support of Holders of Claims or Interests entitled to vote on the Plan, and the transactions to be implemented pursuant thereto.  The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to implement the Restructuring Transactions, reorganize, and emerge from bankruptcy with a capital and organizational structure that will allow them to conduct their businesses and satisfy their obligations with sufficient liquidity and capital resources.

**O.    Payment for Services or Costs and Expenses—Section 1129(a)(4).**

35.    The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**P.** **Directors, Officers, and Insiders—Section 1129(a)(5).**

36.     The Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.    Article IV.O of the Plan, in conjunction with **Exhibit E** of the Plan Supplement, discloses the identity and affiliations of the individuals proposed to serve as the initial directors and officers of the Reorganized Debtors, and the identity and nature of any compensation for any insider who will be employed or retained by the Reorganized Debtors. Vacant positions specified therein will be filled in the ordinary course of business after the Effective Date pursuant to the New Organizational Documents.    The proposed initial directors and officers for the Reorganized Debtors, including Marc Heimowitz as the initial managing member of Reorganized Blackhawk, are qualified, and the appointments to, or continuance in, such offices by the proposed directors and officers is consistent with the interests of the Holders of Claims and Interests and with public policy.

**Q.** **No Rate Changes—Section 1129(a)(6).**

37.     Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Chapter 11 Cases.    The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**R.** **Best Interest of Creditors—Section 1129(a)(7).**

38.     The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis attached to the Disclosure Statement as **Exhibit F** and the other evidence related thereto in support of the Plan that was proffered or adduced in the Nystrom Declaration or at, prior to, or in connection with the Confirmation Hearing:  (a) is reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; and (d) establishes that each Holder of an

Allowed Claim or Interest in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

**S.      Acceptance by Certain Classes—Section 1129(a)(8).**

39.      The Plan does not satisfy the requirements of section 1129(a)(8) of the Bankruptcy Code.  Classes 1, 2, and 5 constitute Unimpaired Classes, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  The Voting Classes, Classes 3, 4, 10A, 10B, and 10C, have voted to accept the Plan.  Although the Debtors are unaware of any Holders of Claims in Class 8 (Section 510(b) Claims), Holders of Class 8 Claims, if any, receive no recovery pursuant to the Plan and are deemed to have rejected the Plan.  Holders of Claims or Interests in Classes 6, 7, and 9 either constitute Unimpaired or Impaired Classes, and are each conclusively presumed to have accepted, or deemed to have rejected, the Plan, respectively.  Notwithstanding the foregoing, the Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

**T.      Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).**

40.      The treatment of Administrative Claims, Professional Fee Claims, and Priority Tax Claims, under Article II of the Plan, and of Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**U.      Acceptance By At Least One Impaired Class—Section 1129(a)(10).**

41.      The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.  As evidenced by the Voting Report, each of Class 3 (First Lien Term Loan Claims) and

Class 4 (Second Lien Term Loan Claims) voted to accept the Plan by the requisite number and amount of Claims at each Debtor, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), specified under the Bankruptcy Code.

### V.      Feasibility—Section 1129(a)(11).

42.      The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.  The financial projections attached to the Disclosure Statement as **Exhibit D** and the other evidence supporting Confirmation of the Plan proffered or adduced by the Debtors at, or prior to, or in the Nystrom Declaration filed in connection with, the Confirmation Hearing:  (a) are reasonable, persuasive, and credible as of the dates such analysis or evidence was prepared, presented, or proffered; (b) have not been controverted by other evidence; (c) establish that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan, except as provided in the Plan; and (d) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.

### W.      Payment of Fees—Section 1129(a)(12).

43.      The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.  Article XII.C of the Plan provides for the payment of all fees payable by the Debtors under section 1930(a) of the Judicial Code.

### X.      Continuation of Employee Benefits—Section 1129(a)(13).

44.      The Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.  Article V.G of the Plan provides that from and after the Effective Date, the payment of all

retiree benefits, as defined in section 1114 of the Bankruptcy Code, will continue in accordance with applicable law.

**Y.      Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16).**

45.      Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.  The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

**Z.      "Cram Down" Requirements—Section 1129(b).**

46.      The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code because (a) at least one Voting Class of Claims at each Debtor voted to accept the Plan and (b) the Plan does not discriminate unfairly and is fair and equitable with respect to the Claims and Interests in the Classes that are deemed to reject the Plan.  The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**AA.      Only One Plan—Section 1129(c).**

47.      The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in each of the Chapter 11 Cases.

**BB.      Principal Purpose of the Plan—Section 1129(d).**

48.      The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**CC.      Good Faith Solicitation—Section 1125(e).**

49.      The Debtors, the Released Parties, the Exculpated Parties, and any and all affiliates, directors, officers, members, managers, shareholders, partners, employees, attorneys, and advisors of each of the foregoing, as applicable, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable

provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support of the Plan and this Confirmation Order, including the solicitation of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**DD.    Satisfaction of Confirmation Requirements.**

50.    Based on the foregoing, the Plan satisfies the requirements for Confirmation thereof set forth in section 1129 of the Bankruptcy Code.

**EE.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

51.    Each of the conditions precedent to the Effective Date, as set forth in Article IX.A of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Section IX.B of the Plan.

**FF.    Implementation.**

52.    All documents necessary to implement the Plan and all other relevant and necessary documents (including the Exit ABL Facility Documents, the New First Lien Term Loan Agreement, and the New Organizational Documents) have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements.

**GG.    Disclosure of Facts.**

53.    The Debtors have disclosed all material facts regarding the Plan, the Plan Supplement, and the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtors.

**HH.    Good Faith.**

54.    The Debtors, each of the Consenting Parties, the Prepetition ABL Agent, each of the Prepetition ABL Lenders, the DIP ABL Agent, each of the DIP ABL Lenders, the DIP Term

Agent, each of the DIP Term Lenders, the First Lien Term Loan Agent, the Second Lien Term Loan Agent, the New First Lien Loan Agent, the Patriot Trust and its trustee, the Patriot Trust Debtor Affiliates, and, with respect to each of the foregoing, such Entities' respective directors, managers, officers, employees, financial advisors, attorneys, accountants, investment bankers, consultants, and other professionals, each solely in their capacity as such (collectively, the "Representatives"), have acted in good faith in negotiating and proposing the Plan.  The Debtors, each of the Consenting Parties, the Prepetition ABL Agent, each of the Prepetition ABL Lenders, the DIP ABL Agent, each of the DIP ABL Lenders, the DIP Term Agent, each of the DIP Term Lenders, the First Lien Term Loan Agent, the Second Lien Term Loan Agent, the New First Lien Loan Agent, the Patriot Trust and its trustee, the Patriot Trust Debtor Affiliates, and, with respect to each of the foregoing, their Representatives will continue to be acting in good faith if they proceed to:   (a) consummate the Plan and the agreements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order to reorganize the Debtors' businesses and effect the Restructuring Transactions.

## ORDER

IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

55.    **Findings of Fact and Conclusions of Law.**  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

56.    **Confirmation of the Plan.**  The Plan, attached hereto as **Exhibit A**, is confirmed and the Debtors are authorized to enter into and execute all documents and agreements related to the Plan (including all exhibits and attachments thereto and documents referred to therein), and

the execution, delivery, and performance thereafter by the Reorganized Debtors, are hereby approved and authorized.

57.    **Disclosure Statement.**  The Disclosure Statement is approved in all respects.

58.    **Objections.**    All objections and all reservations of rights pertaining to Confirmation of the Plan or approval of the Disclosure Statement that have not been withdrawn, waived, resolved, or settled are overruled on the merits.

59.    **Deemed Acceptance of Plan as Modified.**  The Debtors modified the Plan to address concerns raised by parties in interest and made certain nonmaterial clarifications.  The Plan modifications were immaterial and comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  Moreover, the Debtors' key constituents affected by such modifications support these changes.   Accordingly, no additional solicitation or disclosure was required on account of the modifications and all Holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan as modified, revised, supplemented, or otherwise amended (the "Plan Modifications").   No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan Modifications.

60.    **Omission of Reference to Particular Plan Provisions.**  The failure specifically to include or to refer to any particular article, section, or provision of the Plan or the Plan Supplement in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provisions, it being the intent of the Court that the Plan and any related documents be confirmed and approved in their entirety.

61.    **Plan Classifications Controlling.**  The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.

The classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim as representing the actual classification of such Claim under the Plan for distribution purposes; and (d) shall not be binding on the Debtor except for voting purposes.

62.    **No Action Required; Corporate Action.**  No action of the respective directors, equity holders, managers, or members of the Debtors or Reorganized Debtors, as applicable, is required to authorize the Debtors or Reorganized Debtors, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Restructuring Transactions, and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.  To the extent applicable, all matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, as applicable, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors, as applicable. On or, as applicable, prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors (including Marc Heimowitz as the initial managing member of Reorganized Blackhawk), as applicable, are authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or

desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the applicable Reorganized Debtors.

63.    **Means for Implementation of the Plan.**  The provisions governing the means for implementation of the Plan set forth in Article IV of the Plan shall be, and hereby are, approved in their entirety.  The Debtors are authorized to take all actions reasonably necessary to implement the Plan on the terms set forth in Article IV.  Further, upon the Effective Date, the Debtors or Reorganized Debtors, as applicable, are authorized to make the payments or other distributions set forth in Article II and Article III of the Plan.

64.    **Exit Facilities.**  On the Effective Date, the Reorganized Debtors shall execute and deliver the New First Lien Loan Documents and the Exit ABL Facility Documents and such documents shall become effective in accordance with their terms.  On and after the Effective Date, the New First Lien Loan Documents and the Exit ABL Facility Documents shall constitute legal, valid, and binding obligations of the Reorganized Debtors and be enforceable in accordance with their respective terms.  Upon entry into the New First Lien Loan Documents and Exit ABL Facility Documents, all of the claims, liens, and security interests to be granted in accordance with the terms of the New First Lien Loan Documents and the Exit ABL Facility Documents (a) shall be legal, binding, and enforceable liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New First Lien Loan Documents and the Exit ABL Facility Documents, (b) shall be deemed automatically attached and perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the New First Lien Term Loan Documents and the Exit ABL Facility Documents, and (c) subject to contractual subordination pursuant to the intercreditor agreement between the Exit ABL Agent and the New First Lien Loan Agent, shall not be subject to

avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. Any consent or waiver granted by any party to the grant or perfection of a Lien under the Credit Documents (as defined in the First Lien Term Loan Agreement or Prepetition ABL Credit Agreement) shall apply to the New First Lien Loan Documents and Exit ABL Facility Documents to the same extent so long as such consent or waiver was not specifically limited to the granting or perfection of a Lien under such Credit Documents.

65.    **Restructuring Transactions.** On and after the Confirmation Date, the Debtors or the Reorganized Debtors, as applicable, shall take all actions set forth in the Restructuring Steps Memorandum and may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan that are consistent with and pursuant to the terms and conditions of the Plan and the RSA, which transactions may include, as applicable:    (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution or other certificates or documentation for other transactions as described in clause (a), pursuant to

applicable state law; (d) the execution and delivery of the Shareholders Agreement and the New Organizational Documents and any certificates or articles of incorporation, bylaws, or such other applicable formation documents (if any) of each Reorganized Debtor; (e) the execution and delivery of the New First Lien Loan Documents and Exit ABL Facility Documents (in both cases, including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors, as applicable); (f) the execution and delivery of the New Organizational Documents (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors, as applicable), and the issuance, distribution, reservation, or dilution, as applicable, of the New Common Stock, as set forth herein; (g) the adoption of the Management Incentive Plan and the issuance and reservation of the Management Incentive Plan Equity to the participants in the Management Incentive Plan on the terms and conditions set by the Reorganized Blackhawk Board after the Effective Date; (h) all transactions necessary to provide for the purchase of substantially all of the assets or Interests of any of the Debtors by one or more Entities to be wholly owned by Reorganized Blackhawk, which purchase may be structured as a taxable transaction for United States federal income tax purposes; and (i) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Restructuring Transactions.

66.    **Post-Confirmation Transactions.**  Prior to the Effective Date, the Debtors and any applicable third parties, with the consent of the Required Consenting Term Lenders and subject to the consent rights and limitations in the DIP ABL Agreement (or the Exit ABL Agent with respect to the treatment, rights, or terms of the Exit ABL Facility), are authorized to take

any and all action as may be deemed necessary or appropriate to consummate any transaction outside the ordinary course of business for the acquisition from (an "Acquisition Transaction") or the sale (a "Sale Transaction") to one or more third parties of any assets (including mining equipment, coal reserves, and related assets) that the Debtors determine in their business judgment is in the best interest of their estates, without further notice or Court order.  Subject to customary confidentiality protections and without limiting the applicable consent rights in the preceding sentence, the Debtors shall provide no less than 5 business days written notice prior to the closing on any Sale Transaction and written notice within 5 business days after the closing of any Acquisition Transaction to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Consenting Term Lenders; (iii) counsel to the Ad Hoc Group of First Lien Lenders; (iv) counsel to the DIP ABL Agent; (v) counsel to the DIP Term Agent; (vi) counsel to the First Lien Term Loan Agent; (vii) counsel to the Second Lien Term Loan Agent; (viii) counsel to the Objecting Land Owners (as defined herein); and (ix) any known affected creditors, including, without limitation, the lessors or sublessors of any unexpired leases or subleases that may be affected by such Sale Transaction or Acquisition Transaction, as applicable.    The foregoing authorization shall apply for a period of 60 days after the Confirmation Date (the "Authorization Time Period").  The Debtors will be required to obtain either an extension of the Authorization Time Period or separate approval by the Bankruptcy Court after notice and a hearing before entering into a binding agreement with respect to any Acquisition Transaction or Sale Transaction after the Authorization Time Period if the Effective Date has not occurred by such time, *provided* that if the Debtors have entered into a binding agreement for an Acquisition Transaction or Sale Transaction during the Authorization Time Period, the Debtors may close that transaction at any time, including after the Authorization

Time Period, without Court approval but subject to the applicable notice requirements set forth above.

67.    **Vesting of Assets in the Reorganized Debtors.**  Except as otherwise provided in the Plan or the Plan Supplement, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Debtor's Estate, all Causes of Action, and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances (except for Liens securing obligations under the Exit ABL Facility Documents and the New First Lien Loan Documents and the Liens securing obligations on account of Other Secured Claims that are Reinstated pursuant to the Plan, if any).  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

68.    **Cancellation of Existing Agreements, Notes, and Equity Interests.**  On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims shall be cancelled, and the obligations of the Debtors or the Reorganized Debtors and any non-Debtor Affiliates thereunder or in any way related thereto shall be discharged and deemed satisfied in full, and the Term Loan Agents shall be released from all duties thereunder; *provided*, *however*, that notwithstanding Confirmation or the occurrence of the Effective Date, any credit document or agreement that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of (a) allowing Holders of Allowed Claims to receive distributions under the Plan, (b) allowing and preserving

the rights of the Term Loan Agents and DIP Agents to make distributions pursuant to the Plan, (c) preserving the Term Loan Agents', the Prepetition ABL Agent's, and the DIP Agents' rights to compensation and indemnification as against any money or property distributable to the Prepetition ABL Lenders, Holders of First Lien Term Loan Claims, Second Lien Term Loan Claims, DIP ABL Claims, and DIP Term Claims, including permitting the Term Loan Agents and DIP Agents to maintain, enforce, and exercise its charging liens against such distributions, (d) preserving all rights, including rights of enforcement, of the Term Loan Agents, the Prepetition ABL Agent, and DIP Agents against any person other than a Released Party (including the Debtors), including with respect to indemnification or contribution from the Prepetition ABL Lenders, Holders of the First Lien Term Loan Claims, Second Lien Term Loan Claims, DIP ABL Claims, and DIP Term Claims pursuant and subject to the terms of the Prepetition ABL Credit Agreement, the First Lien Term Loan Agreement, the Second Lien Term Loan Agreement, the DIP ABL Agreement, and the DIP Term Agreement as in effect on the Effective Date, (e) permitting the Term Loan Agents, the Prepetition ABL Agent, and DIP Agents to enforce any obligation (if any) owed to the Term Loan Agents, the Prepetition ABL Agent, or DIP Agents under the Plan, (f) permitting the Prepetition ABL Agent, the Term Loan Agents, and the DIP Agents to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, (g) permitting the DIP Agents, the DIP ABL Lenders, the DIP Term Lenders, the Prepetition ABL Agent, the Prepetition ABL Lenders, the First Lien Term Loan Agent, the First Lien Term Loan Lenders, the Second Lien Term Loan Agent, and the Second Lien Term Loan Lenders to assert any rights with respect to the Contingent DIP Term Obligations, the Contingent DIP ABL Obligations, the Contingent Prepetition ABL Obligations, the Contingent First Lien Term Loan Obligations or the Contingent Second Lien

Term Loan Obligations, as applicable, and (h) permitting the Term Loan Agents, the Prepetition ABL Agent, and the DIP Agents to perform any functions that are necessary to effectuate the foregoing; *provided*, *further*, *however*, that (i) the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Debtors or Reorganized Debtors, as applicable, except as expressly provided for in the Plan and (ii) except as otherwise provided in the Plan, the terms and provisions of the Plan shall not modify any existing contract or agreement that would in any way be inconsistent with distributions under the Plan.  The Term Loan Agents, the Prepetition ABL Agent, and the DIP Agents shall be discharged and shall have no further obligation or liability except as provided in the Plan and Confirmation Order, and after the performance by the Term Loan Agents, the Prepetition ABL Agent, and the DIP Agents and their representatives and professionals of any obligations and duties required under or related to the Plan or Confirmation Order, the Term Loan Agents, the Prepetition ABL Agent, and the DIP Agents shall be relieved of and released from any obligations and duties arising thereunder.  The fees, expenses, and costs of the Term Loan Agents, the Prepetition ABL Agent, and the DIP Agents, including fees, expenses, and costs of its professionals incurred after the Effective Date in connection with the First Lien Term Loan Agreement, the Second Lien Term Loan Agreement, the Prepetition ABL Agreement, the DIP Term Agreement, and the DIP ABL Agreement, as applicable, and reasonable and documented costs and expenses associated with effectuating distributions pursuant to the Plan will be paid by the Reorganized Debtors in the ordinary course.

69.    **Treatment of Executory Contracts and Unexpired Leases.**  The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan shall be, and hereby are, approved in their entirety, other than that the treatment of any

Claims arising by the rejection by any Debtor of any Executory Contract or Unexpired Lease shall be determined by further Court order or agreement of the Debtors or Reorganized Debtors, as applicable, and the affected contract counterparty and shall not be automatically treated as a General Unsecured Claim.  For the avoidance of doubt, the Reorganized Debtors shall assume all Executory Contracts and Unexpired Leases, including any amendments, modifications, or supplements thereto, unless such Executory Contract or Unexpired Lease:  (a) was assumed or rejected previously by the Debtors; (b) previously expired or terminated pursuant to its own terms; (c) is the subject of a motion to reject filed on or before the Effective Date; or (d) is identified as an Executory Contract or Unexpired Lease on the Rejected Executory Contracts and Unexpired Lease List.  Any Executory Contract or Unexpired Lease that is subject to an unresolved objection to the assumption of such Executory Contract or Unexpired Lease that is pending as of the Effective Date will not be assumed until entry of an order resolving the dispute and approving the assumption of such Executory Contract or Unexpired Lease or as may be agreed upon by the Debtors or the Reorganized Debtors and the counterparty; *provided* that after the Effective Date, the Reorganized Debtors may settle any dispute regarding the amount of any Cure Cost without any further notice to any party or any action, order, or approval of the Bankruptcy Court; *provided*, *further*, that resolution of any pending objection to the assumption or rejection of an Executory Contract or Unexpired Lease will not delay the Effective Date.  If the Debtors intend to modify the treatment of an Executory Contract or Unexpired Lease post-Confirmation Date but prior to the Effective Date, the Debtors shall either file a Plan Supplement to that effect and the counterparty to each Executory Contract or Unexpired Lease shall have 14 days from the filing of such Plan Supplement to object to such treatment or file a

separate motion with notice to the counterparty, which motion will be set for a hearing in accordance with the Local Rules.

70. **Provisions Governing Distributions.**  The distribution provisions of Article VI of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Disbursing Agent shall make all distributions required under the Plan.  The timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan or this Confirmation Order, as applicable.

71. **Procedures for Resolving Disputed, Contingent, and Unliquidated Claims or Equity Interests.**  The procedures for resolving contingent, unliquidated, and disputed Claims contained in Article VII of the Plan shall be, and hereby are, approved in their entirety.  If any Proof of Claim is filed in the Chapter 11 Cases, the Debtors or Reorganized Debtors, as applicable, must address such Claim and provide notice to the Court regarding whether such Claim will need to be addressed by the Court.

72. **Release, Exculpation, Discharge, and Injunction Provisions.**  The release, exculpation, discharge, injunction, and related provisions set forth in Article VIII of the Plan shall be, and hereby are, approved and authorized in their entirety, including, but not limited to:

> a. **Debtor Release.**  The Debtor Release set forth in Article VIII.D of the Plan is hereby approved.
>
> b. **Third-Party Release.**  The Third-Party Release set forth in Article VIII.E of the Plan is hereby approved.
>
> c. **Exculpation.**  The Exculpation set forth in Article VIII.F of the Plan is hereby approved.

    d.  **Injunction**.  The Injunction provision set forth in Article VIII.G of the Plan is hereby approved.

73.    **Release of Liens.**  The Release of Liens provision set forth in Article VIII.C of the Plan is hereby approved.  The Holders of mortgages, deeds of trust, Liens, pledges, or other security interests subject to release pursuant to Article VIII.C shall execute such documents as may be reasonably requested by the Debtors or the Reorganized Debtors, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

74.    **Professional Fee Escrow Account.**  As soon as reasonably practicable after the Confirmation Date, and no later than one Business Day prior to the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court.  No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way.  Such funds shall not be considered property of the Estates, the Debtors, or the Reorganized Debtors.

75.    The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Debtors or the Reorganized Debtors, as applicable, from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; *provided* that the

Debtors' and the Reorganized Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account. When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

76.    **Other Fees and Expenses.**  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, without any further notice to or action, order, or approval of the Bankruptcy Court, the Debtors or the Reorganized Debtors, as applicable, shall pay on the Effective Date all then-outstanding reasonable and documented unpaid fees and expenses incurred on or before the Effective Date by all of the attorneys, advisors, and other professionals payable pursuant to the Plan or the DIP Order.  Such parties shall not be required to file any application under sections 330 or 331 of the Bankruptcy Code or otherwise with regard to such fees and expenses.  The Reorganized Debtors shall continue to pay when due and payable in the ordinary course, reasonable and documented fees and expenses of the Ad Hoc Crossholder Lender Group Advisors (as defined in the RSA), the Ad Hoc First Lien Lender Group Advisors (as defined in the RSA), and counsel to the DIP ABL Agent related to implementation, consummation, or defense of the Plan.

77.    **Utility Order.**  On or as reasonably practicable after the Effective Date, and only after all postpetition, but pre-Effective Date, Claims on account of utility services have been paid and any disputes with respect to such Claims have been resolved, the Reorganized Debtors are authorized to withdraw the funds held in the segregated escrow account pursuant to the *Final*

*Order (A) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (B) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Services, (C) Approving the Debtors' Proposed Procedures for Resolving Adequate Assurance Requests, and (D) Granting Related Relief* [Docket No. 168] (the "Utility Order"), and the Reorganized Debtors shall have no further obligations to comply with the Utility Order.  If applicable, all utilities, including any Person or Entity that received a deposit or other form of adequate assurance of performance under section 366 of the Bankruptcy Code during the Chapter 11 Cases in compliance with the Utility Order or otherwise, must return such deposit or other form of adequate assurance of performance to the Debtors or the Reorganized Debtors, as the case may be, on or before the Effective Date, *provided* that any such utility may apply such deposit or other form of adequate assurance of performance to the Reorganized Debtors' account within 30 days of the Effective Date.

78.    **Conditions to Effective Date.**    The provisions governing the conditions precedent to the Effective Date set forth in Article IX of the Plan shall be, and hereby are, approved in their entirety.  The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to satisfaction or waiver of such provisions pursuant to their terms.

79.    **Modifications or Amendments.**    The provisions governing the modification, revocation, or withdrawal of the Plan set forth in Article X of the Plan shall be, and hereby are, approved in their entirety.

80.    **Retention of Jurisdiction.**    The provisions governing the retention of jurisdiction set forth in Article XI of the Plan shall be, and hereby are, approved in their entirety.  The Court

shall retain exclusive jurisdiction over the matters arising in, and under, and related to, the Chapter 11 Case, as set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

81.    **Immediate Binding Effect.**    Subject to Article IX of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and enforceable to the fullest extent permitted under the Bankruptcy Code and applicable nonbankruptcy law.

82.    Notwithstanding anything to the contrary in the Plan, the Bankruptcy Rules, including Bankruptcy Rule 3020(e), or otherwise, this Confirmation Order shall become immediately effective and enforceable upon its entry.

83.    **Payment of Statutory Fees.**    All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by the Debtors or Reorganized Debtors, as applicable, for each quarter (including any fraction thereof) until the Chapter 11 Cases are dismissed or closed, whichever occurs first.

84.    **Effectiveness of All Actions.**    Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, before, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of this Court, or further action by the respective officers, directors, managers, members, or stockholders of the Debtors or the Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations, of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, agreements, any

36

amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, agreements, and any amendments or modifications thereto.

85.     **Effect of Conflict Between Plan and Confirmation Order.**  Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided*, *however*, with respect to any conflict or inconsistency between the Plan and this Confirmation Order, this Confirmation Order shall govern.

86.     **Nonseverability of Plan Provisions and Confirmation Order.**  Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (c) nonseverable and mutually dependent.  Each provision of this Confirmation Order is nonseverable and mutually dependent on each other term of this Confirmation Order and the Plan.

87.     **Failure of Consummation.**  If the Effective Date does not occur and the Debtors file a notice withdrawing the Plan, then: (a) the Plan and this Confirmation Order will be null and void in all respects; (b) any settlement or compromise embodied in the Plan or this Confirmation Order, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan will be null and void in all respects; and (c) nothing contained in the Plan or this Confirmation Order shall (i) constitute a waiver or release of any Claims, Interests, or Causes of Action, (ii) prejudice in any manner the

rights of any Debtor or any other Entity, or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity, and all parties shall revert to the status quo as if this Confirmation Order had not been entered.

88.    **Terms of Injunctions or Stays.**  Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or this Confirmation Order (including the Injunction) shall remain in full force and effect in accordance with their terms.

89.    **Post-Confirmation Modifications.**    Without need for further order or authorization of the Court, the Debtors, with the reasonable consent of the Required Consenting Term Lenders and subject to the consent rights and limitations in the DIP ABL Agreement, or the Reorganized Debtors, as applicable, are authorized and empowered to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan and this Confirmation Order.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan and the consent rights and limitations in the DIP ABL Agreement (or the Exit ABL Agent with respect to provisions relating to the treatment, rights, or terms of the Exit ABL Facility), the Debtors and the Reorganized Debtors expressly reserve their respective rights to revoke or withdraw, or to alter, amend, or modify materially the Plan with respect to such Debtor, one or more times after Confirmation, and, to the extent necessary, may initiate

proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X of the Plan.

90.    **Certain Government Matters.**  Notwithstanding any other provision in the Plan, Plan Supplement, Confirmation Order, or related plan documents, nothing in the Plan, the Plan Supplement, the Confirmation Order, or related plan documents shall discharge or release the Debtors, the Reorganized Debtors, or any non-debtor from any right, claim, liability, or Cause of Action of the United States or any State, or impair the ability of the United States or any State to pursue any claim, liability, right, defense, or Cause of Action against any Debtor, Reorganized Debtor, or non-debtor.  Contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements, or other interests of or with the United States or any State shall be, subject to any applicable legal or equitable rights or defenses of the Debtors or the Reorganized Debtors under applicable non-bankruptcy law, paid, treated, determined and administered in the ordinary course of business as if the Chapter 11 Cases were never filed and the Debtors and the Reorganized Debtors shall comply with all applicable non-bankruptcy law. All claims, liabilities, rights, Causes of Action, or defenses of or to the United States or any State shall survive the Chapter 11 Cases as if they had not been commenced and be determined in the ordinary course of business, including in the manner and by the administrative or judicial tribunals in which such rights, defenses, claims, liabilities, or Causes of Action would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced; *provided*, that nothing in the Plan or the Confirmation Order shall alter any legal or equitable rights or defenses of the

Debtors or the Reorganized Debtors under non-bankruptcy law with respect to any such claim, liability, or Cause of Action.  Without limiting the foregoing, for the avoidance of doubt, nothing shall: (a) require the United States or any State to file any proofs of claim or administrative expense claims in the Chapter 11 Cases for any right, claim, liability, defense, or Cause of Action; (b) affect or impair the exercise of the United States' or any State's police and regulatory powers against the Debtors, the Reorganized Debtors, or any non-debtor; (c) be interpreted to set cure amounts or to require the United States or any State to novate or otherwise consent to the transfer of any federal or state contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests; (d) affect or impair the United States' or any State's rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Debtors or the Reorganized Debtors and such rights and defenses are expressly preserved; (e) constitute an approval or consent by the United States or any State without compliance with all applicable legal requirements and approvals under non-bankruptcy law; or (f) relieve any party from compliance with all licenses and permits issued by Governmental Units in accordance with non-bankruptcy law.  Additionally, also for the avoidance of doubt, notwithstanding any other provision in the Plan, the Plan Supplement, the Confirmation Order, or related plan documents, nothing relieves the Debtors or the Reorganized Debtors from their obligations to comply with the Communications Act of 1934, as amended, and the rules, regulations, and orders promulgated thereunder by the FCC.  No transfer of any FCC license or authorization held by the Debtors or transfer of control of the Debtors or transfer of control of an FCC licensee controlled by the Debtors shall take place prior to the issuance of FCC regulatory approval for such transfer pursuant to applicable FCC regulations.  The FCC's rights and powers to take any action pursuant to its regulatory authority including, but not limited

to, imposing any regulatory conditions on any of the above described transfers, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority.  In addition, nothing herein relieves the Debtors or the Reorganized Debtors from their obligations to comply with the Atomic Energy Act of 1954, as amended, and the rules, regulations and orders promulgated thereunder by the NRC.  No transfer of any NRC licenses held by the Debtors or transfer of control of the Debtors or transfer of control of an NRC licensee controlled by the Debtors shall take place prior to the issuance of NRC regulatory approval for such transfer pursuant to applicable NRC regulations.  The NRC's rights and powers to take any action pursuant to its regulatory authority including, but not limited to, imposing any regulatory conditions on any of the above described transfers, are fully preserved, and nothing herein shall proscribe or constrain the NRC's exercise of such power or authority.

91.    **Provisions Resolving Certain Objections.**

a.    Notwithstanding any language to the contrary in the Plan or this Confirmation Order, all interests in real property that revest in each Reorganized Debtor shall remain subject to any easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests that are of record in the applicable real property records.

b.    Notwithstanding anything to the contrary in this Confirmation Order, the Plan or the Plan Supplement, and as a supplement to Article V(D) of the Plan, on and after the Effective Date: (i) the Reorganized Debtors shall assume, pursuant to sections 105 and 365 of the Bankruptcy Code, all of the insurance policies issued to or providing coverage to any of the Debtors and any agreements related thereto in their entirety and without modification in any way and without any limitation or exception set

forth in the Plan and (ii) the Reorganized Debtors shall be liable in full for all of their and the Debtors' obligations under such insurance policies and related agreements regardless of when such obligations arise.

c.       Notwithstanding anything to the contrary in the Plan or this Confirmation Order, Whayne Supply Company ("Whayne") and Cecil I. Walker Machinery Company ("Walker") hereby have, retain and reserve any and all rights, claims, causes of action, defenses and remedies at law or in equity, whether arising prior to or after the Petition Date, with respect to their Claims and any and all contracts, leases and agreements, including, but not limited to, any and all executory contractors and/or unexpired leases. Nothing in the Plan or this Confirmation Order shall constitute a waiver, release or discharge of such rights, claims, causes of action, defenses and remedies nor enjoin the assertion or exercise thereof, including, but not limited to, as such may arise, be asserted or exercised in connection with Claims of either Whayne or Walker that are: (1) disputed; (2) not Allowed; (3) not paid in the ordinary course of business; (4) not satisfied according to the terms, conditions and obligations of the contract, lease or agreement governing such Claim, including, but not limited to, any and all executory contractors and/or unexpired leases; or (5) not paid as otherwise provided for in the Plan or as required by the Bankruptcy Code.

d.       Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the New First Lien Loan Documents, the Exit ABL Facility Documents, the Confirmation Order, and any other document related to any of the foregoing (including, without limitation, any provision that purports to be preemptory or supervening, grants an injunction or release): (a) on the Effective Date, the Debtors shall

assume and the Reorganized Debtors shall take assignment of the Leases[3] (and all obligations related to mining permits related to the Leases (collectively, the "Permits")) in their entireties; (b) all debts, duties, covenants, obligations, and liabilities of the Debtors and the Land Owners (if any) under or related to the Leases whether arising before or after the Effective Date (including, without limitation, before or after the Petition Date), shall survive and shall not be amended, modified, waived, released, discharged, or impaired in any respect as a result of the confirmation of the Plan and occurrence of the Effective Date; (c) the Reorganized Debtors and the Land Owners will continue to be bound by the Leases in accordance with their terms as if the Chapter 11 Cases had not occurred (other than prior to the Effective Date, any assumption and/or assumption and assignment of such Leases or any Restructuring Transactions contemplated by the Plan provided any assumption and/or assumption and assignment is in accordance with section 365 of the Bankruptcy Code); (d) the Claims of the Land Owners, including, without limitation, Cure

---

[3]  For the purposes of this subsection, "Leases" shall mean all assumed unexpired leases and subleases (and any related guaranties) with any lessors and/or sublessors (collectively, the "Land Owners"), including, without limitation, Leases with the following Land Owners (such objecting Land Owners, collectively, the "Objecting Land Owners"): Penn Virginia Operating Co.; LLC, Natural Resource Partners L.P.; ACIN LLC; WPP LLC; Kentucky River Properties LLC; Timberlands LLC; KYMAC Land LLC; Shonk Land Company LLC; H.A. Robson LLC; PRC Holdings, LLC; Prichard School, L.L.C.; City National Bank of West Virginia as Successor Trustee under a Trust Agreement dated December 30, 1983, by and between Kanawha Banking & Trust Company, N.A., Trustee, and A.M. Prichard, III, Sarah Ann Prichard and Lewis Prichard and their respective spouses, as amended; Kanawha Boone Holdings, LLC; Ohio River Holdings, LLC successor by conveyance by Deed dated September 1, 2015, by LML-AWW Holdings, L.L.C., RBL-AAW Holdings, LLC; AAW Holdings, LLC; LaFollette Holdings, Ltd.; James A. LaFollette Holdings, LLC; Robert B. LaFollette Holdings, LLC; Wright Holdings, LLC; LML Properties, L.L.C.; Riverside Park, Inc.; Broun Properties, L.L.C.; Garland Fork, LLC, as successor lessor to Lawson Heirs Incorporated; E. Fontaine Broun and Rahel D. Broun; Virginia Broun Lawson and Robert W. Lawson, Jr.; Kanawha Valley Bank, N.A. and W.t. O'Farrell, as Trustee under the Last Will and Testament of Thomas B. Jackson; Kanawha Valley Bank, N.A. as Special Receiver of the Estate of Thomas L. Broun; Louise Fontaine Powers; Anne Conway Powers; Anne Record Ervin and Clyde Ervin; Philip Whittemore Powers and Lois Jenks Powers; Jean J. Powers Shield and John Shield; Jean J. Powers Shield, as Executrix of the Estate of Thomas B. Powers, Jr.; Thomas Broun Powers, Jr.; Stephen Jordan Powers; Blue Eagle Land, LLC; Kinder Morgan Resources, LLC; Lorado LLC; Imperial Coal Co.; Black Band LLC; and Chesapeake Mining Co.

Claims, arising under or related to the Leases (whether arising before or after the Effective Date (including, without limitation, before or after the Petition Date) (1) shall be paid by the Reorganized Debtors in the ordinary course of businesses, *provided* that the Debtors, the Reorganized Debtors, and the Land Owners retain any and all rights, defenses, and/or counterclaims under the Leases (and any other applicable documents or agreements) and applicable law with respect to such Claims, and (2) shall not be discharged or released by the Plan or the Confirmation Order or in any manner whatsoever by the Chapter 11 Cases; (e) disputes related to Cure Claims of the Objecting Land Owners, if any, due under their applicable Leases shall be addressed by the Bankruptcy Court and the Bankruptcy Court retains jurisdiction over such disputes; (f) the Objecting Land Owners need not file any objection to the Plan or to a proposed cure amount, and the Land Owners shall not be subject to any bar date or similar deadline governing cure amounts or Claims; (g) all obligations under the Leases of the Debtors, the Reorganized Debtors, and the Land Owners, if any, or of any other persons or entities associated directly or indirectly with environmental conditions, discharges, or obligations related to reclamation, remediation, restoration, or mitigation, or acts or omissions related thereto (collectively, the "Environmental Matters"), whether on account of an act or omission by any of the Debtors, the Reorganized Debtors, or the Land Owners, any of their respective sub-lessees, contractors, agents, and/or affiliates, or any bonding company or governmental agency that assumes responsibility for operations in connection with any of the applicable properties covered by such Leases or any portion thereof, or any other person operating on such properties with the permission or consent of the Debtors, the Reorganized Debtors, or the Land Owners, shall not be discharged, waived, limited, or released as a result of the

Plan, this Confirmation Order, the Chapter 11 Cases, or by the occurrence of the Effective Date, and further the obligations related to Environmental Matters are hereby specifically preserved regardless of whether the fact or possibility of the Environmental Matters are known to anyone to exist prior to the Effective Date; (h) the Land Owners' rights to indemnification from the Debtors and the Reorganized Debtors or the Debtors and the Reorganized Debtors' rights to indemnification from the Land Owners, if any, in each case as provided in the Leases, shall not be altered, affected, or vitiated as a result of the confirmation of the Plan and occurrence of the Effective Date, irrespective of the fact or possibility that Environmental Matters do, or may, exist prior to Effective Date; (i) nothing in the Plan (including, without limitation, the Third-Party Release and Exculpation provisions set forth in the Plan) or the Confirmation Order shall release, discharge, or terminate (1) any claim or Cause of Action held by the Land Owners against any person (including, without limitation, any of the Released Parties) arising under or related to the Leases, performance under the Leases, and/or defaults under the Leases, or (2) any guaranty or indemnity issued, granted, or given by any person (including, without limitation, any of the Released Parties) in favor of any of the Land Owners, or any predecessor, successor, assign, or member of any of the Land Owners, or of any guaranty or indemnity of, or with respect to, the Leases; (j) the Land Owners, the Debtors, and the Reorganized Debtors specifically reserve, and do not hereby waive, any rights ancillary to any Lease, permit, and/or bond  transfer process, with regard to any laws and regulations governing the same, or with respect to adequacy of bonding and security in connection with reclamation and water treatment, and nothing herein shall be construed to constitute a waiver of any of the Debtors', the Reorganized Debtors', or the

45

Land Owner's rights with respect to any transfer process; and (k) the Leases, related properties, and coal and/or minerals in or under such properties shall not be Collateral subject to Liens (each as defined in the New First Lien Loan Documents and the ABL Facility Documents) to the extent they constitute Excluded Assets (as defined in the New First Lien Loan Documents and the Exit ABL Facility Documents filed as part of the Plan Supplement at Docket No. 196). For the avoidance of doubt, nothing in the Disclosure Statement, the Plan, the Plan Supplement, the New First Lien Loan Documents, the Exit ABL Facility Documents, the Confirmation Order or any other document related to any of the foregoing or anything in the Restructuring Transactions contemplated by the Plan shall authorize any assignment and/or transfer of the Leases or Permits (including, without limitation, the grant of any Liens in connection with the New First Lien Loan Documents and the Exit ABL Facility Documents) occurring after the Effective Date in violation of the terms of the Leases or applicable law.

e.      Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the New First Lien Loan Documents, the Exit ABL Facility Documents, the Confirmation Order, and any other document related to any of the foregoing (including, without limitation, any provision that purports to be preemptory or supervening, grants an injunction or release), aside from other cure amounts due and owing from the Debtors to Shonk Land Company, LLC ("Shonk"), the Debtors and, after the Effective Date, the Reorganized Debtors, shall (A) pay $1,787,991.00 in the aggregate to Shonk as the cure amount relating to the wheeling and loading fee correction amount for the time period October 2015 through June 2019 for the Robin Land Company Lease (the "Robin Land Company Lease Correction Amount") and such

46

amount shall be due and payable as follows: (i) five (5) days after the Effective Date, $250,000.00, (ii) October 15, 2019, $250,000.00, (iii) November 15, 2019, $0.00, (iv) December 1, 2019, $250,000.00, (v) December 15, 2019, $250,000.00, (vi) January 15, 2020 and on the 15th day of each of the four (4) successive months thereafter, $150,000.00 per month, and (vii) June 15, 2020, $37,991.00; and (B) pay $248,803.14 in the aggregate to Shonk on October 1, 2019 for the 1st half of 2019 property taxes with respect to the Panther-PG&H Lease ($6,626.63), the Wildcat Lease ($9,749.78), the Panther Lease ($106,381.17), and the Robin Land Company Lease ($126,045.56).  If the Debtors or the Reorganized Debtors, as the case may be, fail or default in the payment of any sums required hereunder when and as due and payable, such failure or default shall constitute a failure or default in the payment of sums required by the Robin Land Company Lease with respect to the Robin Land Company Lease Correction Amount and the applicable lease with respect to the 1st half of 2019 property taxes and as such Shonk shall have all rights and remedies as set forth under the Robin Land Company Lease with respect to the Robin Land Company Lease Correction Amount and the applicable lease with respect to the 1st half of 2019 property taxes dealing with a failure or default in the payment of any sums required to be paid by the lessee under the Robin Land Company Lease or the applicable lease.

92.    **Notice of Confirmation and Effective Date.**  In accordance with Bankruptcy Rules 2002 and 3020(c), within 10 business days of the Effective Date, the Reorganized Debtors shall cause the notice of Confirmation (the "Confirmation Notice"), substantially in the form attached hereto as **Exhibit B**, to be served by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties served with the Confirmation Hearing Notice;

*provided* that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors or Reorganized Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. Mailing of the Confirmation Notice in the time and manner set forth in this paragraph shall be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c) and no further notice is necessary.

93.     The Confirmation Notice shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers, and shall be a recordable instrument notwithstanding any contrary provision of applicable nonbankruptcy law.

94.     **Applicable Nonbankruptcy Law.**  The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

95.     **Waiver of Filings.**  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the U.S. Trustee is permanently waived as to any such list, schedule, or statement not filed so long as the Effective Date occurs within 60 days of the Confirmation Date.

96.     **Final Order.**  This Confirmation Order is intended to be a final order and the period within which an appeal must be filed commences upon the entry hereof.

Dated: August 29th, 2019
Wilmington, Delaware

48

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**