IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| BLACKHAWK MINING LLC, *et al.*,[1] | ) ) ) | Case No. 19-11595 (LSS) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO AMEND THE TERM DIP CREDIT AGREEMENT TO INCREASE THE SIZE OF THE FACILITY, (II) GRANTING RELATED LIENS AND CONFERRING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),[2] respectfully state as follows in support of this motion:

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to (a) enter into an amendment (the "DIP Term Amendment"), pursuant to the terms and conditions set forth in the term sheet (the "Additional DIP Term Sheet") attached hereto as **Exhibit 1** to **Exhibit A**, to that certain *Senior Secured Debtor-in-Possession Term Loan Credit Agreement* (as may be amended, restated, supplemented, waived, or otherwise

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Blackhawk Mining LLC (5600); Blackhawk Coal Sales, LLC (9456); Blackhawk Land and Resources, LLC (7839); Blackhawk River Logistics, LLC (3388); Blue Creek Mining, LLC (2427); Blue Diamond Mining, LLC (3488); Eagle Shield, LLC (6721); FCDC Coal, Inc. (6188); Guyandotte Mining, LLC (4882); Hampden Coal, LLC (8241); Kanawha Eagle Mining, LLC (0586); Logan & Kanawha, LLC (3178); Panther Creek Mining, LLC (0627); Pine Branch Land, LLC (9758); Pine Branch Mining, LLC (9681); Pine Branch Resources, LLC (9758); Redhawk Mining, LLC (0852); Rockwell Mining, LLC (3874); Spruce Pine Land Company (2254); Spurlock Mining, LLC (2899); Triad Mining, LLC (7713); and Triad Trucking, LLC (6112). The location of the Debtors' service address in these chapter 11 cases is 3228 Summit Square Place, Suite 180, Lexington, Kentucky 40509.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms herein, the Term DIP Credit Agreement, or the proposed order attached hereto as **Exhibit A**. as applicable.

modified from time to time, the "Term DIP Credit Agreement"), (b) granting related liens and conferring superpriority administrative expense status, and (c) granting related relief.[3]

### Jurisdiction and Venue

2.   The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.   The bases for the relief requested herein are sections 105, 363(b), 364(c), 364(d), and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 4001(b), (c), and (d), 6004, and 9014, and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

### Background

**I.   Negotiations Regarding the DIP Term Amendment.**

5.   When the Debtors initially entered into the DIP facilities, the Debtors sized their financing needs based on an expected emergence from bankruptcy by the end of August 2019.

---

[3] The facts and circumstances supporting this motion and the relief requested herein can be found in the declaration of Kevin Nystrom, Managing Director at AlixPartners LLP and Chief Restructuring Officer of the Debtors (the "Nystrom Declaration") and the declaration of Marc Puntus, Partner and co-head of the Debt Advisory and Restructuring Group of Centerview Partners LLC (the "Puntus Declaration"), each filed contemporaneously herewith.

Due to, among other things, the time required to procure necessary regulatory approvals as a prerequisite to emergence, this initial emergence timeline expanded. During this period, the Debtors further evaluated their financial and operational circumstances based on additional performance information.

6. By mid-September 2019, it had become clear that, due to a confluence of unforeseen market headwinds, the Debtors would not be able to emerge under the current plan of reorganization [Docket No. 231] (the "Plan") and that incremental financing would be required to bridge to emergence and fund go-forward operations. As a result, the Debtors and their advisors engaged with their lenders to modify the Plan to reduce the amount of take-back debt under the Plan and obtain incremental DIP financing to fund these cases and provide incremental liquidity upon emergence.[4] This process included four amendments to the DIP term loan facility (the "DIP Term Loan") on September 12, 2019, September 20, 2019, September 27, 2019, and October 2, 2019, respectively, extending the milestone for emergence through and including November 15, 2019.[5]

7. The DIP Term Amendment, among other things, provides the Debtors with an additional $35 million in DIP financing (the "Additional Loans") on the terms (including with respect to fees) described in section III below.[6] All other terms of the Term DIP Credit Agreement

---

[4] The Debtors have also previously amended the credit agreement for the DIP ABL Facility four times, including to extend certain milestones, and expect to enter into a further amendment to the DIP ABL Facility that will extend the maturity date and include a non-material fee to be paid in connection therewith. For the avoidance of doubt, the Debtors do not seek approval of any such amendment pursuant to this motion but instead are seeking that amendment as permitted and authorized by paragraph 8(b)(ii) of the Final DIP Order.

[5] The Debtors also made corresponding amendments to their restructuring support agreement.

[6] The maturity date for the Additional Loans is the same as the maturity date for the remainder of the term DIP facility arising under the DIP Term Credit Agreement. Notably, however, the maturity date for the exit term loans into which the Additional Loans will convert (the "Specified Exit Term Loans") will be earlier than the maturity date for the other term loans under the Debtors' take-back term loan exit facility. Specifically, the Specified Exit

that are not addressed in the DIP Term Amendment remain unchanged by the DIP Term Amendment.

8.  In conjunction with the DIP Term Amendment, the Debtors and their lenders also agreed to modifications to the Plan, and the Debtors have filed an amended plan of reorganization contemporaneously herewith (the "Amended Plan"). Support for the Amended Plan is documented in an amendment to the Debtors' restructuring support agreement (the "Amended RSA"), which enjoys the support of the Debtors' prepetition lenders that collectively hold over 90% of all claims arising from the prepetition first and second lien term loans, and the substantial majority of the Debtors' term DIP lenders.  The Debtors also have filed a motion to approve the modifications in the Amended Plan contemporaneously herewith.  As detailed further therein, the Amended Plan reduces the Debtors' post-emergence funded debt from approximately $465 million to $175 million, equitizes the $100 million rolled up portion of the DIP Term Loan, and reallocates the post-emergence equity (the "New Common Stock") by distributing 90% of the New Common Stock to holders of claims arising under the rolled up portion of the DIP term loan facility and the prepetition first lien term loans and 10% of New Common Stock to holders of claims arising from the prepetition second lien term loans.[7]  Although the plan treatment has not changed for most stakeholders, the modifications materially affect the recoveries of the Debtors' prepetition first and second lien lenders as well as the DIP term lenders, and requires Court approval, which will further extend the Debtors' time in chapter 11.  The incremental liquidity requested herein will enable the Debtors to continue operations without interruption while bridging to confirmation of the

---

Term Loans will mature 120 days following the closing date of the DIP Term Amendment, subject to up to three extensions under certain circumstances.

[7]  The summary of the Amended Plan contained in this paragraph is qualified in their entirety by the provisions of the Amended Plan. To the extent anything in this paragraph or motion is inconsistent with such documents, the terms of the Amended Plan shall control.

KE 64304959

Amended Plan and emergence from chapter 11. The Debtors therefore believe the additional liquidity and runway provided by the DIP Term Amendment is necessary and in the best interest of their estates.

9. Moreover, the DIP Term Amendment is necessary to continue ordinary course operations, which not only preserves revenue generation, but also sends a strong message to the Debtors' critical vendors, customers, and employees. Absent adequate liquidity, critical vendors may shorten trade terms, causing further liquidity constraints. The additional liquidity contemplated by the DIP Term Amendment is also necessary to ensuring the Debtors are able to continue to make payments to the lessors under the Debtors' unexpired coal leases, Further, the DIP Term Amendment is critical to demonstrate to customers that the reorganized Debtors will have adequate liquidity to reliably deliver coal. Additionally, an adequately capitalized company is crucial to retaining skilled employees.

## II.   The Existing DIP Facilities.

10. On July 19, 2019, the Debtors filed a motion [Docket No. 18] seeking approval of their two debtor-in-possession financing facilities, including a $90 million asset-based revolving facility and a $150 million dual-draw secured term loan facility, which term loan facility included $50 million of new money and the roll up of $100 million of the prepetition first lien term loan. On July 23, 2019, the Court entered an order [Docket No. 81] approving the DIP facilities on an interim basis. The Debtors entered into the DIP facilities on July 23, 2019, at which time the Debtors commenced rolling up the obligations under their prepetition ABL facility and drew $35 million from the term DIP facility and rolled up $70 million of the obligations under their prepetition first lien term loan. On August 13, 2019, the Court entered the final order approving the DIP facilities [Docket No. 185] (the "Final DIP Order"), after which the remainder of the prepetition ABL facility was rolled up on a final basis. Shortly thereafter, the Debtors drew the

remaining $15 million in new money provided by the term DIP facility, and rolled up an additional $30 million of the obligations under the prepetition first lien term loan.

11. The Final DIP Order does not allow the Debtors and the term DIP lenders to amend, modify, or supplement the Term DIP Credit Agreement to increase the aggregate commitments, change the rate of interest payable, or effect any other material amendments without Court approval. *See* Final DIP Order ¶ 8(b)(ii). As a result, pursuant to this motion the Debtors respectfully request the Court approve the DIP Term Amendment.

**III.    Overview of the DIP Term Amendment.**

12. In accordance with the Bankruptcy Rules 4001(b), (c), and (d) and Local Rule 4001-2(a), the following table summarizes the principal terms of the DIP Term Amendment:[8]

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| **Borrower**<br>Bankruptcy Rule 4001(c)(1)(B) | Blackhawk Mining LLC<br><br>*See* Additional Financing Term Sheet, "Borrower" |
| **Guarantors**<br>Bankruptcy Rule 4001(c)(1)(B) | Blue Diamond Mining, LLC<br>Triad Mining, LLC<br>Triad Trucking, LLC<br>Hampden Coal, LLC<br>Logan & Kanawha, LLC<br>Spurlock Mining, LLC<br>Redhawk Mining, LLC<br>Spruce Pine Land Company<br>Pine Branch Mining, LLC<br>Pine Branch Resources, LLC<br>Pine Branch Land, LLC<br>FCDC Coal, Inc.<br>Eagle Shield, LLC<br>Blackhawk Coal Sales, LLC<br>Blackhawk Land and Resources, LLC<br>Blue Creek Mining, LLC<br>Panther Creek Mining, LLC |

---

[8] The summaries contained in this motion are qualified in their entirety by the provisions of the documents referenced. To the extent anything in this motion is inconsistent with such documents, the terms of the applicable documents shall control. Capitalized terms used in the following summary chart but not otherwise defined have the meanings ascribed to them in the DIP Term Amendment, the Final DIP Order, or the proposed order attached hereto as **Exhibit A**, as applicable. To the extent that any terms of the Term DIP Credit Agreement are not contained in this summary, those terms remain unchanged by the DIP Term Amendment.

KE 64304959

| Bankruptcy Code | Summary of Material Terms |
|---|---|
|  | Rockwell Mining, LLC<br>Guyandotte Mining, LLC<br>Kanawha Eagle Mining, LLC<br>Blackhawk River Logistics, LLC<br><br>*See* Additional Financing Term Sheet, "Guarantors" |
| **Term DIP Lenders**<br>Bankruptcy Rule 4001(c)(1)(B) | Funds managed or advised by Knighthead Capital Management, LLC and the other Existing New Money DIP Term Lenders (as defined in the Additional Financing Term Sheet) or their designated affiliates that choose to participate in the Additional Loans (collectively, the "<u>Additional DIP Term Lenders</u>").<br><br>*See* Additional Financing Term Sheet, "Additional DIP Term Lenders" |
| **Term DIP Facility Size**<br>Bankruptcy Rule 4001(c)(1)(B),<br>Local Rule 4001-2(a)(ii) | Term DIP Facility amount plus $35 million in the form of the Additional Loans to be available in a single draw.<br><br>*See* Additional Financing Term Sheet, "Amount & Type" |
| **Expenses and Fees**<br>Bankruptcy Rule 4001(c)(1)(B)<br>Local Rule 4001-2(a)(ii) | Same as in the Existing DIP Term Loan Credit Agreement.<br><br>*See* Additional Financing Term Sheet, "Fees and Expenses; Indemnification" |
| **Interest Rates**<br>Bankruptcy Rule 4001(c)(1)(B)<br>Local Rule 4001-2(a)(ii) | Loans shall bear interest at the sum of the LIBOR Rate *plus* 9.50%, with a LIBOR floor of 0.50%.<br><br>*See* Additional Financing Term Sheet, "Interest Rate" |
| **Fees**<br>Bankruptcy Rule 4001(c)(1)(B)<br>Local Rule 4001-2(a)(ii) | *Original Issue Discount*: 1.00% of the aggregate principal amount of the Additional New Money DIP Term Loan Commitments, which shall be due and payable on the funding date thereof to the Additional DIP Term Lenders in the form of original issue discount.<br><br>*Exit Fee*: 2.50% of the aggregate principal amount of the Additional New Money DIP Term Loans, which shall be due and payable in cash on the Termination Date or, in the case of Additional New Money DIP Term Loans prepaid in whole or in part prior to the Termination Date, on the date of such prepayment.<br><br>*Backstop Fee*: 3.00% of the aggregate equity interests of the reorganized Borrower otherwise allocable in respect of the Roll-Up Loans and the outstanding Pre-Petition First Lien Term Loans held by the Existing New Money DIP Term Lenders who do not elect to participate, or designate an affiliate to participate on their behalf, in the Additional Loans (each a "<u>Non-Participating Lender</u>") pursuant to the Acceptable Plan of Reorganization, shall be reallocated from each Non-Participating Lender to Knighthead on the effective date of the Acceptable Plan of Reorganization.<br><br>*See* Additional Financing Term Sheet, "Fees" |

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| **Repayment Features**<br>Local Rule 4001-2(a)(i)(E) | Mandatory Repayments.  Same as for the existing Term DIP Loans, except that with respect to the net proceeds of any sale of assets (including, for the avoidance of doubt, the Specified Owned Assets (as defined in the Additional Financing Term Sheet)), such proceeds shall be applied, *first*, to repayment of the Additional Loans until repaid in full and *second*, to repayment of the Existing DIP Term Loans; *provided* that, with respect to the Specified Sale Proceeds (as defined in the Additional Financing Term Sheet), the Company shall, subject to a pro forma minimum liquidity test to be set forth in the DIP Term Amendment that gives effect to the portion of the Specified Sale Proceeds retained by the Company, promptly (and in any event within a time period to be set forth in the DIP Term Amendment) following receipt thereof, apply the Specified Sale Proceeds to prepay the Additional New Money DIP Term Loans in an amount up to 75% of the aggregate principal amount of the Additional New Money DIP Term Loans (with the balance to be retained by the Company).<br><br>Voluntary Prepayments.  Same as for existing Term DIP Loans, except that any voluntary prepayment shall be applied, *first*, to repayment of the Additional Loans until repaid in full and *second*, to repayment of the Existing DIP Term Loans.<br><br>*See* Additional Financing Term Sheet, "Mandatory Prepayments," "Voluntary Prepayments" |
| **Liens and Priorities**<br>Bankruptcy Rule 4001(c)(1)(B)(i)<br><br>Local Rule 4001-2(a)(i)(D) and (G), 4001-2(a)(4) | Same as for the Existing New Money DIP Term Loans and *pari passu* with the liens securing the Existing New Money DIP Term Loans, except that (i) the liens on the Specified Owned Assets securing the Additional New Money DIP Term Loans shall be senior in priority to the liens thereon securing the Existing DIP Term Loans and (ii) the Additional New Money DIP Term Loans shall be placed ahead of the Existing DIP Term Loans in the default waterfall provisions; *provided* that clauses (i) and (ii) shall be subject to obtaining the consent of each affected Existing DIP Term Lender.<br><br>In the event that any affected Existing DIP Term Lender does not consent to the DIP Term Amendment (any such Existing DIP Term Lender, a "Non-Consenting Existing DIP Term Lender"; and the consenting Existing DIP Term Lenders, the "Consenting Existing DIP Term Lenders"), (i) the liens on the Specified Owned Assets securing the Additional New Money DIP Term Loans will be *pari passu* with the liens thereon securing the Existing New Money DIP Term Loans of the Non-Consenting Existing DIP Term Lenders, but, for the avoidance of doubt, will be senior in priority to the liens thereon securing the Existing New Money DIP Term Loans of the Consenting Existing DIP Term Lenders and (ii) the Additional New Money DIP Term Loans shall be *pari passu* with the Existing New Money DIP Term Loans of the Non-Consenting Existing DIP Term Lenders in the default waterfall provisions, but, for the avoidance of doubt, will be placed head of the Existing New Money DIP Term Loans of the Consenting Existing DIP Term Lenders in the default waterfall provisions.<br><br>*See* Additional Financing Term Sheet, "Priority Under the DIP Term Facility" |
| **Milestones**<br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | Same as in the Existing DIP Term Loan Credit Agreement.<br><br>*See* Additional Financing Term Sheet, "Milestones" |
| **Maturity Date** | Same as in the Existing DIP Term Loan Credit Agreement. |

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| Bankruptcy Rule 4001(c)(1)(B) | *See* Additional Financing Term Sheet, "Termination Date" |
| Local Rule 4001-2(a)(ii) | |

## Basis for Relief

**I.    Entry into the DIP Term Amendment and Payment of the DIP Term Amendment Fees and Expenses is in the Debtors' Best Interests.**

13.    The proposed DIP Term Amendment is in the best interests of the Debtors and their estates, and is essential to the completion of these chapter 11 cases. The Debtors are working diligently to bring these chapter 11 cases to a successful conclusion. The DIP Term Amendment will ensure that the Debtors have adequate liquidity and runway for the ongoing administration of these cases.

14.    The increased financing provided by the DIP Term Amendment is the best and only financing available under the circumstances. The Debtors' DIP ABL lender consents to these terms and the ability to provide the Additional Loans is available to all of the Debtors' current DIP term lenders on a pro rata basis, and thus no party will be prejudiced by the DIP Term Amendment or the relief requested herein. Indeed, the DIP Term Amendment benefits the Debtors' other stakeholders by facilitating the preservation of a value-maximizing deal structure that continues to provide for the unimpaired treatment of the general unsecured creditors. Accordingly, under these circumstances, the Debtors respectfully submit that approval of the DIP Term Amendment is in the best interests of the Debtors and all other interested parties.

15.    Section 364 of the Bankruptcy Code governs a debtor's ability to secure postpetition financing. *See* 11 U.S.C. § 364. The Court has already approved the Term DIP Facility and determined that it satisfies the requirements of sections 364(c) and (d) of the Bankruptcy Code. The DIP Term Amendment increases the size of the Term DIP Facility to

provide the Debtors with the runway needed to successfully emerge from chapter 11. Increasing the amount of the Term DIP Facility with the current Term DIP Lenders avoids the cost, expense, and disruption of seeking a replacement facility. These modifications have been accepted by the Term DIP Lenders and inure to the benefit of the Debtors and their estates. Accordingly, the DIP Term Amendment satisfies the requirements of sections 364 of the Bankruptcy Code.

16. In a sound exercise of their business judgment, the Debtors have determined that continuing the existing DIP facilities would minimize material disruptions and thereby maximize value for their estates, especially in light of the fact that the Court has already approved the terms of the existing DIP facilities and use of cash collateral (which has previously been consented to by parties in interest in these chapter 11 cases), and the Debtors' need for additional liquidity to bridge them through emergence and fund go-forward operations. *See In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party in interest."). As described above, the Debtors project that they will need an additional $35 million in available liquidity to continue to operate the business in the ordinary course and pay administrative costs through emergence from chapter 11.

17. Moreover, in connection with agreeing to provide the DIP Term Amendment, the Term DIP Lenders are requiring payment of the fees and expenses to be incurred in connection with the DIP Term Amendment. These fees and expenses are the product of arm's-length

negotiations between the Debtors and the Term DIP Lenders, and the Debtors submit such fees and expenses are reasonable in light of the circumstances. For these reasons, the Debtors have determined that entry into the DIP Term Amendment and payment of these fees and expenses is reasonable and justifiable, particularly in light of the benefits that will accrue to the Debtors, their estates, and their creditors. Accordingly, the Debtors respectfully request that the Court grant this motion in all respects and authorize entry into the DIP Term Amendment and payment of the DIP Term Amendment fees and expenses.

**II.     Waiver of Stay Period Under Bankruptcy Rule 6004(h) Is Appropriate.**

18.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Debtors submit that there is no reason to delay the effectiveness of the order approving this motion. The Upsize Facility is immediately necessary to provide the Debtors access to much-needed funds and time to emerge as a well-capitalized company. Accordingly, waiver of the 14-day stay period under Bankruptcy Rule 6004(h) is appropriate.

### Notice

19.     The Debtors have provided notice of this motion to the following parties or their respective counsel: (a) the office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' prepetition asset-based revolving credit facility; (d) the administrative agent under the Debtors' Prepetition First Lien Term Loan Credit Facility; (e) the administrative agent under the Debtors' prepetition second lien term loan facility; (f) counsel to the Crossover Group; (g) counsel to the First Lien Group; (h) the administrative agent under the Debtors' debtor in possession term loan financing facility; (i) the administrative agent under the Debtors' debtor in possession asset-based revolving financing facility; (j) the Environmental

Protection Agency and similar state environmental agencies for states in which the Debtors operate; (k) the office of the attorneys general for the states in which the Debtors operate; (l) the United States Attorney's Office for the District of Delaware; (m) the Internal Revenue Service; (n) the Term DIP Lenders; (o) MidCap; (p) counsel to lessors under the Debtors' unexpired leases; and (q) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### **No Prior Request**

20.    No prior request for the relief sought in this motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:   October 3, 2019
Wilmington, Delaware

| | |
|---|---|
| /s/ *L. Katherine Good* | |
| Christopher M. Samis (DE 4909) | James H.M. Sprayregen, P.C. |
| L. Katherine Good (DE 5101) | Ross M. Kwasteniet, P.C. (admitted *pro hac vice*) |
| **POTTER ANDERSON CORROON LLP** | Joseph M. Graham (admitted *pro hac vice*) |
| 1313 North Market Street, 6th Floor | **KIRKLAND & ELLIS LLP** |
| P.O. Box 951 | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Wilmington, Delaware 19801-6108 | 300 North LaSalle |
| Telephone:    (302) 984-6000 | Chicago, Illinois 60654 |
| Facsimile:    (302) 658-1192 | Telephone:    (312) 862-2000 |
| Email:    csamis@potteranderson.com | Facsimile:    (312) 862-2200 |
|          kgood@potteranderson.com | Email:    james.sprayregen@kirkland.com |
| | ross.kwasteniet@kirkland.com |
| *Counsel to the Debtors and Debtors in Possession* | joe.graham@kirkland.com |
| | - and - |
| | Stephen E. Hessler, P.C. (admitted *pro hac vice*) |
| | **KIRKLAND & ELLIS LLP** |
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| | 601 Lexington Avenue |
| | New York, New York 10022 |
| | Telephone:    (212) 446-4800 |
| | Facsimile:    (212) 446-4900 |
| | Email:    stephen.hessler@kirkland.com |
| | *Counsel to the Debtors and Debtors in Possession* |

KE 64304959