## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BLACKHAWK MINING LLC, *et al.*,[1] | ) Case No. 19-11595 (LSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## (A) APPROVING THE DEBTORS' FIRST AMENDED
## JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION,
## (B) APPROVING THE FORM OF NOTICE AND SCHEDULE OF DATES AND
## DEADLINES RELATING THERETO, AND (C) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion:[2]

### Introduction

1.      The Debtors seek to implement modifications to their confirmed chapter 11 plan of

reorganization [Docket No. 231] (the "Plan") that, once approved, will facilitate the Debtors'

emergence from chapter 11 and, significantly, will not alter the treatment of any non-consenting

creditor classes.   These modifications are responsive to changed circumstances—including a

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include:  Blackhawk Mining LLC (5600); Blackhawk Coal Sales, LLC (9456); Blackhawk Land and Resources, LLC (7839); Blackhawk River Logistics, LLC (3388); Blue Creek Mining, LLC (2427); Blue Diamond Mining, LLC (3488); Eagle Shield, LLC (6721); FCDC Coal, Inc. (6188); Guyandotte Mining, LLC (4882); Hampden Coal, LLC (8241); Kanawha Eagle Mining, LLC (0586); Logan & Kanawha, LLC (3178); Panther Creek Mining, LLC (0627); Pine Branch Land, LLC (9661); Pine Branch Mining, LLC (9681); Pine Branch Resources, LLC (9758); Redhawk Mining, LLC (0852); Rockwell Mining, LLC (3874); Spruce Pine Land Company (2254); Spurlock Mining, LLC (2899); Triad Mining, LLC (7713); and Triad Trucking, LLC (6112).  The location of the Debtors' service address in these chapter 11 cases is 3228 Summit Square Place, Suite 180, Lexington, Kentucky 40509.

[2]  Capitalized terms used but not defined in this motion shall have the meanings ascribed to them in the *Debtors' First Amended Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 278] (the "Amended Plan"). The facts and circumstances supporting this motion and the relief requested herein can be found in the declaration of Kevin Nystrom, Managing Director at AlixPartners LLP and Chief Restructuring Officer of the Debtors and the declaration of Marc Puntus, Partner and co-head of the Debt Advisory and Restructuring Group of Centerview Partners LLC, each filed contemporaneously herewith.

substantial decline in metallurgical and thermal coal pricing over the past several months, decreased demand for certain of the Debtors' production, and a corresponding reassessment by the Debtors of their liquidity needs and the appropriate level of debt for the business going forward. The modifications reflect agreement between the Debtors and supermajorities of their DIP term lenders, prepetition first lien term lenders, and prepetition second lien term lenders. The Amended Plan provides for:[3]

- the issuance of first lien term loan take-back debt (the "New First Lien Loan") distributed in satisfaction of $85 million new money DIP funding, the same treatment as under the Plan;

- the equitization of the $100 million in DIP roll-up claims in exchange for 21.5% of the reorganized equity (the "New Common Stock"), which modifies the treatment for the DIP roll-up claims under the Plan by providing equity rather than take-back debt;

- the equitization of all prepetition first lien term loan claims in exchange for 68.5% of the New Common Stock, which modifies the treatment of the first lien term loan claims under the Plan by eliminating take back debt that would have been issued on account of such claims and reallocating equity among the lender classes; and

- the equitization of all prepetition second lien term loan claims in exchange for 10% of the New Common Stock, which modifies the treatment of the second lien term loan claims under the Plan by reallocating equity among the lender classes.

2.    The net effect of these changes is to provide the Debtors with $35 million of additional liquidity and to eliminate approximately $290 million in take-back debt as compared to the original Plan. Importantly, however, these modifications do not change the treatment of other creditors, and general unsecured creditors continue to ride through these chapter 11 cases unimpaired. Other than as described above, the Amended Plan does not change the Plan. The

---

[3]    Any summary of any terms of the Amended Plan contained in this motion is qualified in its entirety by reference to the provisions of the Amended Plan. The Amended Plan will control in the event of any inconsistency between this motion and the Amended Plan.

Debtors also will comply with the terms of this Court's confirmation order [Docket No. 251] (the "Confirmation Order"), including negotiated resolutions of issues that were included in that Confirmation Order.

3.      The Amended Plan modifications (the "Plan Modifications") are the product of extensive good-faith, arm's-length negotiations among the Debtors and their ad hoc lender groups: the crossover lender group and the first lien lender group, who collectively hold over 97% of the claims under the DIP term loan facility and over 90% of the claims under each of the prepetition first lien and second lien term loan facilities.  These negotiations resulted in the execution of an amendment to the restructuring support agreement (the "Amended RSA"), which secures the support for the Plan Modifications necessary to carry each voting class under the Plan.  Pursuant to the Amended RSA, the Plan Modifications are supported by prepetition lenders that collectively hold over 90% of all First Lien Term Loan Claims and 90% of all Second Lien Term Loan Claims, as well by the substantial majority of the Debtors' term DIP lenders.

4.      Approval of the Plan Modifications will facilitate the Debtors' successful reorganization and position them for future success.  The Debtors therefore seek approval of a notice to send to all parties in interest, including the holders of claims in Class 3 (First Lien Term Loan Claims) and Class 4 (Second Lien Term Loan Claims), the only two Classes of claims affected by the Plan Modifications and entitled to vote on the Amended Plan.  The Debtors also request a hearing seeking approval of the Plan Modifications after all parties in interest receive notice of the Amended Plan and an opportunity to object pursuant to the procedures proposed herein (or as otherwise modified by this Court).

5.      For the reasons set forth above and herein, the Debtors submit that (a) the Notice of Plan Modifications (as defined herein) satisfies section 1127(c) of the Bankruptcy Code, (b) the

3

Modification Schedule (as defined herein) is appropriate under section 1127(d) of the Bankruptcy Code, (c) the Vote Modification Form (as defined herein) is appropriate under the applicable provisions of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), and (d) the Plan Modifications comport with section 1127(b) of the Bankruptcy Code.  Accordingly, the Debtors respectfully request the Court grant the relief requested herein.

### Relief Requested

6.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) approving the proposed form of notice of the Plan Modifications, which is attached as **Exhibit 1** to **Exhibit A** hereto (the "<u>Notice of Plan Modifications</u>"), (b) approving the schedule of dates and deadlines set forth below, (c) approving the proposed form of vote modification form attached as **Exhibit 2** to **Exhibit A** hereto (the "<u>Vote Modification Form</u>"), and (d) granting related relief.  Moreover, the Debtors request a hearing seeking approval of the Amended Plan as set forth below.

7.      In connection with the foregoing, the Debtors request that the Court approve the following schedule of proposed dates and deadlines (the "<u>Modification Schedule</u>"):

| Event | Date |
| --- | --- |
| Record Date[4] | The date of the hearing to consider approval of this motion |
| Deadline to Distribute the Notice of Modifications and Vote Modification Form | One business day after entry of an order approving the relief requested in this motion |
| Deadline for holders of Class 3 and Class 4 Claims to change prior vote on Plan with respect to such | October 18, 2019, at 4:00 p.m., prevailing Eastern Time |

---

[4]     The record date is the date for determining which holders of Class 3 Claims and Class 4 Claims are entitled to change their prior vote on the Plan with respect to such Claims in relation to the Amended Plan.

KE 64400850

| Event | Date |
|---|---|
| Claims and for parties to object to the Amended Plan (the "Objection Deadline") | |
| Filing of Amended Certification of Votes on the Plan | October 21, 2019, at 9:00 a.m., prevailing Eastern Time |
| Hearing on Confirmation of Amended Plan | October 21, 2019, or as soon thereafter as is reasonably practicable based on the Court's availability |

### Jurisdiction and Venue

8.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as February 29, 2012.  The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008 and Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.      The bases for the relief requested herein are sections 105(a), 1127(b), 1127(c), and 1127(d) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 2002 and 9006(c), and Local Rule 9006-1(e).

### Background

**I.      Post-Confirmation Developments.**

11.      On July 19, 2019 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On August 29, 2019, the Court entered the Confirmation Order.  Following entry of the Confirmation Order, the Debtors worked diligently

5

to satisfy the various prerequisites for the Plan's effectiveness, including obtaining all regulatory approvals necessary to implement and effectuate the Plan.[5]

12.    By mid-September, the Debtors realized that, due to a confluence of unforeseen market headwinds, including a substantial drop in metallurgical and thermal coal prices and limited coal spot market activity, they would need a further infusion of new capital to fund emergence costs and to fund operations.

13.    Specifically, since July, the price of thermal coal has fallen by approximately 10%, while the price of metallurgical coal has fallen by approximately 20%.  As the following chart demonstrates, this is a substantial decline based on the Debtors' budget estimates:



*Recent Coal Price Volatility*

---

[5]    Plan, Art. IX.A.2 (providing that it is a condition precedent to the Plan's effectiveness that "the Debtors shall have obtained all . . .  regulatory approvals . . . that are necessary to implement and effectuate the Plan").

14.     In light of this unexpected decline, the Debtors implemented a series of operational changes to limit excess inventory build and cash spend to mitigate the impact of adverse coal market conditions.  These measures primarily involved changes to mine operating schedules, which can be reversed if the coal markets improve.  Although the Debtors' operational changes should mitigate the cash impact of this decline, it is still lower than previously expected.

15.     The adverse market conditions led to a shortfall of operating cash receipts for the period from the filing date to September 27, 2019, compared to the original DIP budget of $24.0 million.   Additionally, the Debtors' current forecast of cash receipts from September 28, 2019, to October 11, 2019, reflects an additional shortfall of $22.6 million during the same period in the original DIP budget.  Moreover, the plan was to emerge from bankruptcy by the end of August 2019, and this lengthened process also has resulted in incremental professional fees and U.S. Trustee fees.

16.     The Debtors have made progress in reducing operating cash expenditures but not enough to offset the combination of the shortfall in operating cash receipts and increased cost of the restructuring process.  Actual and currently projected operating cash disbursements are lower for the period from the petition date to October 11, 2019, compared to the original DIP budget by $4.0 million.

17.     Based on these changed circumstances, the Debtors promptly engaged their ad hoc lender groups on ways to address the Debtors' near-term need for liquidity while still preserving the overall Plan construct.[6]  The parties also engaged in discussions regarding modifications to the

---

[6]     The Debtors and the DIP lenders made corresponding amendments to the DIP ABL Agreement and the DIP Term Agreement.

Plan to further reduce the Debtors' go-forward leverage.[7]  This included multiple in-person and telephonic meetings between the Debtors and their creditors, as well as among the creditors themselves, and three amendments to the RSA on September 12, 2019, September 20, 2019, and September 27, 2019, respectively, extending the milestone for Plan effectiveness through and including October 2, 2019.  On October 2, 2019, following good-faith, arm's-length negotiations among the Debtors and the ad hoc lender groups, the parties reached agreement on an amendment to their DIP term loan facility providing for an additional $35 million of new money and the Amended Plan.  The support for the Amended Plan is documented in the Amended RSA.

## II.    The DIP Amendment and the Amended Plan.

18.    Under the proposed DIP amendment, the substantial majority of the Debtors' existing DIP term lenders have committed to provide the Debtors with $35 million in additional new money DIP term loans, pursuant to the terms and conditions of the DIP Term Agreement.[8]

19.    The Amended Plan incorporates modified take-back debt and equitization terms that, together, will reduce the Reorganized Debtors' go-forward leverage from approximately $465 million to approximately $175 million.  Under the Amended Plan, the Debtors' DIP term lenders will receive $85 million of first lien take-back debt under the New First Lien Loan for the new money DIP term loans provided to the Debtors during these chapter 11 cases, and the $100 million roll-up portion of the DIP term loan facility will be equitized.  The Amended Plan also reallocates distributions of equity in the reorganized company.  It provides that holders of roll-up DIP claims will receive 21.5% of the equity in the reorganized company, holders of

---

[7]    In connection with this process, the Debtors provided the creditors and their advisors with an updated near-team liquidity forecast that showed lower-than-expected receipts and a need for more cash.  Apart from this updated forecast, the creditors did not receive any new financial information from the Debtors.

[8]    Further detail about the DIP amendment is set forth in a separate motion seeking approval of that amendment, filed contemporaneously herewith.

prepetition first lien term loan claims will receive 68.5% of such equity, and that holders of prepetition second lien term loan claims will receive 10% of such equity.

20. The below chart summarizes differences between the Plan and the Amended Plan with respect to the treatment of Roll-Up DIP Claims, Class 3 First Lien Term Loan Claims, and Class 4 Second Lien Term Loan Claims.

| Type of Claim | Treatment Under Plan | Treatment Under Amended Plan |
|---|---|---|
| DIP Roll-Up Claims | New First Lien Loan in aggregate amount of $100 million | 21.5% of New Common Stock |
| Class 3 First Lien Term Loan Claims | 71% of New Common Stock and $225 million in aggregate amount of New First Lien Loan | 68.5% of New Common Stock |
| Class 4 Second Lien Term Loan Claims | 29% of New Common Stock | 10% of New Common Stock |

21. The Amended Plan and DIP amendment also provide for a backstop fee with respect to the additional $35 million new money DIP financing. Specifically, if a lender entitled to participate in that $35 million new money DIP financing does not do so, the backstop commitment party will receive 3.0% of the aggregate New Common Stock that the non-participating lender otherwise would have received on account of its DIP Roll-Up Claims and First Lien Term Loan Claims.

**Basis for Relief**

22. The Plan Modifications are appropriate under section 1127 of the Bankruptcy Code, which governs modifications of a chapter 11 plan. Section 1127(b) provides that the plan proponent "may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan." Section 1127(c) requires the plan proponent to comply with the "adequate information" requirements set forth in section 1125 of the Bankruptcy Code with respect to proposed plan modifications. Section 1127(d) further states that "any holder of

a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection."

23.     Given this statutory regime, by this motion, the Debtors first seek approval of the Notice of Modifications to provide parties with adequate information with respect to the Plan Modifications.  The Debtors similarly seek that the Court establish an Objection Deadline and a deadline by which parties may change their votes to accept the plan, and set a hearing to consider approval of the Plan Modifications.  This requested process complies with both the statute and the case law interpreting section 1127 of the Bankruptcy Code.  *See In re FCX, Inc.*, 853 F.2d 1149, 1156 (4th Cir. 1988) ("[T]he modification requirements provide for (1) notice of a proposed plan modification, (2) notice of the information necessary for a creditor to assess the nature and impact of the modification, (3) a hearing on the propriety of the proposed modification, (4) an opportunity for an impaired creditor to object to the modification, and (5) an assessment by the bankruptcy court that the modified plan meets the requirements of § 1129.").

**I.     The Notice of Modifications Satisfies Section 1127(c) of the Bankruptcy Code.**

24.     Section 1127(c) of the Bankruptcy Code requires the proponent of a plan modification to comply with the "adequate information" requirements set forth in section 1125 of the Bankruptcy Code with respect to the proposed modification.  Thus, under section 1127(c), if a modification would "materially and adversely impact[] parties who previously voted for the plan," those parties must receive "adequate information" regarding the modified plan—and an

opportunity to change their prior vote. *See In re Am. Solar Corp.*, 90 B.R. 808, 823-24 (Bankr. W.D. Tex. 1988).[9] "Adequate information" means:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . . holders of impaired claims and interests that voted to accept the plan, but would be likely to reconsider their acceptance had they known of the modification before so voting.

11 U.S.C. § 1125(a)(1). What constitutes "adequate information" is "determined by the facts and circumstances of each case." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.3d 414, 417 (3d Cir. 1988). Adequate information does not require "a valuation of the debtor or an appraisal of the debtor's assets." 11 U.S.C. § 1125(b).

25.    Here, the Court has already determined that the Debtors' disclosure statement for the Plan [Docket No. 17] (the "Disclosure Statement") contains "'adequate information' . . . with respect to the Debtors, the Plan, and the transactions contemplated therein." Confirmation Order ¶ 8. The Plan Modifications only affect the treatment of Class 3 First Lien Term Loan Claims, Class 4 Second Lien Term Loan Claims, and DIP Roll-Up Claims under the Plan. Thus, the only parties in interest who may be "materially and adversely impacted" by the Plan Modifications are holders of Class 3 Claims, Class 4 Claims, and DIP Roll-Up Claims. And, of these parties, only holders of Class 3 Claims or Class 4 Claims were entitled to vote on the Plan.[10]

---

[9]    "A modification is *material* if it so affects a creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its acceptance." *Am. Solar*, 90 B.R. at 824 (emphasis in original) (internal quotation marks and citation omitted).

[10]   The Debtors acknowledge that the Plan Modifications "materially and adversely impact" holders of Class 3 Claims or Class 4 Claims "who previously voted [those Claims to accept] the [P]lan," and thus those holders are entitled to "adequate information" regarding the Plan Modifications, the Amended Plan, and the transactions contemplated thereby. The Debtors also acknowledge that the holders of DIP Roll-Up Claims have an opportunity

26.     The Debtors submit that the Notice of Plan Modifications contains the requisite adequate information regarding these matters to enable the relevant holders to make an informed judgment about the Amended Plan, including whether to change their prior vote on the Plan in relation to the Amended Plan.  The Notice of Plan Modifications, which will be distributed to all parties in interest following the entry of an order approving the relief requested herein, provides parties with, among other things, a detailed discussion of (a) the circumstances surrounding the formulation and filing of the Amended Plan, (b) the differences between the Plan and the Amended Plan, and (c) how the Plan Modifications affect (or do not affect) treatment of particular Claims under the Amended Plan.  The Notice of Plan Modifications also directs holders of Class 3 Claims and Class 4 Claims to the Vote Modification Form, should they seek to change their prior vote on the Plan with respect to those Claims in relation to the Amended Plan, and directs holders of DIP Roll-Up Claims with information regarding objections to the Plan Modifications and the Amended Plan.

27.     While the Notice of Plan Modifications does not contain updated financial projections for the Debtors or an updated valuation analysis, the Debtors submit that the "adequate information" standard does not require such disclosure under the circumstances here. Based on the Disclosure Statement and the Notice of Plan Modifications, all holders of Class 3 Claims and Class 4 Claims will have sufficient information to form their own views of the Debtors' value and prospects going forward in an increasingly uncertain market environment.[11]  Indeed, the Debtors' DIP lenders agreed to provide the Debtors with $35 million of additional financing

---

to object to the Plan Modifications and are entitled to information with respect to the changed treatment under the Amended Plan.

[11]    The Notice of Plan Modifications also states, in bold text, that the facts and assumptions underlying the financial projections and valuation analysis attached to the Disclosure Statement are no longer accurate, and that the projections and the valuation analysis should not be relied upon.

KE 64400850

without the benefit of the Debtors' long term projections based on their sophisticated views of the market and agreement to significantly reduce the Reorganized Debtors' go-forward leverage.

28.     For the foregoing reasons, the Debtors submit that the Notice of Plan Modification satisfies the "adequate information" requirements of sections 1125 and 1127(c) of the Bankruptcy Code and should be approved.

## II.     The Modification Schedule is Appropriate Under Section 1127(d) of the Bankruptcy Code.

29.     Under section 1127(d) of the Bankruptcy Code, a creditor that votes to accept a chapter 11 plan will be deemed to accept the plan as subsequently modified unless the creditor changes its prior acceptance "within the time fixed by the court."   Although Bankruptcy Rule 2002(a)(5) normally requires 21 days' notice of approval of a proposed plan modifications, this date is subject to reduction under Bankruptcy Rule 9006(c) for "cause shown."   Local Rule 9006-1(e) further provides that a motion may be heard on less notice than as otherwise required if authorized "by order of the Court, on written motion (served on all interested parties) specifying the exigencies justifying shortened notice."

30.     The Debtors submit that there is ample cause to shorten the notice period with respect to the Plan Modifications and confirmation of the Amended Plan.  As an initial matter, the Debtors' stay in chapter 11 has been longer than anticipated, and it is critical from a business standpoint that the Debtors emerge as soon as possible to maintain the "business as usual" messaging of these chapter 11 cases.  Relatedly, the Debtors seek an expeditious emergence to limit the rising administrative costs of these chapter 11 cases.

31.     Moreover, parties in interest will not be prejudiced by the Modification Schedule's approximately two week vote modification and objection period.  ***First,*** the Plan Modifications are supported by holders of a sufficient amount and number of Class 3 Claims and Class 4 Claims

to secure each Class's acceptance of the Amended Plan under section 1126(c) of the Bankruptcy Code.  Based on the support for the Plan Modifications, an approximately two week vote modification and objection period with respect to the Amended Plan is appropriate.

32.    *Second*, the Claims in the voting classes—Class 3 First Lien Term Loan Claims and Class 4 Second Lien Term Loan Claims—are not publicly traded, which simplifies various logistical and administrative aspects of establishing and implementing a vote modification process with respect to such Claims.  And this, in turn, allows for a more efficient vote modification process with respect to such holders.  Thus, the nature of the Claims in the voting classes also supports the propriety of the Modification Schedule.

33.    *Third*, given the relatively straightforward nature of the Plan Modifications, a two week vote modification and objection period with respect to the Amended Plan appropriately balances the interests of the Debtors and other parties in interest regarding the progression of the Debtors' chapter 11 process.  The two week period is similar to the 11-day period the parties originally had to vote to accept or reject the Plan.  Moreover, the only parties affected by the modifications are highly sophisticated financial institutions, the substantial majority of which are already in discussions with the Debtors regarding the proposed modifications.  The other parties in interest are not affected by these modifications.  Thus, the Debtors respectfully submit that the Modification Schedule provides sufficient time for parties in interest to consider and process the relevant documents (including the Notice of Plan Modifications) and make an informed judgment about the Amended Plan.

34.    For the foregoing reasons, the Debtors respectfully submit that the Modification Schedule is appropriate under section 1127(d) and 9006(c) and should be approved.

## III.    The Vote Modification Form is Appropriate.

35.    The Debtors submit that the Vote Modification Form is appropriate.  ***First***, to the extent that the Vote Modification Form implicates Bankruptcy Rule 3018(c) (regarding the form of acceptance or rejection of a chapter 11 plan), it satisfies the requirements of that Bankruptcy Rule.  The Vote Modification Form (a) requires holders of Class 3 Claims and Class 4 Claims to indicate, in writing, whether they are changing their prior votes on the Plan with respect to those Claims in relation to the Amended Plan; (b) must be signed by the holder or an authorized agent of the holder to be effective; and (c) is based on the appropriate Official Form— Official Form 314, the official form of ballot for accepting or rejecting a reorganization plan— with certain modifications, as applicable, to address the particular circumstances of these chapter 11 cases.

36.    ***Second***, approval of the Vote Modification Form is appropriate under section 105(a) of the Bankruptcy Code, which authorizes the Court "to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." The Vote Modification Form is appropriate to carry out the Bankruptcy Code's provisions relating to acceptance and confirmation of a reorganization plan—the Amended Plan—and chapter 11's overall purpose:  maximizing value for stakeholders through a successful reorganization of the debtor company.  The Vote Modification Form is a key part of the process for ensuring the requirements for obtaining confirmation of the Amended Plan are satisfied, which will facilitate the Debtors' successful reorganization and position them for future success.  Accordingly, the Debtors submit that approval of the Vote Modification Form is appropriate under section 105(a) of the Bankruptcy Code.

37.    For these reasons, the Debtors respectfully submit that the Vote Modification Form is appropriate and should be approved.

KE 64400850

IV.    **The Plan Modifications Are Appropriate under Section 1127(b) of the Bankruptcy Code.**

38.    Under section 1127(b) of the Bankruptcy Code, the proponent of a confirmed reorganization plan may modify the confirmed plan "at any time . . . before substantial consummation of [the] plan," provided that the plan as modified satisfies sections 1122 and 1123 of the Bankruptcy Code.  A confirmed plan that is modified under section 1127(b) "becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of [the Bankruptcy Code]."

39.    The Plan expressly reserves the Debtors' rights to modify the Plan post-confirmation, as does the Confirmation Order.  Plan at Art. X.A; Confirmation Order ¶ 89.

A.    **The Plan Has Not Been Substantially Consummated.**

40.    The Plan has not been "substantially consummated" within the meaning of section 1101(2) of the Bankruptcy Code.  Under section 1102(2), "substantial consummation" means "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan."

41.    None of these conditions has occurred with respect to any Debtor or any estate property:  There has not been a transfer of all of substantially all of the property proposed by the Plan to be transferred, and each Debtor remains under the control of its existing board of directors (or managers).  No liabilities have been assumed by the Reorganized Debtors, nor have any distributions been made pursuant to the Plan.  Indeed, the Plan has not been substantially consummated as the Debtors have not satisfied or obtained waivers for the conditions precedent

16

to substantial consummation set forth in Article IX.A of the Plan.  Accordingly, the Plan has not

been substantially consummated with respect to any Debtor.

      **B.**      **The Circumstances Warrant the Plan Modifications.**

      42.      Courts have held that modification of a confirmed chapter 11 plan is warranted

where "unforeseen circumstances render the confirmed plan unworkable . . . ."  *In re Boylan Int'l,*

*Ltd.*, 452 B.R. 43, 50 (Bankr. S.D.N.Y. 2011) (collecting cases) (internal quotation marks and

citation omitted).  For example, modification of a confirmed plan may be warranted where a

substantial, adverse change in market conditions has rendered the confirmed plan unworkable.

*See, e.g.*, *In re Price*, 2008 WL 2001902, at *4 (Bankr. D.N.M. May 8, 2008) (indicating that a

substantial change in market conditions may support modification of a confirmed plan); *In re Gene*

*Dunavant & Son Dairy*, 75 B.R. 328, 334 (M.D. Tenn. 1987) (finding that modification of the

debtor's confirmed plan was warranted where "the debtor suffered a loss of revenues so serious as

to render the original plan unworkable," and such loss was not "the result of any culpable act or

omission" on the debtor's part).

      43.      Here, a confluence of various market headwinds, including a significant decline in

coal prices over the past several months, has led to an unforeseen increase in the Debtors'

go-forward liquidity needs and has caused the Debtors and their lenders to reconsider the

appropriate leverage for the business going forward.  Without these modifications, the confirmed

Plan would have been unworkable.  Under these circumstances, the proposed Plan Modifications

are warranted.

      44.      *First*, the Plan Modifications are responsive to the unforeseen deterioration in

market conditions.  The Plan Modifications provide for, among other things, a downsizing of the

New First Lien Loan, which will increase go-forward liquidity by reducing the amount of the

periodic debt service payments due in respect of the New First Lien Loan.  The total amount of

the New First Lien Loan has decreased from $375 million to $85 million—a drop of $290 million. This deleveraging necessitated a re-allocation of the equity in the reorganized company, with more of it going to the prepetition first lien lenders and the roll-up DIP lenders (who are no longer receiving any take-back debt under the Amended Plan).

45. *Second*, the Plan Modifications are also limited in scope.  They only affect Class 3 First Lien Term Loan Claims, Class 4 Second Lien Term Loan Claims, and DIP Roll-Up Claims (which will be equitized).  With respect to the DIP Roll-Up Claims, the Debtors either have the consent of such creditors or do not expect such creditors to object to the equitization of such claims.  Thus, the Amended Plan preserves the reasonable expectations of holders of Claims (and Interests) in other classes.

46. *Finally*, with respect to Classes 3 and 4, the Plan Modifications are supported by holders of a sufficient amount and number of Class 3 Claims and Class 4 Claims to secure each Class's acceptance of the Amended Plan under section 1126(c) of the Bankruptcy Code.

47. For these reasons, the Debtors submit that the circumstances warrant the Plan Modifications.

## C. The Plan Modifications Satisfy Section 1127(b)'s Other Requirements for Modifying a Confirmed Plan.

48. Pursuant to the Confirmation Order, the Court has already determined that the Plan satisfies the requirements of sections 1122, 1123, and 1129 of the Bankruptcy Code.  The Plan Modifications do not change the classification of claims and interests under the Plan, the treatment of claims and interests within classes, the means for implementation, the issuance of voting securities, or otherwise change the Plan in a way that implicates sections 1122 or 1123 of the Bankruptcy Code.

18

49.    The Plan Modifications also should not affect the Plan's confirmation under section 1129 of the Bankruptcy Code.  Specifically, the modifications do not alter the facts underlying this Court's findings with respect to sections 1129(a)(1)–(7), (12)–(16).  The Debtors also submit that to the extent implicated, the Amended Plan also meets the requirements under section 1129(a)(8) (or, otherwise, section 1129(b)) and sections 1129(a)(9)–(11).

50.    *First*, as with the Plan, there are certain potentially impaired classes of claims and interests under the Amended Plan that may be deemed to reject it (Classes 6, 7, and 9).  Pursuant to the Confirmation Order, this Court has determined that the Debtors met the requirements for confirmation under section 1129(b) of the Bankruptcy Code with respect to those classes.  The Plan's treatment of these classes has not changed in the Amended Plan.  Thus, the Debtors will not be able to meet the requirements under section 1129(a)(8) of the Bankruptcy Code and must rely on section 1129(b) of the Bankruptcy Code.  Section 1129(b) requires that, as required by section 1129(a)(10), there be at least one impaired accepting class of claims.  The holders of a sufficient amount and number of Class 3 Claims and Class 4 Claims to secure each Class's acceptance of the Amended Plan under section 1126(c) of the Bankruptcy Code support these modifications through the Amended RSA.  The holders of Class 3 Claims and Class 4 Claims will have the opportunity to change their votes pursuant to the Vote Modification Form.  But assuming that the holders of Class 3 Claims and Class 4 Claims do not change their votes (and such holders are required to support the Amended Plan pursuant to the Amended RSA), the Amended Plan will satisfy section 1129(a)(10) because each of Class 3 and Class 4 will accept the Amended Plan.  Moreover, the Plan Modifications do not alter the facts underlying the Court's determination that the Plan satisfies section 1129(b) with respect to Classes 6, 7, and 9, and the Debtors do not expect any change in those facts.  Accordingly, the Debtors submit that the

19

Amended Plan will satisfy section 1129(a)(10) and section 1129(b) of the Bankruptcy Code, and the Amended Plan's potential non-compliance with section 1129(a)(8) should not be an impediment to confirmation.

51.     **_Second_**, to the extent that the Plan Modifications implicate section 1129(a)(9) of the Bankruptcy Code (with respect to holders of DIP Roll-Up Claims), the Debtors expect that all holders of DIP Roll-Up Claims will consent to the equitization of those Claims.  If these holders either affirmatively consent or do not object to such treatment, the Amended Plan will satisfy section 1129(a)(9) with respect to such DIP Roll-Up Claims.

52.     **_Third_**, to the extent that the Plan Modifications implicate section 1129(a)(11) of the Bankruptcy Code, the Debtors respectfully submit that approval of the Plan Modifications, which will significantly reduce the Reorganized Debtors' leverage, will reinforce the Reorganized Debtors' ability to continue as going concerns without the need for further reorganization.  Thus, the Debtors submit that the Amended Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

53.     Accordingly, the Debtors submit that the Amended Plan satisfies the requirements of sections 1122, 1123, and 1129 of the Bankruptcy Code.

### Notice

54.     The Debtors have provided notice of this motion to the following parties or their respective counsel:  (a) the office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' prepetition asset-based revolving credit facility; (d) the administrative agent under the Debtors' prepetition first lien term loan facility; (e) the administrative agent under the Debtors' prepetition second lien term loan facility; (f) counsel to the Ad Hoc Crossover Group; (g) counsel to the First Lien Group; (h) the administrative agent under the Debtors' debtor in possession term loan financing facility; (i) the administrative agent

20

under the Debtors' debtor in possession asset-based revolving financing facility; (j) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors operate; (k) the office of the attorneys general for the states in which the Debtors operate; (l) the United States Attorney's Office for the District of Delaware; (m) the Internal Revenue Service; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

55.     No prior request for the relief sought in this motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

KE 64400850

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially

in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief

as the Court deems appropriate under the circumstances.

Dated:  October 3, 2019
Wilmington, Delaware

/s/ *L. Katherine Good*
_____

Christopher M. Samis (DE 4909)
L. Katherine Good (DE 5101)
**POTTER ANDERSON CORROON LLP**
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, Delaware 19801-6108
Telephone:    (302) 984-6000
Facsimile:    (302) 658-1192
Email:    csamis@potteranderson.com
          kgood@potteranderson.com

*Counsel to the Debtors and Debtors in Possession*

James H.M. Sprayregen, P.C.
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Joseph M. Graham (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
          ross.kwasteniet@kirkland.com
          joe.graham@kirkland.com

- and -

Stephen E. Hessler, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    stephen.hessler@kirkland.com

*Counsel to the Debtors and Debtors in Possession*